# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re Ex Parte* Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. | Case No. |

## MEMORANDUM IN SUPPORT OF *EX PARTE* APPLICATION OF PORSCHE AUTOMOBIL HOLDING SE FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

Robert J. Giuffra Jr.
Suhana S. Han
Myla G. Arumugam
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

*Counsel for Applicant Porsche Automobil Holding SE*

April 5, 2019

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ................................................................................................................3

    A.    The Parties ................................................................................................. 3

    B.    The German Actions ................................................................................. 4

    C.    The Limited Discovery Sought ............................................................... 10

LEGAL STANDARD ......................................................................................................11

ARGUMENT ...................................................................................................................12

I.      PSE'S APPLICATION SATISFIES THE STATUTORY SECTION 1782 REQUIREMENTS FOR ISSUANCE OF THE SUBPOENAS ................................12

II.    THE DISCRETIONARY SECTION 1782 FACTORS WEIGH HEAVILY IN FAVOR OF GRANTING PSE'S APPLICATION FOR ISSUANCE OF THE SUBPOENAS ..............................................................................................13

    A.    The Evidence PSE Seeks Is Likely To Be Unobtainable Without This Court's Assistance ................................................................................... 14

    B.    The Regional and Higher Regional Courts of Braunschweig and Stuttgart Would Be Receptive to Information Obtained Pursuant to 28 U.S.C. § 1782.......................................................................................................... 16

    C.    PSE's Application Is Not a Bad-Faith Attempt To Circumvent German Proof-Gathering Restrictions ................................................................... 17

    D.    PSE's Narrow, Targeted Discovery Requests Are Not Unduly Intrusive or Burdensome ............................................................................................. 18

CONCLUSION ................................................................................................................19

## TABLE OF AUTHORITIES

*Page(s)*

CASES

*In re Auto-Guadeloupe Investissement S.A.*,
   2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) .........................................................................15

*Brandi-Dohrn* v. *IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012)...............................................................................................12, 13

*Certain Funds, Accounts, and/or Inv. Vehicles* v. *KPMG, LLP*,
   798 F.3d 113 (2d Cir. 2015)...................................................................................................11

*Cryolife, Inc.* v. *Tenaxis Med. Inc.*,
   2009 WL 88348 (N.D. Cal. Jan. 13, 2009) ............................................................................18

*In re Del Valle Ruiz*,
   342 F. Supp. 3d 448 (S.D.N.Y. 2018)....................................................................................12

*In re Ex Parte Application of Nokia Corp.*,
   2013 WL 6073457 (N.D. Cal. Nov. 8, 2013) .........................................................................12

*In re Elvis Presley Enterprises LLC*,
   2016 WL 843380 (S.D.N.Y. Mar. 1, 2016) ...........................................................................11

*Euromepa S.A.* v. *R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995)...................................................................................................16

*In re Gemeinschaftspraxis Dr. Med. Schottdorf*,
   2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ................................................................ *passim*

*In re Godfrey*,
   526 F. Supp. 2d 417 (S.D.N.Y. 2007)..............................................................................2, 12

*Goldstein* v. *S.E.C.*,
   451 F.3d 873 (D.C. Cir. 2006) .................................................................................................4

*Gushlak* v. *Gushlak*,
   486 F. App'x 215 (2d Cir. 2012) ......................................................................................2, 12

*Heraeus Kulzer, GmbH* v. *Biomet, Inc.* (*Heraeus Kulzer II*),
   633 F.3d 591 (7th Cir. 2011) ...........................................................................................15, 16

*Heraeus Kulzer GmbH* v. *Esschem* (*Heraeus Kulzer I*),
   390 F. App'x 88 (3d Cir. 2010) .......................................................................................13, 15

*In re IKB Deutsche lndustriebank AG*,
　　2010 WL 1526070 (N.D. Ill. Apr. 8, 2010) ................................................................18

*In re Imanagement Servs., Ltd.*,
　　2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005) ...........................................................14

*Intel Corp.* v. *Advanced Micro Devices, Inc.*,
　　542 U.S. 241 (2004) .......................................................................................... *passim*

*Kiobel by Samkalden* v. *Cravath, Swaine & Moore LLP*,
　　895 F.3d 238 (2d Cir. 2018) .................................................................................2, 13

*Marubeni Am. Corp.* v. *LBA Y.K*,
　　335 F. App'x. 95 (2d Cir. 2009) ...............................................................................12

*In re Metallgesellschaft AG*,
　　121 F.3d 77 (2d Cir. 1997) ........................................................................................13

*In re Microsoft Corp.*,
　　428 F. Supp. 2d 188 (S.D.N.Y. 2006) .................................................................12, 14

*Minatec Fin. S.A.R.L.* v. *SI Grp. Inc.*,
　　2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) .........................................................17

*Siemens AG* v. *Western Corp.*,
　　2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) ...........................................................17

*In re Sveaas*,
　　249 F.R.D. 96 (S.D.N.Y. 2008) ................................................................................18

