# Exhibit H

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re Ex Parte* Application of Porsche Automobil Holding SE For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. | Case No. |

**DECLARATION OF DR. MARKUS MEIER IN SUPPORT OF THE *EX PARTE* APPLICATION OF PORSCHE AUTOMOBIL HOLDING SE FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

DR. MARKUS MEIER declares the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am a partner with the law firm of Hengeler Mueller Partnerschaft von Rechtsanwälten mbB ("Hengeler Mueller") in Frankfurt am Main, Germany. Hengeler Mueller is counsel for Porsche Automobil Holding SE ("PSE") in more than 200 related legal proceedings filed against PSE in the German Regional Courts of Stuttgart and Braunschweig, in which plaintiffs seek approximately $1 billion in connection with PSE's alleged failure to disclose unlawful emissions modifications in certain diesel vehicles manufactured by Volkswagen AG ("VWAG") (the "German Actions"). The German Actions include the case captioned *Greenwich (Japan) Ltd., et al. v. Porsche Automobil Holding SE*, No. 22 O 348/16, *appeal filed*, No. 1 U 205/18, currently pending in the German Higher Regional Court of Stuttgart (the "Greenwich Action").

2. I am licensed to practice law in Germany. I make this Declaration in support of PSE's Application for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. Except as otherwise indicated, all statements

in this Declaration are based upon my personal knowledge and experience, or upon my review of records maintained by Hengeler Mueller in the regular course of its representation of PSE.

## *The Relevant Parties*

### Porsche Automobil Holding SE

3.  PSE, the defendant in the German Actions, is a German holding company organized under the laws of the European Union and Germany. PSE currently holds more than 50% of the voting rights in VWAG, a German car manufacturer selling cars under the brands Volkswagen, Porsche, Audi, and others ("VW Group"). PSE is legally and operationally independent of VWAG. PSE's business model, in addition to holding shares in VWAG, consists of identifying, and taking, investment opportunities along the value chain of the automobile production. PSE is neither involved in the operational business of VWAG nor is VWAG contractually obligated to relay information regarding the development of vehicles to PSE. As a holding company, PSE does not employ technicians or engineers. It has a staff of approximately 30 employees in the fields of administration, finance, accounting, and legal services. PSE's headquarters is located in Stuttgart-Zuffenhausen, Germany.

### Plaintiffs in the German Actions

4.  Plaintiffs in the German Actions are, *inter alia*, large investors, including hedge funds, pension funds, and other investment funds, as well as entities that provide services for investment funds (the "German Plaintiffs"). German Plaintiffs are based in the United States, Denmark, Germany, France, Luxembourg, the Netherlands, and the United Kingdom, among other countries.

5.  Greenwich (Japan) Ltd. and Gateshead (Japan) LLC (the "Greenwich Plaintiffs") are plaintiffs in the Greenwich Action and are alleged to be investment companies with their center of administration in New York. Greenwich (Japan) Ltd. has claimed damages

of approximately 104.6 million EUR in the Greenwich Action. Gateshead (Japan) LLC has claimed damages of approximately 53.9 million EUR in the Greenwich Action. The Greenwich Plaintiffs have asserted the largest claims of all the German Plaintiffs (based on the quantifications submitted by the Greenwich Plaintiffs and the other German Plaintiffs).

## *The German Actions*

### Procedural History

6. Since April 2016, more than 200 proceedings have been filed against PSE in the Regional Courts of Stuttgart and Braunschweig, Germany, alleging that PSE omitted to disclose certain information or disclosed incorrect information to capital markets. The German Plaintiffs claim that PSE had knowledge (or that knowledge should be attributed to PSE) of emissions modifications in certain VW Group diesel vehicles that qualified as unlawful "defeat devices" under U.S. law (the "diesel issue"). The German Plaintiffs also claim PSE allegedly had knowledge (by attribution) that information about the diesel issue was relevant to the securities market but failed to issue an *ad hoc* notification allegedly required under the German Security Trading Act (the "Security Trading Act"). Plaintiffs further allege that PSE did not appropriately disclose alleged risks related to the diesel issue in its periodical financial reporting.

