UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re Ex Parte* Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. | Case No. 1:19-mc-00166-RA |

**SUPPLEMENTAL DECLARATION OF DR. MARKUS MEIER IN SUPPORT OF THE *EX PARTE* APPLICATION OF PORSCHE AUTOMOBIL HOLDING SE FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

DR. MARKUS MEIER declares the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I make this declaration, in supplement to my previous declaration of March 26, 2019 (the "Meier Declaration"), to reply to the opposition of Respondents Elliott Associates, L.P., Elliott Capital Advisors, L.P., Elliott International Capital Advisors Inc., and Elliott Management Corporation (collectively, "Elliott") to PSE's application to obtain discovery pursuant to 28 U.S.C. § 1782 for use in the German Actions.[1] I have reviewed Elliott's opposition, including its opposition memorandum ("Opp.") and the declarations of Drs. Albert Adametz and Olaf Gierke and Professor Dr. Sebastian Mock (respectively, the "Adametz/Gierke Declaration" and the "Mock Declaration"), which were provided to me by PSE's counsel at Sullivan & Cromwell LLP.

[1] The terms used in this declaration have the same meaning assigned to them in my declaration of March 26, 2019.

2. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge and experience, or upon my review of records maintained by Hengeler Mueller in the regular course of its representation of PSE.

***Porsche Automobil Holding SE***

3. Elliott misstates PSE's relationship with VWAG by stating that VWAG is a "wholly owned subsidiary" of PSE. (Opp. at 2 & n.1, 4, 6, 15 n.7.) That is incorrect. PSE owns 30.9% of the equity in VWAG, comprising 52.9% of VWAG's ordinary shares and voting rights as of March 6, 2019. (Ex. A at 53, 133.)[2] PSE is legally and operationally independent of VWAG. PSE is not involved in VWAG operations, and VWAG does not have a contractual obligation to relay information regarding the development of vehicles to PSE. (Meier Decl. ¶ 3.) As PSE stated in its most recent annual report, PSE "sees itself as a long-term anchor investor" in VWAG and considers VWAG shares to be its "core investment." (Ex. A at 53.) In addition to its investment in VWAG, PSE holds investments in multiple other companies that conduct business related to the automotive value chain. (*Id.* at 132-33 (listing investments).)

4. Based on the incorrect statement that VWAG is PSE's wholly owned subsidiary, Elliott attributes VWAG's conduct related to the diesel matter to PSE. (Opp. at 1-2, 2 n.1 (referring to "[PSE]'s well-documented environmental and securities fraud" and citing in support the plea agreement with the U.S. Department of Justice of PSE's purportedly "wholly owned subsidiary Volkswagen AG").) PSE was not a party to VWAG's plea agreement with the U.S. Department of Justice or to related civil settlements with the U.S. Environmental Protection Agency and consumer plaintiffs. PSE disclaims any involvement in the diesel matter and

[2] Attached as Exhibit A is a true and correct copy of excerpts from the Annual Report of PSE for the year ended December 31, 2018.

disputes that VWAG's knowledge may be attributed to PSE, as plaintiffs seek to do in the Greenwich Action and in the other German Actions.

***The Greenwich Action***

The Judgment of the Regional Court of Stuttgart

5. As I conveyed in my prior declaration, the Regional Court of Stuttgart issued its judgment on October 24, 2018 in the Greenwich Action before PSE had an opportunity to present its full legal and factual arguments in support of its claims. (Meier Decl. ¶ 9.) In particular, PSE was not given the opportunity to present arguments or evidence in support of its defenses related to damages, including the three defenses for which PSE seeks discovery in this proceeding.

6. Prior to the Regional Court of Stuttgart issuing its judgment in the Greenwich Action, on February 28, 2017, the same judge issued an order in a related case initiating model case proceedings before the Higher Regional Court of Stuttgart with respect to certain questions common to the German Actions. The importance of the February 28, 2017 order to the Greenwich Action was two-fold. First, under the German Act on Model Case Proceedings in Disputes Regarding Capital Market Information (the "Model Case Act"), the judge was not permitted to issue a judgment in favor of the claims in the Greenwich Action while the model case proceedings were pending, but rather was required to suspend the case as dependent on the model case proceedings or to dismiss it as meritless. Second, the questions referred for determination in the Stuttgart model case related exclusively to issues of liability, and the February 28, 2017 order specifically indicated that, for reasons of efficiency, issues

related to damages should be addressed only after the threshold questions of liability had been resolved.[3]

7. Consistent with its purpose to provide for the efficient resolution in a single proceeding of questions common to multiple cases, the Model Case Act requires the suspension of all cases "whose decision is contingent upon" a pending model case. (Meier Decl. ¶ 8); Gesetz über Musterverfahren in Kapitalmarktrechtlichen Streitigkeiten [KapMug] [Model Case Act], § 8(1), *translation available at* https://www.gesetze-im-internet.de/englisch_kapmug/index.html. This suspension requirement is mandatory, except as to claims that the lower court determines to be meritless and subject to dismissal, since the outcome of such claims (*i.e.*, dismissal) is not dependent on the model case. Therefore, although the February 28, 2017 order was issued in the case *Wolverhampton City Council* v. *Porsche Automobil Holding SE*, No. 22 O 101/16, *appeal filed*, No. 1 U 204/18 (the "Wolverhampton Action"), the order was relevant to and necessitated the suspension of all of the securities actions pending against PSE concerning the diesel matter, including the Greenwich Action, to the extent the court did not decide to dismiss the claims.

