# Exhibit B



## Landgericht Stuttgart

### 22. Zivilkammer

Stuttgart, den 28. Februar 2017

Geschäfts-Nr.:
22 AR 1/17 Kap

## Vorlagebeschluss

In dem Verfahren

des nach § 9 Abs. 2 KapMuG zu bestimmenden **Musterklägers**,

gegen

**Porsche Automobil Holding SE**, vertr. d.d. Vorstandsvorsitzenden Hans Dieter Pötsch, Porscheplatz 1, 70435 Stuttgart,

- Musterbeklagte -

Prozessbevollmächtigte:   RAe Hengeler Mueller, Bockenheimer Landstraße 24, 60323 Frankfurt am Main
RAe Dres. Markus Meier und Philipp Hanfland

1

wärtiger Umstand) und den Rechts- und Compliance-Verstößen selbst, die ein bereits eingetretenes Ereignis darstellen, zu unterscheiden. Da die drohende finanzielle Last aufgrund von Bußgeldern und Schadensersatzforderungen geschädigter Anleger als künftiges Ereignis zu interpretieren ist, kann sich die Beklagte nicht mit Erfolg auf die Einrede der Verjährung berufen. Der am 9. April 2009 eingetretene Rechtsverstoß stellt zwar eine Insiderinformation dar, hindert aber nicht die Entstehung künftiger Insiderinformationen.

### 3. Klärungsbedürftigkeit der Rechtsfragen

67   Nach § 2 Abs. 1 Satz 1 KapMuG kann beantragt werden, im Wege eines Musterverfahrens eine Rechtsfrage zu klären. Unter einer „Rechtsfrage" in diesem Sinne ist dabei jede Auslegungsfrage hinsichtlich einer Rechtsnorm zu verstehen, wenn die konkrete Rechtsanwendung dem Vorlagegericht weiterhin vorbehalten bleibt (KK-KapMuG/*Kruis* Rdn. 53, *Hanisch* Das Kapitalanleger-Musterverfahrensgesetz, Diss. Berlin 2010, S. 92ff.). Vorlagefähige Rechtsfragen sind alle Fragen zu spezifischen Normen des Kapitalmarkthaftungs- und des Wertpapierübernahmerechts. Von der im Feststellungsziel genannten Frage hängt die Entscheidung des Einzelrechtsstreits ab, wenn die jeweilige Frage an einer Stelle des *Entscheidungsbaums*, der für die Endentscheidung abzuarbeiten ist, zu klären ist (so plastisch *Vorwerk* in: Vorwerk/Wolf, § 1 Rdn. 72). Dies ist vorliegend in zweierlei Hinsicht der Fall.

68   Die Frage der Betroffenheit der Holdinggesellschaft durch publizitätspflichtige Ereignisse im Konzernunternehmen Volkswagen AG und die Frage nach der Restriktion der Ad-hoc-Publizitätspflicht bei einer Holdinggesellschaft stellen klärungsbedürftige Rechtsfragen dar. Auch die im Rahmen der Wissenszurechnung aufgeworfenen Rechtsfragen, konkret die in Rede stehende Informationsabfragepflicht und die Informationsweiterleitungspflicht, sind für eine Vielzahl von Klagen klärungsbedürftig. Die Frage der Betroffenheit des Mutterunternehmens von unternehmensexternen Ereignissen im Tochterunternehmen sowie die Frage nach der Zulässigkeit der Informationsweitergabe seitens des Tochterunternehmens zur Erfüllung der Ad-hoc-Publizität sind die zentralen Rechtsfragen bei der Endentscheidung der Anlegerklagen.

### B — Zur Zeit nicht entscheidungserhebliche Feststellungsziele

69   Das Feststellungsziel **Ziff. 3** ist gemessen an den oben dargestellten Maßstäben zwar grundsätzlich zulässig. Im Rahmen von Haftungsansprüchen nach §§ 37b und 37c WpHG besteht gerade ein besonderes Bedürfnis, für eine Vielzahl von Anlegern

einen hypothetischen Kursverlauf zu ermitteln (vgl. KK-KapMuG/*Kruis*, 2. Aufl., Rdn. 43, *Wanner* aaO., S. 147).