**STATUTES AND RULES**

28 U.S.C. § 1782 ..................................................................................................... *passim*

Fed. R. Civ. P. 26 ...........................................................................................................18

**OTHER AUTHORITIES**

Daniel Capocci, *The Complete Guide to Hedge Funds and Hedge Fund Strategies*
　　(2013) ..........................................................................................................................4

Stuart A. McCrary, *How to Create and Manage a Hedge Fund: A Professional's*
　　*Guide* (2002) ................................................................................................................3

Houman B. Shadab, *The Law and Economics of Hedge Funds: Financial*
　　*Innovation and Investor Protection*, 6 Berkeley Bus. L.J. 240 (2009) .....................4

Applicant Porsche Automobil Holding SE ("PSE") submits this memorandum in support of its application under 28 U.S.C. § 1782 seeking limited and targeted discovery from Elliott Associates, L.P., Elliott Capital Advisors, L.P., Elliott International Capital Advisors Inc., and Elliott Management Corporation.

## PRELIMINARY STATEMENT

Pursuant to 28 U.S.C. § 1782 ("Section 1782"), PSE, a German corporation, seeks permission to serve targeted discovery for use in civil actions against PSE in the German Regional and Higher Regional Courts of Stuttgart and Braunschweig (the "German Actions") by large investors, among others ("German Plaintiffs").   The German Actions, which involve approximately 200 separate legal proceedings, were filed beginning in April 2016 alleging securities fraud arising from PSE's purported failure to disclose or the inaccurate disclosure of emissions modifications in certain diesel vehicles manufactured by Volkswagen AG ("VWAG") constituting unlawful "defeat devices" under U.S. law.  The German Plaintiffs allege that such omission or misstatement impacted the price of PSE's preference shares, which are publicly traded on German stock exchanges, and that the German Plaintiffs suffered losses for which they now seek recovery.  PSE seeks to obtain limited discovery from four entities located in this District, which are the investment managers, advisors, and general partner of one or more of the German Plaintiffs—including the two largest Plaintiffs, Greenwich (Japan) Ltd. and Gateshead (Japan) LLC—for the purpose of establishing certain defenses in the German Actions.

Section 1782 permits "[th]e district court of the district in which a person resides or is found [to] order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person."  28 U.S.C. § 1782(a).  PSE's application satisfies these statutory requirements.  Each of the Respondents is incorporated or headquartered in this District; the requested discovery

is "for use" in litigation in the Regional and Higher Regional Courts of Braunschweig and Stuttgart; and, as a defendant in that litigation, PSE is an interested person.  *See, e.g.*, *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007); *In re Gemeinschaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *4 (S.D.N.Y. Dec. 29, 2006); *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004).

       The discretionary factors for Section 1782 discovery set forth in *Intel* also weigh heavily in favor of granting PSE's application:  (i) None of the Respondents is a party in the foreign litigation, and PSE is otherwise unable to obtain in the German forum the information it seeks here; (ii) the Higher Regional Court of Braunschweig has expressly indicated that it is receptive to the type of information that PSE seeks, having requested that the parties provide information to inform its consideration of questions related to PSE's defenses, and the German courts have provided no indication that they would be unreceptive to evidence obtained pursuant to Section 1782; (iii) PSE's application is a good-faith effort to obtain discovery to support PSE's defenses; and (iv) the targeted discovery PSE seeks—narrow document discovery and Rule 30(b)(6) depositions—is neither unduly intrusive nor burdensome.  542 U.S. 241 (2004).  The grant of the application also would further the "twin aims" of Section 1782:  "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."  *Kiobel by Samkalden* v. *Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018).

       PSE's application is also properly filed *ex parte*.  As the Second Circuit has recognized, applications pursuant to Section 1782 often are filed *ex parte*, because the entities from whom discovery is sought "can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)."  *Gushlak* v. *Gushlak*, 486 F. App'x 215, 217 (2d Cir.

2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."). This *ex parte* application does not prejudice the rights of any Respondent.

For these reasons and as set forth below, PSE respectfully requests that the Court grant its application.

## BACKGROUND

### A.     The Parties

PSE is a German holding company organized under the laws of the European Union and Germany. (Meier Decl. ¶ 3.) PSE has issued 153,125,000 ordinary shares and 153,125,000 non-voting, no-par value preference shares, which are traded on all German stock exchanges. (Han Decl. Ex. G at 46.)[1]

The four Respondents from whom PSE seeks discovery in this District—Elliott Associates, L.P., Elliott Capital Advisors, L.P., Elliott International Capital Advisors Inc., and Elliott Management Corporation—are the investment managers, advisors, and general partners of the two German Plaintiffs that have asserted the largest claims in the German Actions, specifically, Greenwich (Japan) Ltd. and Gateshead (Japan) LLC (the "Greenwich Plaintiffs"). (Han Decl. Ex. A; Meier Decl. ¶ 5.) By virtue of their status as entities that make management decisions on behalf of German Plaintiffs, Respondents likely possess documents and information relevant to PSE's defenses in the pending German Actions.[2] Each Respondent has a principal place of business in

---

[1]      References to Han Decl. ¶ __ or Han Decl. Ex. __ are to the Declaration of Suhana S. Han, dated April 5, 2019.      Ex. H to the Han Decl. is the Declaration of Markus Meier, dated March 26, 2019. References to Meier Decl. ¶ __ are to the Meier declaration.