7. A number of proceedings against PSE have been suspended in connection with a model case under the German Act on Model Case Proceedings in Disputes Regarding Capital Market Information (the "Model Case Act"). The Model Case Act establishes a procedure for adjudication in a Higher Regional Court of legal and factual questions common to at least ten securities actions. Similar to the class action lawsuits or coordinated proceedings in multi-district litigation in the United States, the model case allows for a Higher Regional Court to decide questions common to multiple cases in one separate model case in order to ensure consistent outcomes across cases. The outcome of the model case proceedings has a binding

effect on all related cases involving similar claims that have been suspended in connection with such model case proceedings. The model case is pending before the German Higher Regional Court of Braunschweig, No. 3 Kap 1/16 (the "Braunschweig Model Case").

8. Further proceedings in the Regional Court of Stuttgart, including the Greenwich Action, may also be suspended in the coming months in light of the Braunschweig Model Case. PSE has argued that the Stuttgart proceedings should be suspended in light of the Braunschweig Model Case, given that the Model Case Act requires the suspension of all proceedings whose outcome is contingent on the model case. In fact, the Higher Regional Court of Stuttgart has previously affirmed this requirement in similar cases.

9. Pending the decision on whether to suspend the Stuttgart proceedings in light of the Braunschweig Model Case, proceedings in the Regional Court of Stuttgart have continued to be individually adjudicated. The Greenwich Action was one of the first cases to be decided by the lower regional court, which on October 24, 2018 granted the Greenwich Plaintiffs' claim for damages in the amount of approximately 43.8 million EUR, out of approximately 158.4 million EUR claimed, while refusing to stay the proceedings in light of the Braunschweig Model Case. On the same day, the court also granted the claim of the plaintiff in the case captioned *Wolverhampton City Council* v. *Porsche Automobil Holding SE*, No. 22 O 101/16, *appeal filed*, No. 1 U 204/18, in the amount of approximately 3.2 million EUR, out of approximately 5.7 million EUR claimed. The Regional Court of Stuttgart issued these judgments without first affording PSE an adequate opportunity to provide support for its factual and legal objections against the alleged claims. PSE has appealed the judgments to the Higher Regional Court of Stuttgart. Aside from these two judgments, no other judgments have been issued in the German Actions, which generally remain in their early stages.

Claims and Defenses

10. All of the German Plaintiffs allege claims under section 37b of the Security Trading Act (in the form then applicable), which provides for damages resulting from a failure to issue a timely *ad hoc* notification. The German Plaintiffs contend that PSE failed to issue a purportedly required *ad hoc* notification disclosing emissions modifications in certain VW Group diesel vehicles that violated U.S. law. Plaintiffs also assert tort claims under sections 823 and 826 of the German Civil Code based on PSE's alleged failure to issue an *ad hoc* notification and based on alleged misrepresentations in financial reports regarding the diesel issue. Most of the German Plaintiffs, including the Greenwich Plaintiffs, seek compensation for alleged damages incurred by purchasing preference shares issued by PSE ("PSE shares").

11. PSE considers the German Plaintiffs' claims to be without merit. In addition to multiple other defenses not described here (including that PSE had no duty to disclose alleged inside information about the diesel issue), PSE has asserted three defenses relevant to this Section 1782 application.

12. *Sale and Purchase Allocation.* First, PSE has asserted that at least some of the transactions asserted by the German Plaintiffs as the basis for their claims are ineligible for protection under section 37b of the Security Trading Act and related tort law. As a matter of German law, a plaintiff may only claim damages based on alleged omissions to inform the capital markets with respect to transactions carried out after the moment in time when PSE should have released an *ad hoc* notification. A further prerequisite under section 37b of the Security Trading Act is that the plaintiff must have continued to hold these shares at the time the relevant inside information was disclosed, which in the German Actions was September 18, 2015, when the U.S. Environmental Protection Agency published its notice of violation to VWAG regarding the diesel issue. Similarly, PSE contends that a plaintiff may not claim

-5-

damages under tort law where the relevant shares were not held at the time the inside information was disclosed. The period between when the defendant allegedly should have made a disclosure and when the relevant information was finally disclosed is referred to as the "disinformation period." PSE asserts that the German Plaintiffs sold certain shares on which their claims are predicated during the disinformation period, and therefore did not hold those shares at the time the relevant inside information was released, as required to claim damages.