8. On October 20, 2017, based on this requirement, the Regional Court of Stuttgart partially suspended the Greenwich Action with respect to the Stuttgart model case proceedings to the extent it was based on transactions that occurred from June 3, 2014 until July 6, 2015. Regarding claims based on pre-June 3, 2014 transactions, the Regional Court of Stuttgart conveyed its preliminary view that such claims were without merit and should be voluntarily dismissed, and as such need not be suspended. After the court reversed its position

[3] By an order of March 27, 2019 by the Higher Regional Court of Stuttgart in the Stuttgart model case proceedings, discussed further below, the Stuttgart model case proceedings are now defunct, having been deemed impermissible in light of the already-pending Braunschweig model case proceedings, in which PSE is a defendant.

with respect to transactions prior to June 3, 2014 and found the Greenwich Plaintiffs had met their minimum pleading burden, PSE argued that the remainder of the Greenwich Action was also required to be suspended under the Model Case Act, since claims related to pre-June 3, 2014 transactions would otherwise remain pending and would be dependent on the model case proceedings.[4]

9. PSE's opportunity to assert its damages defenses in the Stuttgart model case proceedings was limited by the scope of the February 28, 2017 order, which referred for model case proceedings questions related only to liability (and by subsequent orders of December 6, 2017, certain questions of local jurisdiction). The questions included, for example, whether the knowledge of certain VWAG board members and inside information held by VWAG would be attributable to PSE. The questions referred for model case proceedings did not address issues of damages. To the contrary, the Regional Court of Stuttgart stated in the February 28, 2017 order that addressing damages issues in the model case proceedings before the question of the alleged liability of PSE was resolved would be inefficient. (Ex. C ¶ 70.)[5] The court stated that addressing the alleged damages claims at this stage, where the court was still considering threshold questions of liability, would result in "unnecessary, time-intensive, and costly investigation." (*Id.*) The court stated that the Higher Regional Court of Stuttgart should first consider the liability issues and the current scope of the model case proceedings should be limited to determining whether there was liability. (*Id.*) Therefore, because the issue of damages

---

4 For the reasons discussed below (*see infra* ¶¶ 27-30), PSE argued that the Regional Court of Stuttgart should suspend these claims in favor of the Braunschweig model case proceedings, where questions determinative of the Greenwich Action were already being addressed.

5 Attached as Exhibit B is a true and correct copy of an excerpt of the February 28, 2017 order of the Regional Court of Stuttgart. A certified translation of the excerpt of the order is attached as Exhibit C.

had not been referred to the Higher Regional Court of Stuttgart, PSE could not present damages defenses in the Stuttgart model case proceedings.

10. In addition to precluding PSE from raising its damages defenses in the Stuttgart model case proceedings, the Regional Court of Stuttgart's preference to postpone consideration of damages questions until the model case resolved questions of liability also inhibited PSE from raising its damages defenses in the Regional Court. In this respect, it is relevant that the same judge who issued the February 28, 2017 order in the Wolverhampton Action also oversaw the Greenwich Action. As a result, except for certain preliminary references to damages issues included in filings prior to the Regional Court of Stuttgart's February 28, 2017 order, there was no meaningful opportunity to address these issues in the Greenwich Action. Elliott's argument that PSE submitted several hundred pages of briefing in which PSE should have addressed damages issues (Opp. at 4, 11; Adametz/Gierke Decl. ¶¶ 3, 19) ignores that (i) the Greenwich Action was partially suspended in favor of the Stuttgart model case, as required by the Model Case Act; (ii) the remainder of the Greenwich Action appeared likely to be dismissed, and when the Regional Court of Stuttgart determined that it would not dismiss the remainder of the claims, PSE expected those claims also would be suspended as required by the Model Case Act; and (iii) the Regional Court of Stuttgart had indicated that consideration of damages issues should be postponed.

11. Accordingly, in the only two oral hearings held in the Greenwich Action prior to the issuance of the judgment, one on June 13, 2018 and the other on September 12, 2018, neither liability nor damage issues were discussed in substance. The hearings focused on preliminary matters. The June 13, 2018 hearing primarily concerned a motion to request the production of documents from Robert Bosch GmbH ("Bosch"), where the requested documents

allegedly supported liability issues, and PSE's motion for the case to be handled by a full three-judge panel. At the hearing on September 12, 2018, which took place approximately one month before the court issued its judgment on October 24, 2018, the Regional Court of Stuttgart addressed questions such as the right of certain witnesses not to testify, the requested suspension of the proceedings as to the Braunschweig model case, the consequences of a July 5, 2018 notice of the Higher Regional Court of Stuttgart in the Stuttgart model case proceedings that addressed the permissibility of a second model case regarding the diesel issue, and again PSE's motion for the case to be handled by a full three-judge panel. The court did not give any significant attention to issues of damages. The court also did not indicate at the September 12, 2018 hearing that it intended to issue a judgment. At the hearing, PSE expressly stated that PSE reserved the right to make further submissions, which PSE intended would include its damages defenses at the appropriate stage of the proceedings.