70  Das Vorlagegericht lässt das Feststellungsziel jedoch derzeit nicht zu, um eine Überfrachtung des Musterverfahrens zu vermeiden. Kommt das Oberlandesgericht im Rahmen seiner Prüfung zu dem Ergebnis, dass die Beklagte *weder* sich eine unterlassene Informationsweitergabe durch die Volkswagen AG zurechnen lassen muss *noch* aufgrund des noch festzustellenden Wissens ihres vormaligen Vorstandsvorsitzenden, Prof. Dr. *Martin Winterkorn*, keinen konkreten Anlass bzw. keine tatsächliche oder rechtliche Möglichkeit zum Abruf der bei der Volkswagen AG eingetretenen Ereignisse in deren Tätigkeitsbereich hatte, sind die Klagen im Endergebnis abweisungsreif. Würde das Vorlagegericht in den Vorlagebeschluss auch das Feststellungsziel zur abnormalen Rendite mitaufnehmen, müsste das Oberlandesgericht aufgrund der bindenden Feststellungsziele eine unnötige, zeit- und kostenintensive Sachaufklärung von Anfang an mit Eingang des Vorlagebeschlusses (§ 273 Abs. 1 Nr. 4 ZPO iVm. § 11 Abs. 1 Satz 1 KapMuG) betreiben. Aus Sicht des Gesetzgebers dient das Verfahrensgesetz jedoch nicht dazu, Feststellungsziele verbindlich mit Breitenwirkung klären zu lassen, wenn die weitere Sachaufklärung nicht zum Erfolg der Klage führen kann (KK-KapMuG/*Vollkommer* § 11 Rdn. 25; BGH, ZB XI 9/13, juris Rdn. 106). Die Erfolgsaussichten der Klage hängen maßgeblich davon ab, ob der Senat sich den rechtlichen Ausführungen zur Wissenszurechnung des Vorlagegerichts anschließen wird oder nicht. Aus diesem Grund verwirft das Vorlagegericht den Musterverfahrensantrag Ziff. 3 nicht als unzulässig, sondern lediglich als *zur Zeit nicht entscheidungserheblich*. Kommt das Oberlandesgericht bei den bisherigen Vorlagefragen zu einem für die Kläger günstigen Ergebnis, wird es durch richterlichen Hinweis die Einführung des als derzeit nicht entscheidungserheblichen Musterverfahrensantrags Ziff. 3 nach § 15 KapMuG zuzulassen haben.

71  Mit der Rechtsfigur des als zur Zeit nicht entscheidungserheblichen Musterverfahrensantrags wird dem Anspruch auf effektiven Rechtsschutz aus Sicht der Kläger als auch der Beklagten Rechnung getragen. Das Vorlagegericht kann dadurch im Rahmen eines *case management* das Musterverfahren sachgerecht steuern, indem es passgenau die tragenden „Puzzleteile" der Klage- und der Klageerwiderung ermittelt, ohne das Musterverfahren am Anfang zu überfrachten. Das Musterverfahren soll - nur soweit erforderlich - mit Allgemeinverbindlichkeit die wesentlichen Grundfragen klären und nicht in Form eines Beweissicherungsverfahrens den Parteien das Recht auf Klärung sämtlicher potentiell erheblicher Fragen einräumen. Diese Beschränkung

27

des Musterverfahrens ist im Rahmen des Vorlagebeschlusses auch angemessen, zumal es den Umstand berücksichtigt, dass das Musterverfahren nur eine ausgegliederte erste Tatsacheninstanz ist und das Vorlagegericht vorab zu prüfen hat, welche Teile des Rechtsstreits für den eigenen Subsumtionsschluss in seiner Endentscheidung von Bedeutung sind. Hieraus ermittelt das Vorlagegericht nämlich aus der Vielzahl der Feststellungsanträge die Erheblichkeit einiger weniger globaler Ziele.

72   Die Ausgliederung der ersten Tatsacheninstanz im Rahmen des Musterverfahrens auf einen Senat am Oberlandesgericht dient aus Sicht des Gesetzgebers der erhöhten Richtigkeitsgewähr in Bezug auf die Klärung von sich im Fluss befindlichen Rechtsfragen und streitigen Tatsachenfragen für eine Vielzahl von Anlegern. Daraus darf jedoch nicht der Schluss gezogen werden, dass sämtliche Anspruchsvoraussetzungen der Norm durch das Oberlandesgericht zu ermitteln sind (BGH, XI ZB 26/07, ZIP 2008, 1326 (1329)). Anderenfalls hätte der Gesetzgeber entsprechend den Freigabeverfahren nach § 246a AktG eine erstinstanzliche Zuständigkeit des Oberlandesgerichts begründet.

C — Unzulässige Musterverfahrensanträge

73   Das Gericht verwirft nach § 3 KapMuG die gestellten Musterverfahrensanträge insoweit, als sie unzulässig sind. Ist ein Musterverfahrensantrag teilweise unzulässig, kann die Zurückweisung entweder im Rahmen der Eintragung des teilweise zulässigen Musterverfahrensantrags erfolgen oder bei ausreichender Anzahl von Musterverfahrensanträgen (§ 3 Abs. 4 iVm. § 6 Abs. 1 KapMuG) im Vorlagebeschluss erfolgen.

74   Die Zurückweisung von nicht entscheidungserheblichen oder zur Zeit nicht entscheidungserheblichen Musterverfahrensanträgen trägt dem binnenjustiziellen Bündelungsmechanismus des KapMuG Rechnung, wonach nur entscheidungserhebliche Tatsachen- und Rechtsfragen mit Breitenwirkung festgestellt werden sollen. Zugleich wird dadurch eine Überfrachtung des Musterverfahrens vermieden. Eine Erweiterung des Musterverfahrens nach § 15 KapMuG ist den Parteien des Musterverfahrens bezüglich der zurückgewiesenen Feststellungsziele solange verwehrt, als das Oberlandesgericht keinen weiteren von der Rechtsauffassung des Vorlagegerichts abweichenden rechtlichen Hinweis erteilt.