[2]      Discovery is sought from investment managers and general partners of certain German Plaintiff hedge funds due to the typical structure of hedge funds and the roles of related entities. "In general, hedge funds are a limited liability investment pool run by a separate manager." Stuart A. McCrary, *How to Create and Manage a Hedge Fund: A Professional's Guide* 7 (2002). "A

New York, New York.  (Han Decl. Ex. A.)  Respondents, their relationship to German Plaintiffs, and their business addresses are set forth in Exhibit A to the Han Declaration.

### B.   The German Actions

#### 1.   The Individual German Actions

Since April 2016, the German Plaintiffs have filed more than 200 proceedings against PSE in the Regional Courts of Stuttgart and Braunschweig, Germany, alleging that PSE had knowledge (or that knowledge should be attributed to PSE) of emissions modifications in certain VW Group diesel vehicles that qualified as unlawful "defeat devices" under U.S. law (the "diesel issue").  (Meier Decl. ¶ 6.)  The German Plaintiffs contend that PSE failed to issue a purportedly-required *ad hoc* notification disclosing the diesel issue and, as a result, is subject to liability under section 37b of the German Security Trading Act (in the form then applicable), which provides for damages resulting from a failure to issue a timely *ad hoc* notification.  (*Id.* ¶ 10.)  Plaintiffs also assert tort claims under sections 823 and 826 of the German Civil Code based on PSE's alleged failure to issue an *ad hoc* notification and based on alleged misrepresentations in financial reports regarding the diesel issue.  (*Id.*)  Most of the German Plaintiffs, including the Greenwich Plaintiffs, seek to recover for alleged losses incurred in trading PSE's preference shares ("PSE shares").  (*Id.*)

---

'hedge fund' consists of three basic entities:  investors, the fund itself, and the investment adviser/management company."  Houman B. Shadab, *The Law and Economics of Hedge Funds: Financial Innovation and Investor Protection*, 6 Berkeley Bus. L.J. 240, 247 (2009).  In the typical structure of a hedge fund organized as a partnership, the general partner administers the fund, *see Goldstein* v. *S.E.C.*, 451 F.3d 873, 876 (D.C. Cir. 2006); McCrary, *supra*, at 94–95, and the investment manager manages the fund's investments, *see* Daniel Capocci, *The Complete Guide to Hedge Funds and Hedge Fund Strategies* 73 (2013).  Given these roles, a fund's general partner and investment manager likely possess documents and information concerning the fund's management, operations, and investments.

A number of proceedings against PSE have been suspended in light of a model case established under the German Act on Model Case Proceedings in Disputes Regarding Capital Market Information (the "Model Case Act").  (*Id*. ¶ 7.)  The Model Case Act establishes a procedure in a Higher Regional Court for adjudication of legal and factual questions common to at least ten securities actions.  (*Id*.)  Similar in certain ways to U.S. class-action and multidistrict litigation, the model case stays related actions while a Higher Regional Court decides common questions in one model case.  (*Id*.)  The outcome of the model case proceeding has a binding effect on all related cases involving similar claims that have been suspended due to such model case. (*Id*.)  Here, the model case is pending before the German Higher Regional Court of Braunschweig, No. 3 Kap 1/16 (the "Braunschweig Model Case").  (*Id*.)

PSE has also requested that cases currently proceeding in the Regional and Higher Regional Courts of Stuttgart be suspended in the coming months in light of the Braunschweig Model Case.  (*Id*. ¶ 8.)  The Model Case Act requires the suspension of all proceedings whose outcome is contingent on the model case, and the Higher Regional Court of Stuttgart has previously affirmed this requirement in similar cases.  (*Id*.)  The proceedings that would be suspended include the case captioned *Greenwich (Japan) Ltd., et al*. v. *Porsche Automobil Holding SE*, No. 22 O 348/16, *appeal filed*, No. 1 U 205/18, to which the Greenwich Plaintiffs are parties and which is currently pending in the German Higher Regional Court of Stuttgart (the "Greenwich Action"), as well as the case captioned *Wolverhampton City Council* v. *Porsche Automobil Holding SE*, No. 22 O 101/16, *appeal filed*, No. 1 U 204/18 (the "Wolverhampton Action").  (*Id*. ¶¶ 1, 9.)  On October 24, 2018, the Regional Court of Stuttgart issued judgments in the Greenwich and Wolverhampton Actions granting the Greenwich Plaintiffs' claim for damages in the amount of approximately 43.8 million EUR and the Wolverhampton City Council's claim for damages in the amount of

approximately 3.2 million EUR, while refusing to suspend the cases in light of the Braunschweig Model Case.  (*Id*. ¶ 9.)  The court issued these judgments without first affording PSE an adequate opportunity to substantiate its factual and legal objections against the alleged claims.  (*Id*.)  PSE has appealed the judgments to the Higher Regional Court of Stuttgart.  (*Id*.)  Aside from the judgments in the Greenwich and Wolverhampton Actions, no other judgment has been issued in the German Actions, which generally remain in their early stages.  (*Id*.)