13. *Deduction of Related Transactions.* Second, PSE maintains that the German Plaintiffs have overstated their alleged damages by focusing only on transactions in PSE shares, even though the transactions in PSE shares were likely part and parcel of broader trading strategies that (in whole or in part) offset losses associated with particular transactions in PSE shares. For example, related transactions are particularly likely to have involved VWAG ordinary and preference shares. Since VWAG ordinary shares are the largest asset of PSE, movements in the share price of VWAG shares are usually mirrored by the stock price of the PSE share. This link is often used by investors in various investment strategies. PSE argues that the benefits the German Plaintiffs received from related transactions (*e.g.*, hedging transactions or other transactions in PSE or VWAG shares or options during the disinformation period that generated profits for the respective plaintiff) have to be deducted from alleged damage amounts. PSE's position is supported by a recently published decision of the German Federal Court of Justice, Germany's highest civil court, dated October 18, 2018 (No. III ZR 497/16), according to which profits and losses that derive from transactions based on a uniform investment decision or strategy are to be set off against each other.

14. *Reliance.* Third, regarding the alleged tort claims, PSE asserts that the German Plaintiffs must demonstrate a causal link between PSE's alleged omission or

-6-

misrepresentation and the German Plaintiffs' transactions in PSE shares. PSE argues that the German Plaintiffs, including the Greenwich Plaintiffs, have not met this causation requirement. Rather, it is likely that the PSE share transactions were part of broader trading strategies that, when considered as a whole, would have incentivized the German Plaintiffs to conduct the PSE share transactions regardless of any disclosure of the diesel issue by PSE. PSE contends the German Plaintiffs therefore would have engaged in the relevant PSE share transactions even if PSE had given an *ad hoc* notification regarding the diesel issue.

15. These three defenses are applicable in all of the German Actions. PSE has already put forward these defenses in the Braunschweig Model Case, and PSE has asserted, or will assert at the appropriate time, these defenses in the other German Actions, including the Greenwich Action.

Preliminary Assessment of the Higher Regional Court of Braunschweig

16. On November 26, 2018, a hearing was held in the Braunschweig Model Case at which the Higher Regional Court of Braunschweig outlined its preliminary views on certain questions relevant to the three defenses described above. The court requested that the parties provide further input on these questions to inform the Higher Regional Court's continued consideration of the questions moving forward. PSE intends to use the requested Section 1782 discovery to respond to the Higher Regional Court's questions (as well as for other uses, described below).

17. *Sale and Purchase Allocation.* The Higher Regional Court of Braunschweig addressed the burden of pleading and proving that shares purchased during the disinformation period were held until the disinformation period's close. In its preliminary assessment of the claims under section 37b of the Security Trading Act, the Higher Regional Court held that the plaintiffs bear the burden of pleading and proving that they did not resell the

particular shares that form the basis of their claim during the disinformation period. That is, where a plaintiff sold PSE shares during the disinformation period, the plaintiff must demonstrate that the shares sold were not the same shares that the plaintiff alleges were purchased during the disinformation period and form the basis of its damages claim. The Higher Regional Court further signaled that the plaintiffs could not meet this burden by relying on hypothetical allocation methods such as the first-in-first-out method (which assumes that the shares being sold are the ones purchased earliest in time).

18. With regard to tort claims, the Higher Regional Court of Braunschweig indicated that a plaintiff can establish a compensable loss with regard to any particular share purchase made during the disinformation period. For purposes of calculating damages, the allocation of share purchases and sales during the disinformation period may be made according to the first-in-first-out method, unless PSE is able to establish generally that an actual link exists between shares purchased and sold or that a different allocation is appropriate. The Higher Regional Court invited the parties to present examples based on actual data in order to illustrate the effects of an application of a first-in-first-out method or other similar methods to deduct corresponding gains from allegedly incurred damages. These examples will inform the court's assessment of whether, as a general rule, plaintiffs should be required to put forward evidence of the actual allocation of purchase and sale transactions rather than be permitted to rely on the first-in-first-out method.