12. Given this background, it came as a surprise when the Regional Court of Stuttgart issued a judgment on October 24, 2018 that covered issues of damages. The surprising timing and content of the judgment is highlighted by a comparison to other cases against PSE pending before the Regional Court of Stuttgart, which have either been suspended in favor of the Stuttgart and/or Braunschweig model case proceedings or generally remain in their early stages. The judgment was also a surprise due to the well-accepted practice of German courts to first consider arguments and evidence on liability followed by arguments and evidence on damages before issuing a judgment with respect to them. The only other judgment to have been issued in the German Actions was issued on the same day, by the same judge, in the Wolverhampton Action, and came equally as a surprise. PSE has challenged the judgment as impermissibly issued on the grounds that, at the time of its issuance, the Greenwich Action was suspended in

part in favor of the Stuttgart model case and should have been suspended in its entirety with respect to the Braunschweig model case.[6]

13. The judge who issued the Greenwich and Wolverhampton judgments has now been recused, on the successful motion of PSE and VWAG, after his spouse filed a lawsuit against VWAG in December 2018 based on claims related to the spouse's diesel vehicle.

Evidence Requests in the Regional Court of Stuttgart

14. Elliott claims that PSE should have first sought the evidence it requests through this Section 1782 proceeding in the Regional Court of Stuttgart. (Adametz/Gierke Decl. ¶ 6.) However, for all of the same reasons that PSE was unable to present its damages defenses before the Regional Court of Stuttgart and before the Higher Regional Court of Stuttgart in the Stuttgart model case proceedings (*see supra* ¶¶ 5-13), PSE did not have the opportunity to request or obtain evidence related to its damages in those courts.

15. In Germany, requests for documents and testimony are submitted to the court at the same time—indeed, in the same documents in which—the parties present to the court the related legal and factual issues. Based on the parties' presentation of the relevant legal and factual issues, the court decides whether to order the production of the requested documents and testimony. This process is different from what I understand the process to be in U.S. courts,

[6] The Regional Court of Stuttgart indicated it was aware of the early timing of the judgment, which the court purported to justify by stating that it had interpreted the parties' pleadings as having requested the court to render judgment on the entire case. Needless to say, PSE did not request the entry of a judgment before having the opportunity to present its key damages defenses. The court's portrayal of PSE's submissions in this respect was unfounded and contrary to PSE's reservation of the right to make further submissions at the September 12, 2018 hearing. The court also contended that it was not bound by the pending Stuttgart model case proceedings because the Higher Regional Court of Stuttgart had, in the Regional Court's view, failed to conduct the model case proceedings in an efficient manner. There is no basis in law for the Regional Court's assertion that its view of the manner in which the Higher Regional Court was conducting the model case proceedings excused the Regional Court from the statutory requirement to suspend cases dependent on pending model case proceedings.

where a party may request evidence directly from the opposing party and may do so before the relevant issues have been presented to the U.S. court. For the same reason that PSE did not have an occasion and was not required to present its substantive arguments related to its damages defenses to the Regional Court of Stuttgart and to the Higher Regional Court of Stuttgart in the Stuttgart model case proceedings, PSE also did not have occasion to request those courts to order the production of documents related to PSE's damages defenses.

16. Elliott asserts that on March 24, 2018, the Regional Court of Stuttgart "informed all parties . . . that it [was] both willing and prepared to take evidence located outside of Germany, including in the United States." (Adametz/Gierke Decl. ¶ 6.) Elliott is apparently referring to a March 29, 2018 order of the Regional Court of Stuttgart; PSE is aware of no order or other statement issued by the court in the Greenwich Action on March 24, 2018. Elliott's statement mischaracterizes the March 29, 2018 order by suggesting that the court contemplated allowing the parties to seek discovery broadly or on a variety of topics. In fact, the court's order was specifically addressed to the question of whether and how to obtain testimony from six individuals located in the United States, with the focus on two former VWAG employees, Oliver Schmidt and James Liang, both of whom are in prison in the United States. (Ex. E ¶¶ 17-26.)[7] The court's order elaborates on the circumstances of when and how the testimony of these six individuals could be taken. (*Id.*) More importantly, the topics of these individuals' testimony related to liability, not the amount of damages allegedly suffered by the Greenwich Plaintiffs. The court's order gave no indication that it was departing from its prior intention to focus exclusively on issues of liability and postpone consideration of issues of damages. The March 29, 2018 order was therefore not a general offer to allow the parties to collect evidence in the

[7] Attached as Exhibit D is a true and correct copy of the March 29, 2018 order of the Regional Court of Stuttgart. A certified translation of the order is attached as Exhibit E.

United States, as Elliott portrays it, but rather whether and how to obtain testimony from specific individuals regarding questions of liability. Separate sections of the March 29, 2018 order addressed additional topics—including a request for disclosure of certain documents from Bosch (a German corporation), the retrieval of addresses for German witnesses, taking evidence on the topic of whether PSE had engaged in unconscionable conduct, deadlines for filings, and the potential joinder of the proceedings—none of which included a general offer for the parties to take evidence in the United States.

17. Even if it had been the appropriate time to request the Regional Court of Stuttgart to order the production of documents regarding damages issues, PSE would not have been able to request or to obtain most, if any, of the discovery that it seeks through this Section 1782 proceeding. As I explained in my prior declaration, German law requires PSE to identify each document it seeks individually, *e.g.*, by providing the title, content, and date. (Meier Decl. ¶ 28.) Since PSE is not able to identify in this manner, for example, Elliott's documents describing its strategy for trading in PSE shares, PSE would not have been able to request or obtain these documents in the Regional Court of Stuttgart as required under German procedural law. (*Id.*)