2.    PSE's Defenses in the Individual German Actions

PSE believes that the German Plaintiffs' claims are without merit and has asserted multiple defenses.  Three of these defenses, described below, are relevant to this Section 1782 Application and applicable in all of the German Actions.  (*Id*. ¶ 15.)  PSE has already put forth these defenses in the Braunschweig Model Case, and has asserted or will assert these defenses in the other German Actions, including the Greenwich Action.  (*Id*.)

(i)    *Sale and Purchase Allocation*

PSE has asserted that at least some of the transactions on which the German Plaintiffs have based their claims are not legally cognizable, because the German Plaintiffs sold their shares prior to the disclosure of the relevant information.  (*Id*. ¶ 12.)  As a matter of German law, a plaintiff may only claim damages with respect to transactions carried out after the time when PSE should have released the allegedly required *ad hoc* notification.  (*Id*.)  Section 37b of the Security Trading Act further requires that the plaintiff must have continued to hold these shares at the time the relevant inside information was disclosed, which in the German Actions was September 18, 2015, when the U.S. Environmental Protection Agency published its notice of violation to VWAG regarding the diesel issue.  (*Id*.)  Similarly, under German tort law, PSE contends that a plaintiff did not sustain any damages where it sold the relevant shares before September 18, 2015.  (*Id*.)  The period between the allegedly required *ad hoc* disclosure and

-6-

September 18, 2015 is referred to as the "disinformation period." (*Id.*) PSE asserts that the German Plaintiffs sold shares on which their claims are predicated during the "disinformation period," and therefore did not hold those shares on September 18, 2015, as required to claim damages. (*Id.*)

(ii)   *Deduction of Related Transactions*

PSE also asserts that the German Plaintiffs have overstated their alleged damages by accounting only for certain transactions in PSE shares, even though those transactions in PSE shares were likely part and parcel of broader trading strategies, including hedging, that (in whole or in part) offset the purported losses associated with the transactions in PSE shares. (*Id.* ¶ 13.) For example, the German Plaintiffs likely engaged in investment strategies involving both PSE shares and VWAG ordinary and preference shares. (*Id.*) Since PSE's largest asset is VWAG ordinary shares, the price of PSE shares usually mirrors movements in the price of VWAG shares. (*Id.*) This relationship is used by investors in various trading strategies. (*Id.*) PSE argues in the German Actions that the benefits the German Plaintiffs received from related transactions—for example, hedging transactions or other transactions in PSE or VWAG shares or options during the relevant time period that generated profits for the respective plaintiff—must be deducted from the amount of damages claimed. (*Id.*)

(iii)   *Reliance*

With respect to German Plaintiffs' tort claims, PSE asserts that they must demonstrate that they relied on PSE's alleged omissions or misrepresentations in transacting in PSE shares. (*Id.* ¶ 14.) PSE argues that the German Plaintiffs, including the Greenwich Plaintiffs, have not met this reliance requirement. Rather, it is likely that the PSE share transactions were part of broader trading strategies that, when considered as a whole, would have incentivized the German Plaintiffs to conduct such transactions regardless of any disclosure of the diesel issue by

PSE. (*Id*.) PSE contends that the German Plaintiffs therefore would have engaged in the relevant PSE share transactions even if PSE had disclosed the diesel issue. (*Id*.)

3.  The Higher Regional Court of Braunschweig Action

On November 26, 2018, the Higher Regional Court of Braunschweig gave its preliminary views on certain questions relevant to the three defenses described above at a hearing in the Braunschweig Model Case proceeding. (*Id.* ¶ 16.) Making clear that the views expressed were preliminary, the Higher Regional Court requested that the parties provide further input on these questions, including practical examples, to inform the court's continued consideration of the questions moving forward. (*Id*.) PSE plans to use the requested Section 1782 discovery to respond to the Higher Regional Court's questions (as well as for other uses, described below). (*Id*.)

(i)  *Sale and Purchase Allocation*

The Higher Regional Court of Braunschweig addressed the burden of pleading and proving that the same shares plaintiffs purchased after the time at which PSE purportedly failed to make a required *ad hoc* disclosure were held until the date of the actual disclosure on September 18, 2015. (*Id.* ¶ 17.) In its preliminary assessment of the claims under section 37b of the Security Trading Act, the Higher Regional Court indicated that the plaintiffs will bear the burden of pleading and proving that they did not sell the shares prior to September 18, 2015, and that the plaintiffs will not be able to meet this burden by relying on hypothetical allocation methods such as the first-in-first-out method (which assumes that the shares that were sold are the shares purchased by the plaintiff earliest in time). (*Id*.)