19. *Deduction of Related Transactions.* With respect to the types of related transactions whose gains may be eligible for deduction from damages, the Higher Regional Court of Braunschweig preliminarily indicated that only closely related transactions may be considered for a deduction. The court further indicated that, in the absence of a specific link

between different share transactions, only the sale and purchase of the same particular share would be sufficiently related. However, the Higher Regional Court requested practical examples demonstrating the effect of accounting for related transactions other than through corresponding sales of shares. Based on those examples, the court may decide that certain types of related transactions should be deducted from the claimed damages.

20. *Reliance.* The Higher Regional Court preliminarily indicated that the question as to whether a causal link exists will be decided on the basis of a discretionary assessment of evidence in the individual case. Under this approach, the German Plaintiffs would not be obligated to account for all possibly related transactions included in their investment strategy in order to meet their burden of showing a causal link between PSE's alleged omission or misrepresentation and plaintiffs' transactions in PSE shares, but PSE would be able to offer related transactions to disprove the existence of a causal link. However, similar to the practical examples that the Higher Regional Court requested to inform its consideration of the appropriate burdens with respect to the sale and purchase allocation and the deduction of related transactions, information about the German Plaintiffs' investment strategies will be relevant to the court's continuing evaluation of the appropriate burden with respect to reliance. Such evidence may bear on the court's analysis in determining whether plaintiffs should be required to account for related transactions as part of their burden to plead and prove reliance.

### *The Requested Section 1782 Discovery*

21. PSE seeks Section 1782 discovery to obtain documents and deposition testimony critical to its defenses in the German Actions. Specifically, PSE seeks permission to serve each Respondent with narrowly tailored subpoenas for production of documents and Rule 30(b)(6) deposition testimony regarding information that falls into two categories. The first category is information regarding sales and purchase transactions in PSE and VWAG shares, as

well as related financial instruments whose value is dependent on the price of PSE and VWAG shares and lending transactions with regard to PSE and VWAG shares. The second category is information regarding trading or investment strategies involving PSE shares or related shares and instruments.

    22. Such discovery could aid PSE's defenses in all of the German Actions by demonstrating that (i) the German Plaintiffs are able to allocate individual purchase and sale transactions and, thus, should be required to demonstrate their eligibility for and the amount of their claimed damages by reference to actual corresponding sale and purchase transactions, rather than by reference to alternative, hypothetical allocation methods such as the first-in-first-out method; (ii) the German Plaintiffs received benefits from transactions executed in connection with the PSE share transactions on which the German Plaintiffs' claims are based, and failing to account for these related transactions allows the German Plaintiffs to inflate their claimed damages; and (iii) the incentives of the German Plaintiffs to invest in PSE shares are likely to have been significantly influenced by related transactions included as part of the same investment strategy, and the German Plaintiffs should be required to disclose such related transactions to meet their burden to plead and prove reliance. Moreover, PSE will use the requested evidence in the Greenwich Action to show (i) the actual allocation of the Greenwich Plaintiffs' sale and purchase transactions; (ii) the actual benefits that the Greenwich Plaintiffs received from related transactions; and (iii) that the Greenwich Plaintiffs did not rely on PSE's alleged omission or misrepresentation and would have engaged in the relevant PSE share transactions regardless of any notification regarding the diesel issue. PSE will be permitted to introduce evidence received through this Section 1782 proceeding as part of its appeal in the Greenwich Action.

23. *Sale and Purchase Allocation.* Information regarding the German Plaintiffs' transactions in PSE shares (and other related instruments upon which certain plaintiffs have predicated their claims) will allow PSE to demonstrate that it is possible to match the sale and purchase transactions that are the basis for the German Plaintiffs' claims, and that resort to alternative methods of allocating transactions, such as the first-in-first-out method, will allow the German Plaintiffs to improperly inflate their damages claims. PSE believes that the application of the first-in-first-out method would allow the German Plaintiffs to improperly establish the eligibility of their claims and increase their potential amount of damages, since the highest number of shares purchased within the disinformation period would be assumed to be held at the end of the disinformation period. The plaintiffs in the Braunschweig Model Case have argued for the application of the first-in-first-out method by claiming that, because institutional investors typically purchased, held and sold VWAG shares all the time, including before, during and after the alleged disinformation period, it is impossible to prove which of the shares held on September 18, 2015 were purchased during the disinformation period and that application of the first-in-first-out method is therefore the appropriate option.