18. In further protest to PSE's requested discovery, Elliott claims that PSE obstructed the Greenwich Plaintiffs' ability to obtain evidence in the Greenwich Action. (Adametz/Gierke Decl. ¶¶ 3, 5, 8.) These assertions are unfounded. PSE has not "stymied the Greenwich Plaintiffs' ability to call any witnesses whatsoever." (*Id.* ¶ 8.) In fact, a considerable number of witnesses were called by the Regional Court of Stuttgart, including the former chief executive officer of VWAG and the former executive chairman of PSE Martin Winterkorn, as well as numerous other senior VWAG employees. These employees all declined to testify,

asserting their constitutional and procedural rights to avoid self-incrimination. Regarding Elliott's claim that "[PSE] did everything it could to attempt to prevent even the slightest disclosure of facts related to its [sic] Dieselgate scandal, including objecting to the calling of witnesses in the course of the proceedings" (Adametz/Gierke Decl. ¶ 5), so far as PSE is able to discern, this statement refers to PSE's response to the theory asserted by the Greenwich Plaintiffs to avoid dismissal of their claims pre-dating June 3, 2014, which PSE asserted was too implausible to justify taking witness testimony. In particular, in response to the preliminary view of the Regional Court of Stuttgart that the Greenwich Plaintiffs' claims based on transactions prior to June 3, 2014 were not substantiated and should be voluntarily dismissed (*see supra* ¶ 8), rather than voluntarily dismissing the claims, the Greenwich Plaintiffs submitted a new theory of liability. The Greenwich Plaintiffs alleged that when PSE started to invest in and eventually increased its holdings of VWAG shares starting in 2006, PSE deprived VWAG of the funds to develop a clean diesel engine and thereby forced VWAG to implement a defeat device. PSE responded to this unsupported and far-fetched story and contended that there was not a reasonable basis to call witnesses in regard to it.

19. Elliott's assertions that PSE has obstructed the disclosure of documentary evidence before the Regional Court of Stuttgart are also unfounded. Elliott asserts that "[t]he Greenwich Plaintiffs . . . applied for third-party disclosure . . . with respect to certain documents Petitioner continues to withhold." (Adametz/Gierke Decl. ¶ 3.) However, the requested documents concern VWAG documents that the Greenwich Plaintiffs sought to obtain from Bosch, not from PSE, and the documents are not in PSE's possession or under its control. Elliott's statement that "Petitioner continues to withhold" documents may have followed from its incorrect assertion that VWAG is PSE's wholly owned subsidiary. (*See supra* ¶¶ 3-4.) As to

PSE's response to the request to seek evidence from Bosch (Adametz/Gierke Decl. ¶ 5), PSE opposed the taking of the requested evidence as irrelevant to the proceedings. The requested evidence included primarily correspondence from Bosch to VWAG and is therefore irrelevant as to the liability of PSE. Although the Regional Court of Stuttgart originally ordered the documents to be produced, the Higher Regional Court of Stuttgart overturned the decision on the grounds that Bosch, as a potentially liable party, could not be obligated to produce the documents under German procedural rules.

The Admissibility of PSE's Damages Defenses and the Requested Evidence on Appeal

20. Elliott contends that PSE will not be permitted to raise its damages defenses or to introduce the discovery PSE seeks through this proceeding in its appeal of the Greenwich Action because "[PSE] never asserted the Purported Defenses in the Greenwich Action" or requested related evidence at the trial court. (Adametz/Gierke Decl. ¶¶ 17-19.) This is incorrect. PSE did not have the opportunity to present its damages defenses or relevant evidence prior to the Regional Court of Stuttgart issuing its judgment. (*See supra* ¶¶ 5-19.) Because PSE was not able to present its damages defenses and evidence at the trial court, it will be permitted to do so on appeal.

21. Section 531 of the German Code of Civil Procedure, which Elliott correctly recognizes governs the Greenwich Action on appeal (Adametz/Gierke Decl. ¶ 18; Mock Decl. ¶¶ 4-5), provides that "[n]ew means of challenge or defense are to be admitted" on appeal in three circumstances: where they (1) "[c]oncern an aspect that the court of first instance has recognizably failed to see or has held to be insignificant"; (2) "[w]ere not asserted in the proceedings before the court of first instance due to a defect in the proceedings"; or (3) "[w]ere

not asserted in the proceedings before the court of first instance, without this being due to the negligence of the party."

22. All three of these circumstances—any one of which is sufficient to warrant the introduction on appeal of defenses and evidence not raised below—are applicable in the Greenwich Action. By proceeding to a judgment without giving PSE the opportunity to submit briefing and evidence in support of its damages defenses, the Regional Court of Stuttgart "has recognizably failed to see" or "held to be insignificant" PSE's defenses. The Regional Court of Stuttgart's issuance of the judgment in this manner constitutes a "defect in the proceedings." And the fact that the defenses were not introduced before the Regional Court of Stuttgart was not "due to the negligence of [PSE]" but due to the Regional Court of Stuttgart's handling of the case.

23. In his declaration, Professor Mock correctly recognizes that section 531 permits the introduction of evidence on appeal in these three circumstances. (Mock Decl. ¶¶ 4-5.) However, Professor Mock then proceeds to find in conclusory fashion that none of these circumstances is applicable in the Greenwich Action, stating only that "[PSE] failed to seek discovery . . . despite ample opportunity to do so" and that "none of the conditions is met by [PSE]." (*Id.* ¶¶ 3, 5.) In the same manner, Drs. Adametz and Gierke state that PSE "failed to raise" the three defenses in the Greenwich Action even though "[PSE] had every chance to assert its [defenses]." (Adametz/Gierke Decl. ¶¶ 18-19.) In making these conclusory assertions, Professor Mock and Drs. Adametz and Gierke all fail to address the procedural history of the Greenwich Action demonstrating that PSE, in fact, did not have "every chance" to assert its defenses, but to the contrary was deprived of the opportunity to do so. As such, PSE will be permitted to assert its damages defenses on appeal.