Conversely, the Higher Regional Court of Braunschweig indicated that, with respect to tort claims, a plaintiff can claim a loss for any share purchased during the "disinformation period" without needing to affirmatively demonstrate that the share was held until at least September 18, 2015. (*Id*. ¶ 18.) To calculate damages for those purchases, the court

indicated that it may be permissible to use hypothetical allocation methods including the first-in-first-out method (which maximizes the amount of damages), unless PSE is able to establish that there is a more suitable way to allocate purchase and sale transactions within the "disinformation period." (*Id*.)  The Higher Regional Court invited the parties to present examples based on actual data in order to illustrate the effects of an application of the first-in-first-out method or other similar hypothetical allocation methods.  (*Id*.)  These examples will inform the court's assessment of whether, as a general rule, plaintiffs should be required to put forward evidence of the actual allocation of purchase and sale transactions rather than be permitted to rely on hypothetical allocation methods. (*Id*.)

(ii)   *Deduction of Related Transactions*

The Higher Regional Court of Braunschweig addressed the types of related transactions whose gains may be eligible for deduction from damages, and indicated that its preliminary view was that only closely-related transactions should be considered for a deduction. (*Id*. ¶ 19.)  The court further indicated that, in the absence of a specific link between different share transactions, only the sale and purchase of the same share would be sufficiently related.  (*Id*.)  Emphasizing the preliminary nature of this view, however, the Higher Regional Court requested practical examples that demonstrate the effect of accounting for transactions other than the purchase and sale of the PSE shares on which the plaintiffs have based their claims.  (*Id*.)  Based on those examples, the court may decide that certain types of related transactions are appropriately deducted from the claimed damages.  (*Id*.)

(iii)   *Reliance*

With respect to plaintiffs' reliance on PSE's alleged omission or misrepresentation in transacting in PSE shares, the Higher Regional Court preliminarily indicated that this question will be decided on the basis of a discretionary review of the evidence in each individual case. (*Id*.

¶ 20.)  Under this approach, the German Plaintiffs would not be obligated to account for all possibly related transactions included in their investment strategy in order to meet their burden— which might otherwise show that the German Plaintiffs' transactions were part of a broader investment strategy unrelated to PSE's disclosures—but PSE would be able to offer related transactions to disprove the existence of reliance.  (*Id.*)  However, similar to the practical examples that the Higher Regional Court requested to inform its consideration of the appropriate burdens with respect to the sale and purchase allocation and the deduction of related transactions, information about the German Plaintiffs' investment strategies will be relevant to the court's continuing evaluation of the appropriate burden with respect to reliance.  (*Id.*)  Such evidence may bear on the court's analysis in determining whether the plaintiffs should be required to account for related transactions as part of their burden to plead and prove reliance.  (*Id.*)

### C.       The Limited Discovery Sought

PSE brings this application under Section 1782 to obtain documents and deposition testimony critical to its defenses in the German Actions.  Specifically, PSE seeks permission to serve each Respondent with a narrowly tailored subpoena for production of documents and Rule 30(b)(6) deposition testimony regarding (1) accounting information concerning the sale and purchase of PSE and VWAG shares and related securities with a value tied to PSE and VWAG shares, as well as relevant lending transactions in such shares and other securities; and (2) trading or investment strategies that involved PSE or VWAG shares or related financial instruments.  Such discovery will be critical to show (i) that Plaintiffs in the German Actions should be required to prove which PSE shares were purchased and sold during the "disinformation period," (ii) that the German Plaintiffs' securities purchases and sales were part of a broader investment strategy, which may have included hedged positions that (in whole or in part) offset Plaintiffs' alleged losses, and (iii) that such investment strategies did not rely on the alleged omissions and misrepresentations

of PSE.   PSE will be able to use this discovery in the individual German Actions and the Braunschweig Model Case proceeding to support PSE's position on the appropriate burden that the German Plaintiffs should be required to meet.   PSE also will be able to use the discovery to show that the Greenwich Plaintiffs (i) can track the actual PSE shares purchased and sold, (ii) should offset their alleged losses through other, related investment transactions, and (iii) did not rely on the alleged omissions and misrepresentations.

## LEGAL STANDARD

The three statutory requirements are met where, as here, "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery [is] for use in a proceeding before a foreign tribunal, and (3) the application [is] made by a foreign or international tribunal or any interested person." *In re Elvis Presley Enterprises LLC*, 2016 WL 843380, at *2 (S.D.N.Y. Mar. 1, 2016) (quoting *Certain Funds, Accounts, and/or Inv. Vehicles* v. *KPMG, LLP*, 798 F.3d 113, 117 (2d Cir. 2015)).