24. The Higher Regional Court of Braunschweig's statements at the November 26, 2018 hearing indicate that, with regard to the tort claims, PSE likely will need to show that institutional investors (like the German Plaintiffs) are able to account for when particular shares were purchased and sold, for what amount, and to or from which securities depository. This information and related transaction information included in PSE's discovery requests should allow the German Plaintiffs to identify the shares purchased during the disinformation period and when those particular shares were sold. Accordingly, PSE seeks to obtain through discovery the respective trading records of the German Plaintiffs.

-11-

25. *Deduction of Related Transactions.* Information regarding the German Plaintiffs' investment strategies related to PSE shares will allow PSE to demonstrate that related transactions are not limited to the purchase and sale of a particular share—particularly from the investor's perspective—and that accounting for related transactions is key to obtaining an accurate measure of damages allegedly suffered. Transactions in PSE shares were likely embedded in an overarching investment strategy, potentially also comprising trading in other shares and derivatives. As described above, such investment strategies are particularly likely to involve VWAG ordinary and preference shares, since VWAG ordinary shares are PSE's largest asset and the trading price of VWAG shares is often related to the trading price of PSE shares. *See supra* ¶ 13. For this reason, PSE seeks discovery regarding strategies pursued by investors involving PSE and VWAG shares as well as related derivatives, including hedging strategies.

26. *Reliance.* Information regarding the German Plaintiffs' investment strategies may allow PSE to disprove the existence of a causal link between PSE's alleged omission or misrepresentation and the German Plaintiffs' transactions in PSE shares. Contrary to the German Plaintiffs' assertion, PSE expects that, as institutional investors, the German Plaintiffs likely would have purchased PSE shares even if PSE had disclosed the diesel issue. This could be demonstrated, *inter alia*, by showing that the German Plaintiffs purchased PSE or VWAG shares after September 18, 2015 despite knowing about the diesel issue.

27. PSE anticipates that the requested discovery will be of broad use to it in the German Actions. PSE intends to use the requested discovery (i) as evidence in the Braunschweig Model Case to inform the Higher Regional Court of Braunschweig's determination as to the appropriate standards of pleading and evidence, in accordance with the Higher Regional Court's invitation at the November 26, 2018 hearing; (ii) in PSE's appeal of the

Greenwich Action to inform the appropriate standards of pleading and evidence as well as to address factual questions of claim eligibility and damages; and (iii) as evidence in other proceedings before the Regional and Higher Regional Court of Stuttgart, for the same uses as in the Braunschweig Model Case.

28. I expect that the entities responsible for managing the German Plaintiffs have collected copies of potentially relevant documents in their possession, custody, or control. Unlike discovery in the United States, German law requires PSE to specify each individual document that it seeks in a way that enables the respective plaintiff to identify the individual document without further effort, *e.g.*, by providing the title, content and date of the document. Because PSE does not have such detailed information about any of these documents, PSE is unable to obtain any potentially relevant documents in Germany. Moreover, the plaintiffs in the Braunschweig Model Case argue that they should not be required to meet the burden advocated by PSE because plaintiffs do not possess sufficient information to meet that burden. Therefore, according to the model case plaintiffs' own argument, they do not have the information that PSE seeks. Finally, German law does not provide for the taking of depositions.

29. PSE's Section 1782 application is made in good faith and is not intended to circumvent any German proof-gathering restrictions or policies.

## *The Higher Regional Court of Braunschweig Would Be Receptive to Information Obtained Pursuant to 28 U.S.C. § 1782*

30. As stated *supra* ¶¶ 16-20 the Higher Regional Court of Braunschweig has invited the parties to present exemplary cases and will therefore be highly interested in and receptive to the evidence sought in this application. Evaluation of the evidence presented remains at the court's discretion pursuant to section 286 of the German Code of Civil Procedure.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 26, 2019.

_____
Dr. Markus Meier