24. As to Elliott's claim that PSE has not yet asserted its damages defenses "in the . . . Greenwich Appeal" (*id.* ¶ 17), this statement also is incorrect. PSE briefed the Higher Regional Court of Stuttgart on PSE's sale and purchase allocation defense and its related transactions defense, insofar as it concerned related sales of PSE shares, on February 25, 2019 in support of PSE's appeal in the Greenwich Action. (Ex. G ¶¶ 931-54, 1057-86.)[8] PSE also intends to make further submissions regarding these defenses as the appeal progresses. PSE has not yet submitted briefing regarding its reliance defense as part of the appeal because the Regional Court of Stuttgart was not required to, and did not, make findings regarding reliance with respect to the portion of the judgment appealed by PSE. However, since reliance is arguably required for tort claims that were dismissed by the Regional Court and whose dismissal the Greenwich Plaintiffs have appealed, PSE expects that it is likely to have occasion to present its reliance defense as the appeal progresses.

25. In addition to asserting its legal arguments in support of the damages defenses, PSE will also be able to submit the evidence it obtains through this Section 1782 proceeding during the appeal in the Greenwich Action. I have been informed that in the U.S. court system, appellate courts do not make factual determinations if the factual issue has not first been addressed by the trial court. Although German courts ordinarily adhere to a similar approach, unlike in the United States, appellate courts in Germany may take evidence and decide factual questions in the first instance where the trial court has failed to do so in circumstances such as those here. Alternatively, the Higher Regional Court of Stuttgart may order that the case be remanded to the Regional Court of Stuttgart with instructions that it should consider the

8 Attached as Exhibit F is a true and correct copy of an excerpt of PSE's February 25, 2019 submission to the Higher Regional Court of Stuttgart in the appeal of the Greenwich Action. A certified translation of the excerpt of the submission is attached as Exhibit G.

parties' evidence and arguments regarding damages in the first instance. If that were the case, PSE would introduce evidence obtained through this proceeding for the same purposes as it would before the Higher Regional Court of Stuttgart.

26. Finally, in the event PSE's appeal of the Greenwich Action is suspended in favor of the Braunschweig model case before the Higher Regional Court of Stuttgart issues a ruling on PSE's damages defenses in the appeal—a scenario that is likely, as described below—PSE will use the requested evidence both in the Braunschweig model case to inform the relevant pleading standard, as well as in the Greenwich Action after the Braunschweig model case concludes and the suspended cases resume to address factual issues specific to each individual case.

***The Braunschweig Model Case***

The Likely Suspension of the Greenwich Action in Favor of the Braunschweig Model Case

27. Although the Greenwich Plaintiffs are not yet parties to the Braunschweig model case proceedings, they will in all likelihood become parties to the Braunschweig model case in the course of this year. As I described in my prior declaration, the Model Case Act requires the suspension of cases where the outcome is dependent on the decision of a pending model case. (Meier Decl. ¶ 8; *see supra* ¶ 7); Gesetz über Musterverfahren in Kapitalmarktrechtlichen Streitigkeiten [KapMug] [Model Case Act], § 8(1), *translation available at* https://www.gesetze-im-internet.de/englisch_kapmug/index.html. The obligation to suspend a case whose outcome depends on a model case applies to proceedings before the Higher Regional Court of Stuttgart. Because questions that will determine the outcome of the Greenwich Action are now being considered as part of the Braunschweig model case proceedings, including the issues of damages that PSE outlined in its application, the Higher

Regional Court of Stuttgart will in all likelihood suspend the Greenwich Action in favor of the Braunschweig model case.

28. Elliott notes that the Regional Court of Stuttgart declined to suspend the Greenwich Action in favor of the Braunschweig model case at the same time it issued the judgment, a fact PSE acknowledged in its application. (Adametz/Gierke Decl. ¶ 12; Meier Decl. ¶ 9.) However, Elliott's assertion that following the Regional Court of Stuttgart's decision "there is no reason to think that the [Higher Regional Court of Stuttgart] will now stay or suspend the Greenwich Action" is wrong. On March 27, 2019, the Higher Regional Court of Stuttgart issued a decision holding that the model case proceedings then pending before it were not permitted because the underlying case was dependent on the model case proceedings already pending before the Higher Regional Court of Braunschweig. Under the Model Case Act, a second model case may not be initiated with respect to an action whose outcome depends on an already-pending model case. The second model case proceeding in this circumstance "shall be inadmissible." Model Case Act, § 7, *translation available at* https://www.gesetze-im-internet.de/englisch_kapmug/index.html. Although the Higher Regional Court of Stuttgart did not expressly address in its March 27, 2019 decision whether the German Actions are required to be suspended in favor of the Braunschweig model case, its holding was predicated on the finding that the underlying action against PSE was contingent on the Braunschweig model case—indeed, section 7 of the Model Case Act, which was the basis for the March 27, 2019 decision, incorporates by reference section 8(1) of the Model Case Act, which specifies the suspension requirement—strongly suggesting that the German Actions must be suspended in favor of the Braunschweig model case. PSE expects to submit the March 27, 2019 decision and accompanying briefing in the Greenwich appeal by the end of June 2019.