In determining whether to exercise its discretion, the Supreme Court has instructed that four factors should guide a district court's analysis:

> (1) [w]hether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid; (2) [t]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) [w]hether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) [w]hether the subpoena contains unduly intrusive or burdensome requests.

*In re Microsoft Corp.*, 428 F. Supp. 2d 188, 192–93 (S.D.N.Y. 2006) (citing *Intel*, 542 U.S. at 264–65).  These factors are non-exhaustive, and  no "one factor [is] dispositive."  *See, e.g.*, *Marubeni Am. Corp.* v. *LBA Y.K*, 335 F. App'x. 95, 97 (2d Cir. 2009).[3]

### ARGUMENT

Courts in this Circuit and beyond have routinely granted discovery under Section 1782 for use in German proceedings.  *See, e.g.*, *Brandi-Dohrn* v. *IKB Deutsche Industriebank AG*, 673 F.3d 76, 81–84 (2d Cir. 2012) (reversing district court's order quashing Section 1782 subpoena seeking documents for use in securities fraud proceeding on appeal in Germany).  This Court should likewise grant PSE's application and provide PSE needed assistance in obtaining limited discovery for use in the German Actions.  The requested discovery will be critical to PSE's defenses, and providing such discovery would further Section 1782's aims of helping non-U.S. litigants obtain necessary evidence for use in foreign proceedings and setting an example for foreign courts to provide the same assistance to U.S. litigants.

**I.    PSE'S APPLICATION SATISFIES THE STATUTORY SECTION 1782 REQUIREMENTS FOR ISSUANCE OF THE SUBPOENAS.**

The statutory requirements are easily met in this case.  First, because Respondents are incorporated in New York or are headquartered in New York City, there can be no dispute that they are "found" in this District.  *See, e.g.*, *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) ("[P]etitioners have cited no case finding that a corporation resided or was found in a

---

[3]     Applications made pursuant to § 1782 routinely are made on an *ex parte* basis and opposed, if at all, through a motion to quash.  *See, e.g.*, *In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 457 (S.D.N.Y. 2018) ("[A]s a general matter, *ex parte* review is justified by the fact that the parties from whom discovery is sought will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it."); *Gushlak*, 486 F. App'x at 217 (not "uncommon" to proceed *ex parte* in § 1782 context); *In re Ex Parte Application of Nokia Corp.*, 2013 WL 6073457, at *2 (N.D. Cal. Nov. 8, 2013) ("It is common for parties to request and obtain orders authorizing discovery ex parte.").

district where the corporation was neither incorporated nor headquartered there.");
*Gemeinschaftspraxis*, 2006 WL 3844464, at *4 (S.D.N.Y. Dec. 29, 2006) ("[Respondent]
maintains its headquarters in New York, and thus is 'found' within this district.").

Second, PSE plans to use the limited discovery sought in this application in
connection with current legal proceedings that have been brought against PSE in, or currently are
before, the Regional and Higher Regional Courts of Braunschweig and Stuttgart.  Consequently,
PSE seeks this discovery "for use" in a foreign proceeding.  *See Gemeinschaftspraxis*, 2006 WL
3844464, at *4 (second statutory requirement met because "the requested discovery is sought for
use in a foreign tribunal"); *In re Metallgesellschaft*, 121 F.3d 77, 78–79 (2d Cir. 1997) (statutory
factor met because "the information sought is for use in a proceeding before a foreign tribunal").

Third, PSE is a defendant in the German Actions, and, accordingly, there is "[n]o
doubt" that PSE is "included among . . . the 'interested person[s]' who may invoke § 1782."  *See
Intel*, 542 U.S. at 256 (second alteration in original).

## II.   THE DISCRETIONARY SECTION 1782 FACTORS WEIGH HEAVILY IN FAVOR OF GRANTING PSE'S APPLICATION FOR ISSUANCE OF THE SUBPOENAS.

As the Second Circuit has held, district courts consider the *Intel* factors in light of
the twin aims of Section 1782:  "providing efficient means of assistance to participants in
international litigation in our federal courts and encouraging foreign countries by example to
provide similar means of assistance to our courts."  *Kiobel by Samkalden* v. *Cravath, Swaine &
Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018).  "In pursuit of these twin goals, the statute has, over
the years, been given 'increasingly broad applicability.'"  *Brandi-Dohrn*, 673 F.3d at 80 (quoting
*Application of Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993); *see Heraeus Kulzer GmbH* v.
*Esschem* (*Heraeus Kulzer I*), 390 F. App'x 88, 92 (3d Cir. 2010) (noting "courts' consistently

liberal interpretation of the statute").  Here, the discretionary factors plainly weigh in favor of granting PSE's application for highly targeted discovery necessary to support its defenses in the German Actions.