29. Elliott faults PSE for changing its position regarding the suspension of the Greenwich Action. (Adametz/Gierke Decl. ¶ 12.) PSE originally took the position that the Greenwich Action should not be suspended in favor of the Braunschweig model case because the Greenwich Action was meritless. (*See supra* ¶ 8.) Cases without merit need not be suspended under the Model Case Act. (*See supra* ¶ 7.) In light of the preliminary view expressed by the Regional Court of Stuttgart on October 20, 2017 that the Greenwich Plaintiffs had failed to sufficiently substantiate their claims related to transactions prior to June 3, 2014 and that those claims should be dismissed (*see supra* ¶ 8), suspension was not appropriate. When the Regional Court of Stuttgart changed its view following a further submission of the Greenwich Plaintiffs, PSE responded that suspension of the claims was then appropriate since the claims would now be pending. (*Id.*)

30. PSE's position was also informed by a July 5, 2018 notice of the Higher Regional Court of Stuttgart in the Stuttgart model case proceedings in which the court addressed the February 28, 2017 order of the Regional Court of Stuttgart that had initiated the model case proceedings. In addition to identifying certain potential procedural issues with the lower court's order, the Higher Regional Court of Stuttgart noted that there could not be a second model case because a model case was already pending—a reference to the Braunschweig model case. Following the Higher Regional Court of Stuttgart's July 5, 2018 guidance regarding what is a novel and evolving area of the law, PSE acknowledged that suspension in favor of the Braunschweig model case would be the appropriate course as a matter of law. Far from arbitrarily or opportunistically changing positions, as Elliott alleges, PSE's position regarding suspension of the Greenwich Action has appropriately reflected the posture of the proceeding and statements by the Regional and Higher Regional Courts of Stuttgart. The July 5, 2018

notice—mention of which is conspicuously absent from the declaration of Drs. Adametz and Gierke—also confirms the likelihood that the Greenwich Action will be suspended in favor of the Braunschweig model case.

The Receptivity of the Higher Regional Court of Braunschweig

31. Even pending or absent suspension of the Greenwich Action, the Higher Regional Court of Braunschweig would be receptive to evidence obtained through this Section 1782 proceeding to inform its consideration of the appropriate pleading standards regarding damages issues. Elliott refers to an October 23, 2018 decision in which the Higher Regional Court of Braunschweig stated that it would not rule on issues that *exclusively* concern the liability of PSE. (Adametz/Gierke Decl. ¶ 13.) Specifically, the Higher Regional Court of Braunschweig declined to rule on (i) whether VWAG's knowledge of the diesel issue is attributable to PSE due to certain overlapping members of the companies' management boards, and (ii) whether the diesel issue and the consequences for VWAG are "imminent" issues for PSE within the meaning of German securities law. Elliott omits, however, that in a previous order on June 15, 2018, the Higher Regional Court of Braunschweig had affirmed that it was competent to rule with respect to PSE on certain issues, such as the knowledge possessed by the VWAG management board, which plaintiffs argue should be attributed to PSE. The Higher Regional Court of Braunschweig's rulings on such issues are relevant to and will be binding on PSE. Following the June 15, 2018 order, PSE is a defendant in the Braunschweig model case proceedings and is subject to all rulings of the Higher Regional Court of Braunschweig on issues relevant to PSE.

32. The issues under consideration by the Higher Regional Court of Braunschweig that will be binding on PSE include the standards for the determination of

damages, for which PSE is seeking discovery through Section 1782. Since the pleading standard for the determination of damages is relevant to both VWAG and PSE, it is not an issue that relates exclusively to PSE and falls outside the scope of the October 23, 2018 decision. PSE is therefore entitled to submit evidence obtained through this Section 1782 proceeding to support PSE's damages defenses in the Braunschweig model case proceedings. The fact that the Higher Regional Court of Braunschweig has requested evidence of this type—including from PSE—confirms that it will be receptive to relevant evidence that PSE submits from this Section 1782 proceeding. (Meier Decl. ¶¶ 16-20.)

***PSE's Section 1782 Application Is Made in Good Faith and Is Consistent with German Procedural Rules***

33. Elliott contends that "[PSE]'s application is made in bad faith and is intended to circumvent" German courts' procedures for requesting evidence. (Adametz/Gierke Decl. ¶ 14.) In support of this contention, Elliott cites "[t]he fact that [PSE] never sought in Germany the evidence it now seeks, and then only made this 1782 Application after it received an unfavorable judgment in Germany." (*Id.*) I have addressed above how Elliott's argument fails to reflect the procedural history of the Greenwich Action in which PSE was not afforded the opportunity to seek the requested discovery or to present relevant arguments prior to the issuance of the judgment. (*See supra* ¶¶ 5-19.) Although PSE is seeking to "undo the Greenwich Judgment" (Adametz/Gierke Decl. ¶ 14), PSE is not seeking to do so "by going around the German court" (*id.*) but is properly challenging the judgment in accordance with the German rules of appellate procedure. Discovery obtained through Section 1782 will play a role in PSE's appeal consistent with the German procedural rules.