### A. The Evidence PSE Seeks Is Likely To Be Unobtainable Without This Court's Assistance.

In applying the first factor, district courts look at "[w]hether the documents or testimony sought are within the foreign tribunal's jurisdictional reach . . . ."  *Microsoft*, 428 F. Supp. 2d at 192, 194 ("The relevant inquiry is whether the evidence is available to the foreign tribunal.").  Ultimately, the critical consideration under this factor is whether "evidence, available in the United States, may be unobtainable absent § 1782(a) aid," *see Intel*, 542 U.S. at 264, which is clearly the case here.

None of the Respondents from whom discovery is sought is a party to the German Actions and "the German court [may not have] jurisdiction over a non-party."  *Heraeus Kulzer I*, 390 F. App'x at 92; *see also In re Gemeinschaftspraxis*, 2006 WL 3844464, at *5 ("When the target of discovery is not a party the foreign tribunal may be less  inclined—even if it is empowered—to compel third-party discovery . . . .").  Accordingly, "[t]he first factor . . . clearly weighs in favor of granting an order to allow [PSE] to collect evidence from [the non-party Respondents] located in this district."  *In re Imanagement Servs., Ltd.*, 2005 WL 1959702, at *3 (E.D.N.Y. Aug. 16, 2005).

Nor is PSE likely to be able to obtain this evidence in the German forum.  The plaintiffs in the Braunschweig Model Case have argued that they lack the information that PSE seeks.  (Meier Decl. ¶ 28.)   In particular, the model case plaintiffs contend that they lack documentation sufficient to link specific purchase and sale transactions (*see id*. ¶ 23)—the information that PSE now seeks to obtain from Respondents instead.  As to information PSE seeks

-14-

regarding the investment strategies underlying the German Plaintiffs' transactions, this information is more likely to be in the possession of Respondents—the entities responsible for devising the investment strategies and making the investment decisions—than in the possession of the German Plaintiffs themselves.

Further, even if the German Plaintiffs did have access to such information, PSE could not obtain the requested discovery from German Plaintiffs through the German courts. Under German law, a litigant generally must describe with particularity the individual documents that it seeks. *See Heraues Kulzer I*, 390 F. App'x at 92 ("German civil procedure does not offer a mechanism for general pretrial discovery comparable to that obtainable in the United States; any request to the German court must be for *specific* documents, and without access to [the target's] files, [the requesting party] cannot pinpoint what it is seeking."). PSE is not able to do so in this instance because the information regarding the relevant PSE stock transactions and related investment strategies is solely in the possession of the Respondents.

Similarly, because German law does not provide for depositions, PSE would be unable to depose Respondents absent an order pursuant to Section 1782. (Meier Decl. ¶ 28.) "Thus, in light of the fact that the materials which [PSE] seeks would be unavailable but for § 1782 assistance, the first Intel factor" strongly weighs in favor of granting PSE's application. *See In re Auto-Guadeloupe Investissement S.A.*, 2012 WL 4841945, at *6 (S.D.N.Y. Oct. 10, 2012); *Heraeus Kulzer, GmbH* v. *Biomet, Inc.* (*Heraeus Kulzer II*), 633 F.3d 591, 596 (7th Cir. 2011) ("importance of American-style discovery . . . undeniable" where litigant could not secure discovery in German court).

**B.**     **The Regional and Higher Regional Courts of Braunschweig and Stuttgart Would Be Receptive to Information Obtained Pursuant to 28 U.S.C. § 1782.**

Under the second *Intel* factor, a court determining whether to grant a Section 1782 petition "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. In weighing this factor, courts typically focus on whether the foreign tribunal would be receptive to discovery procured with the assistance of a U.S. court pursuant to Section 1782. *See, e.g.*, *Gemeinschaftspraxis*, 2006 WL 3844464, at *6 ("The second discretionary factor concerns the receptivity of the foreign government or its courts to United States federal-court assistance."). The Second Circuit has made clear that "only authoritative proof that a foreign tribunal [or government] would reject [the] evidence obtained with the aid of section 1782" is to be considered in assessing this factor. *Euromepa S.A.* v. *R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995).

Here, the second *Intel* factor supports granting PSE's application. The Regional and Higher Regional Courts of Braunschweig and Stuttgart have provided no indication that they would be unreceptive to evidence obtained pursuant to Section 1782. Rather, the Higher Regional Court of Braunschweig has invited the parties to present examples to inform its decision regarding the appropriate burden each party should bear and will therefore be highly interested in and receptive to the evidence sought in this application. (Meier Decl. ¶ 30.) Nor have there been any "judicial, executive or legislative declarations," *Euromepa S.A.*, 51 F.3d at 1100, from the German Government that discovery assistance from this Court would be unwelcome. Thus, granting Section 1782 discovery here would be consistent with the twin aims of the statute. *See Heraeus Kulzer II*, 633 F.3d at 596 ("[T]here is no indication that the German court in which Heraeus's suit against Biomet is pending would refuse to admit evidence that Heraeus obtained through U.S.