34. Elliott refers to the *Relationstechnik* process of taking evidence. (Adametz/Gierke Decl. ¶¶ 15-16.) As Elliott describes the process, at the first step, the court

assesses whether the plaintiff's allegations are sufficiently substantiated and, if the court concludes they are substantiated, at the second step considers the facts disputed by the defendant and the asserted defenses. (*Id.* ¶ 15.) Elliott appears to contend that there will be no occasion for PSE to submit evidence obtained through this proceeding in the Greenwich Action because the court will not proceed beyond the first step. (*Id.* ¶ 16.) This is wrong for multiple reasons. First, Elliott omits that, at the first step of *Relationstechnik*, the court considers not only the plaintiff's allegations but also the undisputed facts, including the contents of documents that may be submitted by the defendant. Second, contrary to Elliott's assertion that "[PSE] has not disputed the accuracy of the evidence provided by the Greenwich Plaintiffs," PSE has disputed the accuracy of the evidence provided by the Greenwich Plaintiffs, including the documentation of the alleged transactions, as well as other topics. Third, and most importantly, PSE seeks Section 1782 discovery to support its defenses, which PSE is entitled to put forward at the second step regardless of the initial sufficiency of plaintiff's allegations and the undisputed facts. There are thus multiple opportunities for PSE to put forward evidence obtained through Section 1782 consistent with the *Relationstechnik* process.

***The Viability of PSE's Defenses***

<u>Sale and Purchase Allocation</u>

35. Elliott asserts that further evidence regarding its transactions in PSE shares would be irrelevant because the prime broker for the Greenwich Plaintiffs previously submitted a statement of their purchases and sales of PSE shares executed between October 29, 2013 and September 20, 2015. (Adametz/Gierke Decl. ¶¶ 20-22.) But the very purpose of PSE's Section 1782 application is to obtain additional information regarding these transactions, including how the purchases and sales were allocated and whether the transactions were part of a larger

investment strategy or were hedged. None of this information is included in the prime broker statement, nor has it otherwise been submitted in the Greenwich Action.

36. For a plaintiff to have a claim under section 37b of the German Securities Act, German securities law requires that the shares for which damages are claimed must have been purchased during the so-called disinformation period, *i.e.*, the time period from when the issuer was required to make a disclosure until the fact required to be disclosed became publicly known. In addition, the plaintiff must have continued to hold the same particular shares that were purchased during the disinformation period until after the relevant fact became publicly known. The statements submitted by Greenwich Plaintiffs do not contain sufficient information to show that the shares sold were the same shares that were purchased during the disinformation period. Moreover, those statements do not address if and to what extent the acquired and sold shares were hedged or otherwise part of closely related transactions from which the Greenwich Plaintiffs benefitted when the PSE shares lost value after September 18, 2015.

<u>Deduction of Related Transactions</u>

37. Elliott disputes the viability of PSE's defense that related transactions should be deducted from the amount of damages claimed. (Adametz/Gierke Decl. ¶¶ 23-28.) Elliott first asserts that "[PSE]'s statements are misleading and wrong" because PSE did not set out this defense in the Greenwich Action or request that the court allow PSE to take evidence in support of the defense. (*Id.* ¶ 24.) Once again, Elliott's argument fails to account for the procedural history of the Greenwich Action in which PSE did not have the opportunity to present damages issues to the court. (*See supra* ¶¶ 5-19.)

38. Elliott also contests PSE's defense on the merits, contending that transactions in securities other than PSE shares are not sufficiently related to be deducted and

that "under German law [a risk mitigation] strategy and the benefits derived from it would be of no relevance." (Adametz/Gierke Decl. ¶¶ 25, 28.) Elliott faults PSE for "not cit[ing] a single decision or opinion in German legal literature that supports its view." (*Id.* ¶ 28.) However, an unbroken line of case law in Germany holds that a plaintiff is only entitled to compensation for damages actually suffered. To the extent a plaintiff also received a benefit from a contract violation or from a tortuous act, that benefit must be factored into the calculation of damages. This principle is referred to as *Vorteilsausgleichung* (profit adjustment), and is a well-accepted principle under German law.

39. The German Federal Court of Justice, Germany's highest civil court, has established in numerous rulings that alleged losses must be reduced by corresponding gains if (i) the gains and the losses are both caused by the breach of contract or tort giving rise to the claim, (ii) the nature of the gain is the same as the nature of the loss, (iii) a set-off would be in line with the purpose of the obligation to compensate, (iv) a set-off would not unduly burden the plaintiff, and (v) a set-off would not unduly favor the defendant. *Cf.* German Federal Court, judgment dated January 16, 1990, docket no. VI ZR 170/89; judgment dated December 21, 1989, docket no. III ZR 118/88; judgment dated April 4, 2014, docket no. V ZR 275/12. Whether the recognition of particular gains corresponds to the purpose of the obligation to compensate and does not unduly burden the plaintiff or unduly favor the defendant is assessed on a case-by-case basis. There is, therefore, no fixed test whether a set-off of gains and losses is warranted in a particular case. However, in relation to financial investments, the Federal Court of Justice, in its decision dated October 18, 2018, gave guidance on the factors to be considered in assessing whether gains must be recognized or not. In the case before the Federal Court of Justice, the plaintiff had suffered losses from an investment in a fund that the plaintiff made because its

investment advisor omitted to disclose material information regarding the investment. The Federal Court held that the plaintiff's losses had to be set off against the plaintiff's gains from its investment in another fund, which the plaintiff had entered into based on the same incomplete advice by the investment advisor. According to the Federal Court of Justice, the following factors allowed for a set-off: (i) both investments were linked by a common investment strategy, (ii) the information that should have been disclosed was relevant for both investments, (iii) the investments were, by their nature, similar, and (iv) there was a temporal connection between both investments.