-16-

discovery and could not have obtained by utilizing the procedures of German law for evidence gathering.").

### C. PSE's Application Is Not a Bad-Faith Attempt To Circumvent German Proof-Gathering Restrictions.

"The third discretionary factor aims to protect against abuse of § 1782 as a vehicle to end-run foreign proof-gathering restrictions or other foreign policies." *Gemeinschaftspraxis*, 2006 WL 3844464, at *7. In other words, this factor asks whether the requesting party is "pursuing . . . discovery in bad faith." *Minatec Fin. S.A.R.L.* v. *SI Grp. Inc.*, 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008).

Here, the third *Intel* factor weighs in PSE's favor because PSE is seeking critical (and limited) discovery in a good-faith effort to establish that the German Plaintiffs can track the actual PSE shares that they purchased and sold, that the German Plaintiffs offset their alleged losses through other, related investment transactions, and that the German Plaintiffs did not and would not have relied on the allegedly omitted information and on the alleged misrepresentations. (*See supra* at 6–8, 10–11.) The plaintiffs in the Braunschweig Model Case have indicated that they do not possess the information PSE seeks, and the Higher Regional Court of Braunschweig has specifically requested this type of information to inform its decision as to the appropriate burden that each party should bear. (*See supra* at 8–10, 15.) "Thus, [the third] factor weighs favorable for [PSE]." *Minatec Fin. S.A.R.L.*, 2008 WL 3884374, at *8 ("[W]e find nothing within this record to support that [the requesting party] is seeking this information with less than a good faith belief that § 1782 discovery would be helpful to the foreign tribunals and itself.").[4]

---

[4] A party is not acting in bad faith merely because it seeks "to acquire discovery that it was unable to obtain abroad." *See Gemeinschaftspraxis*, 2006 WL 3844464, at *7. Indeed, "in some respects, that is precisely the type of assistance that the statute was designed to afford." *Id*. Accordingly, courts have routinely granted discovery under Section 1782 for use in German proceedings. *See, e.g.*, *Siemens AG* v. *Western Corp.*, 2013 WL 5947973, at *3, *5 (C.D. Cal.

**D.    PSE's Narrow, Targeted Discovery Requests Are Not Unduly Intrusive or Burdensome.**

Under the fourth *Intel* factor, "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265. "The proper scope of the discovery sought under section 1782, like all federal discovery, is governed by Federal Rule 26(b)," which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," to the extent that it does not cause any undue burden or expense. *In re Sveaas*, 249 F.R.D. 96, 106 (S.D.N.Y. 2008); Fed. R. Civ. P. 26.

Here, the fourth *Intel* factor supports granting the application. PSE's limited discovery requests seek documents and testimony critical to its defenses in the German Actions, while avoiding unnecessary burden or intrusion upon Respondents. This discovery is highly relevant to demonstrate that German Plaintiffs can match each purchased share to each sold share; that Plaintiffs' losses, if any, were mitigated by broader trading strategies, including hedging; and that Plaintiffs did not rely on any of the alleged misrepresentations or omissions. And although courts have confirmed that Section 1782 permits the same "broad discovery" as Federal Rule of Civil Procedure 26, *see, e.g.*, *In re IKB Deutsche lndustriebank AG*, 2010 WL 1526070, at *5 (N.D. Ill. Apr. 8, 2010), the discovery requests here are narrowly tailored. Given the reasonableness of PSE's requests squarely addressing its defenses in the German Actions, discovery is appropriate here. *See, e.g.*, *Gemeinschaftspraxis*, 2006 WL 3844464, at *8 (fourth factor weighed in favor of discovery where the "requests appear to be sufficiently tailored to the litigation issues").

---

Nov. 4, 2013) (noting that "discovery under § 1782 need not mimic the discovery procedures of the foreign jurisdiction" and concluding that discovery as to liability was appropriate); *Cryolife, Inc.* v. *Tenaxis Med. Inc.*, 2009 WL 88348, at *4 (N.D. Cal. Jan. 13, 2009) (third *Intel* factor weighed in favor of granting discovery, and noting that "there is no requirement under § 1782 that the requested information would be discoverable under German law").

**CONCLUSION**

For the foregoing reasons, this Court should grant PSE's application pursuant to 28 U.S.C. § 1782 and enter the proposed order authorizing service on Respondents of subpoenas for production of documents and deposition testimony.


Dated:  April 5, 2019                    Respectfully submitted,
        New York, New York

                                         /s/ Suhana S. Han
                                         Robert J. Giuffra Jr.
                                         Suhana S. Han
                                         Myla G. Arumugam
                                         SULLIVAN & CROMWELL LLP
                                         125 Broad Street
                                         New York, New York  10004
                                         (212) 558-4000
                                         GiuffraR@sullcrom.com
                                         HanS@sullcrom.com
                                         ArumugamM@sullcrom.com

                                         *Counsel for Applicant Porsche*
                                         *Automobil Holding SE*