40. As applied to the allegations in the Greenwich Action, the factors outlined in the Federal Court of Justice's decision strongly indicate that transactions in securities related to PSE shares (*e.g.*, VWAG shares and derivatives) and transactions that were part of a single investment strategy must be deducted from the damages claimed by the Greenwich Plaintiffs. Particularly in light of the Federal Court of Justice's decision, Elliott's statement that related transactions used by the Greenwich Plaintiffs to mitigate risk "would be of no relevance to the injuring party (PSE)" (Adametz/Gierke Decl. ¶ 28) is contrary to the principle of *Vorteilsausgleichung* and is, in PSE's view, wrong.

41. Taking issue with the citation in my prior declaration to the October 18, 2018 decision of the Federal Court of Justice (Meier Decl. ¶ 13), Elliott contends that the scope of this decision was limited to contract damages in the context of investment advice and does not extend to securities law claims, whether based in statute or in tort (Mock Decl. ¶¶ 6-11). The law on damages to be compensated is located in sections 249 *et seq.* of the German Civil Code. *See Bürgerliches Gesetzbuch* [BGB] [German Civil Code], *§§ 249 et seq.*, *translation available at* http://www.gesetze-im-internet.de/englisch_bgb/index.html. Those damages provisions apply

in general. It makes no difference whether damages compensation is claimed under tort law, securities law, property damage, or in cases of incorrect investment advice. The Federal Court of Justice's decision is therefore supportive of PSE's defense on damages.

42. Elliott asserts that I "previously had acknowledged that" the decision of the Federal Court of Justice was "irrelevant to the case at hand" and that I "failed to disclose" as much in my prior declaration. (Adametz/Gierke Decl. ¶ 26.) Elliott's statement mischaracterizes PSE's February 25, 2019 submission to the Higher Regional Court of Stuttgart in the Greenwich Action. In that submission, PSE highlighted on several pages that the Federal Court of Justice's decision is relevant to PSE's damages defense. (Ex. G ¶¶ 1072-86.) In the sentence quoted by Elliott, PSE stated that the facts of the decision are different from PSE's case, then proceeded to describe how the principles set forth in the decision are to be applied in PSE's case. (*Id.* ¶ 1074-75.) Although the precise translation of the sentence offered by Elliott is questionable, regardless of the translation used, the sentence as it appears in context in PSE's submission makes clear that PSE regards the Federal Court of Justice's decision as supportive of PSE's damages defense. (*Id.* ¶¶ 1072-86.)

43. Finally, Elliott asserts that "the Federal High Court has repeatedly and frequently held . . . that benefits from other transactions shall not lead to a reduction in damages if the reduction does not correspond to the purpose and nature of the compensation, and if it unreasonably burdens the injured party or unreasonably discharges the injuring party." (Adametz/Gierke Decl. ¶ 27.) This statement misses the point. The question is not *if* related transactions are relevant for the calculation of damages but *which* transactions are sufficiently related. PSE's defense is that transactions in related securities and transactions that were part of

a single investment strategy are sufficiently related such that they should be deducted from the Greenwich Plaintiff's alleged damages under the relevant law.

Reliance

44. Elliott disputes the relevance of the requested discovery to PSE's reliance defense on the basis that causation is presumed under section 37 of the German Securities Act, and that "[PSE] has not asserted anything in the Greenwich Action to challenge the presumption of the causal link." (Adametz/Gierke Decl. ¶ 29.) Once again, the fact that PSE has not yet had the opportunity to set forth its reliance defense, and to refute the presumption, follows from the procedural history of the Greenwich Action in which, for the reasons set out above, the court indicated that it did not yet wish to focus on damages, to which reliance relates. PSE intends to put forward its reliance defense when given the chance to do so on appeal. (*See supra* ¶ 24.) In light of the presumption in favor of causation, the evidence that PSE seeks through this proceeding will be particularly important to PSE's ability to put forward the evidence necessary to disprove reliance.

45. Regarding Elliott's contention that "it would not be sufficient to allege with no foundation the relevance of any wider trading strategies, when plaintiffs have proven their damages by bank confirmations showing all transactions in shares of [PSE]" (Adametz/Gierke Decl. ¶ 29), this statement fundamentally misunderstands PSE's reliance defense and the evidence that PSE seeks to support it. The submission of bank confirmations showing only transactions in PSE shares does not account for the impact of transactions in related securities that were part of the same trading strategy and influenced the Greenwich Plaintiffs' decisions when trading in PSE shares. The principle of *Vorteilsausgleichung* continues to apply in this context and requires that the benefits from the same (or closely related)

damaging acts or omissions be deducted from the claimed damages. PSE does not propose to submit evidence of wider trading strategies "with no foundation," but instead seeks to use the evidence obtained through this proceeding to establish such a foundation showing that the Greenwich Plaintiffs' decisions to transact in PSE shares were made in connection with and influenced by closely related securities that are required to be accounted for when determining the Greenwich Plaintiffs' entitlement to damages. (*See supra* ¶¶ 38-43.)

46. The importance of the requested discovery to PSE's damages defenses was emphasized by the requests for information of this type made by the Higher Regional Court of Braunschweig in the Braunschweig model case proceedings, where questions of damages are before the court. (Meier Decl. ¶¶ 18-20.) The Higher Regional Court of Braunschweig's treatment of damages issues indicates that Section 1782 discovery will be essential to PSE's defense, including with respect to the appropriate pleading standards, in all of the courts that will address these same issues, including the Higher Regional Court of Stuttgart in the Greenwich Action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 13, 2019.

Dr. Markus Meier

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 14th day of May 2019, a true and correct copy of the foregoing was served on all parties via the Court's ECF system.

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.