# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
                                   :

*In Re Ex Parte* Application of Porsche    :
Automobil Holding SE for an Order Pursuant to
28 U.S.C. § 1782 Granting Leave to Obtain    :    Case No. 1:19-mc-00166-RA-SDA
Discovery for Use in Foreign Proceedings.    :
                                   :
                                   :
                                   :
                                   :
———————————————————— x

## THIRD SUPPLEMENTAL DECLARATION OF DR. MARKUS MEIER
## IN OPPOSITION TO RESPONDENTS' MOTION FOR RECIPROCAL DISCOVERY

        DR. MARKUS MEIER declares the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

        1.    I am a partner with the law firm of Hengeler Mueller Partnerschaft von Rechtsanwälten mbB ("Hengeler Mueller") in Frankfurt am Main, Germany.  Hengeler Mueller is counsel for Porsche Automobil Holding SE ("PSE") in more than 200 related legal proceedings filed against PSE in the German Regional Courts of Stuttgart and Braunschweig, in which plaintiffs allege PSE failed to disclose unlawful emissions modifications in certain diesel vehicles manufactured by Volkswagen AG ("VWAG") (the "German Actions").  The German Actions include the case captioned *Greenwich (Japan) Ltd., et al.* v. *Porsche Automobil Holding SE*, No. 22 O 348/16, *appeal filed*, No. 1 U 205/18, currently pending in the German Higher Regional Court of Stuttgart (the "Greenwich Action").  I am licensed to practice law in Germany.

        2.    I make this declaration in opposition to the motion of Respondents Elliott Associates, L.P., Elliott Capital Advisors, L.P., Elliott International Capital Advisors Inc., and Elliott Management Corporation (together, "Elliott") for reciprocal discovery from PSE.  I have

reviewed Elliott's memorandum in support of its motion (the "Memorandum"), the accompanying declarations of Josef Broich and Dr. Olaf Gierke (the "Broich/Gierke Declaration"), and the proposed subpoenas attached to the declaration of Duane L. Loft ("Loft Declaration"), which were provided to me by PSE's counsel at Sullivan & Cromwell LLP.  Except as otherwise indicated, all statements in this declaration are based upon my personal knowledge and experience, or upon my review of records maintained by Hengeler Mueller in the regular course of its representation of PSE.

3.      I previously submitted two declarations in this matter on March 26, 2019 (the "Meier Declaration") and on May 14, 2019 (the "Supplemental Meier Declaration") in support of PSE's application for discovery pursuant to 28 U.S.C. § 1782 ("Section 1782").  In addition, I submitted a declaration on September 20, 2019 in response to Elliott's objections to the orders of Magistrate Judge Stewart D. Aaron.  Although I intend the present declaration to stand alone, and have therefore reiterated certain topics from my prior declarations where relevant, citations to the prior declarations are included in case the Court would like further detail.

### *Porsche Automobil Holding SE*

4.      As I described in connection with PSE's initial application, and as Dr. Manfred Döss describes in his declaration submitted today (the "Döss Declaration"), PSE is a German holding company whose largest asset is shares of VWAG.  (Döss Decl. ¶ 2; Meier Decl. ¶ 3; Suppl. Meier Decl. ¶ 3.)  PSE holds approximately 31% of the equity and 53% of the voting shares in VWAG.  (Döss Decl. ¶ 2; Suppl. Meier Decl. ¶ 3.)  PSE is legally and operationally independent of VWAG.  (Döss Decl. ¶¶ 3-8, 12-19; Suppl. Meier Decl. ¶ 3.)

### *PSE's Section 1782 Application*

5.      The Greenwich Action is one of more than 200 legal proceedings that have been filed against PSE in the Regional Courts of Stuttgart and Braunschweig, Germany, alleging

that PSE omitted to disclose certain information or disclosed incorrect information to capital markets.  (Meier Decl. ¶ 6.)  The Greenwich Plaintiffs claim that PSE had knowledge, or that knowledge should be attributed to PSE, of emissions modifications in certain diesel vehicles manufactured by VWAG and its subsidiaries that qualified as unlawful "defeat devices" under U.S. law (the "diesel issue").  (*Id.*)  The Greenwich Plaintiffs assert claims under the German Security Trading Act and German tort law based on PSE's alleged failure to issue a purportedly required *ad hoc* notification and alleged misrepresentations in financial reports regarding the diesel issue.  (*Id.* ¶ 10.)  The Greenwich Plaintiffs seek compensation for damages that they allegedly incurred in connection with their alleged ownership of preference shares issued by PSE ("PSE shares") as a result of the decrease in share price following disclosure of the diesel issue by U.S. authorities.  (*Id.*)

6.      PSE considers the German Plaintiffs' claims to be without merit.  (*Id.* ¶ 11.)  PSE has asserted multiple defenses, including defenses not described here.  (*Id.*)  PSE sought Section 1782 discovery to obtain documents and testimony from Elliott in support of three damages defenses.  (*Id.* ¶¶ 12-27.)  A brief summary of the three damages defenses relevant to PSE's Section 1782 application follows.

7.      *Sale and Purchase Allocation.*  PSE has asserted that at least some of the transactions asserted by the German Plaintiffs as the basis for their claims are ineligible for protection under the Security Trading Act and related tort law.  (*Id.* ¶ 12.)  As a matter of German law, a plaintiff may only claim damages based on alleged omissions to inform capital markets with respect to transactions carried out after the time of the allegedly required *ad hoc* notification.  (*Id.*)  Under the Security Trading Act, and in PSE's view also under German tort law, a plaintiff must continue to hold these shares at least until the time the relevant inside information was disclosed,

which in this case was September 18, 2015, when the U.S. Environmental Protection Agency published its notice of violation to VWAG regarding the diesel issue. (*Id.*) PSE asserts that the German Plaintiffs sold certain shares on which their claims are based prior to the disclosure of the relevant inside information. (*Id.*) The determination of which transactions are eligible for legal protection depends on the method by which the purchase transactions are matched with the sale transactions. The German Plaintiffs, including the Greenwich Plaintiffs, have argued that shares should be matched according to the hypothetical first-in-first-out method, which as a general matter produces a high calculation of damages. (*Id.* ¶ 23.) PSE maintains that the German Plaintiffs should be required to demonstrate an actual matching of purchase and sale transactions, or in the alternative that a hypothetical allocation method that is less favorable to the plaintiffs should be used.

8.     *Deduction of Related Transactions.*    PSE maintains that the German Plaintiffs, including the Greenwich Plaintiffs, have overstated their alleged damages by disclosing only alleged transactions in PSE shares, even though the PSE shares were likely part and parcel of broader trading strategies that offset losses associated with the alleged transactions in PSE shares. (*Id.* ¶ 13.) As PSE described in its application, related transactions are particularly likely to have involved VWAG ordinary and preference shares, because VWAG ordinary shares are the largest asset of PSE and movements in the price of VWAG shares therefore are usually mirrored by the price of PSE shares. (*Id.*) Investors often use this link in various investment strategies, including hedging strategies. (*Id.*) PSE maintains that the benefits the German Plaintiffs received from related transactions of this type must be deducted from alleged damages. (*Id.*) Precedent of the German Federal Court of Justice, Germany's highest civil court, requires that profits and losses

from transactions based on a uniform investment decision or strategy must be set off against each other.  (*Id.*; Suppl. Meier Decl. ¶¶ 38-40.)

9.     *Reliance.*  With regard to the alleged tort claims, PSE maintains that the German Plaintiffs, including the Greenwich Plaintiffs, must demonstrate a causal link between PSE's alleged omission or misrepresentation and the German Plaintiffs' transactions in PSE shares.  (Meier Decl. ¶ 14.)  PSE argues that the German Plaintiffs have not met this causation requirement.  (*Id.*)  Rather, because their PSE share transactions likely were part of broader trading strategies, they would have been incentivized to engage in the PSE share transactions regardless of any disclosure of the diesel issue by PSE.  (*Id.*)

**The Procedural Posture in the Greenwich Action**

10.     There is no basis for Elliott's claim that "[r]ecent events have made [Elliott's reciprocal discovery] motion necessary."  (Mem. at 3.)  As an initial matter, Elliott's argument that the recent lifting of the stay of the Greenwich Action unexpectedly gave rise to the need for reciprocal discovery now is contradicted by Elliott's own statements in this Section 1782 proceeding and in the Greenwich Action.  In its motion, Elliott argues that it needs reciprocal discovery because it expects the appeal of the Greenwich Action to move forward, which Elliott claims was not the case at the time when the parties briefed PSE's Section 1782 application.  (*Id.*)  However, when Elliott opposed PSE's Section 1782 application, the appeal of the Greenwich Action was not stayed.  Elliott argued that the appeal of the Greenwich Action would not be stayed, and instead would remain and move forward.  (Dkt. No. 19 ¶ 12.)  In fact, Elliott contested PSE's position that the appeal of the Greenwich Action was likely to be suspended in favor of the model case proceedings in Braunschweig (the "Braunschweig Model Case").  (*Id.* ("[T]here is no reason to think that the [Higher Regional Court of Stuttgart] will now stay or suspend the Greenwich Action and transfer it to the Braunschweig Model Case.").)  In opposing PSE's

application, Elliott's arguments were consistent with the arguments of the Greenwich Plaintiffs (whom Elliott now emphasizes it controls) in the appeal of the Greenwich Action, where the Greenwich Plaintiffs argued in a July 22, 2019 court submission and at a September 12, 2019 hearing that the appeal should not be suspended.  Elliott maintains even now that the Higher Regional Court of Stuttgart's decision to suspend the appeal of the Greenwich Action "was unexpected."  (Broich/Gierke Decl. ¶ 32.)  By Elliott's own admission, Elliott's expectation at the time the parties briefed PSE's Section 1782 application was the same as Elliott's expectation now—that the appeal of the Greenwich Action would proceed.

11.     Fundamentally, the procedural posture of the Greenwich Action is substantially the same as it was at the time when PSE filed its Section 1782 application on April 5, 2019 and when the Court granted PSE's application on June 25, 2019.  Then, as now, the appeal of the Greenwich Action was open and proceeding before the Higher Regional Court of Stuttgart. It was not until October 29, 2019, more than six months after PSE filed its Section 1782 application and four months after the Court issued its June 25, 2019 order granting PSE's application, that the Higher Regional Court of Stuttgart suspended the appeal of the Greenwich Action in favor of the Braunschweig Model Case and in favor of an additional model case in Stuttgart (the "Stuttgart Model Case").[1]

---

[1]     Elliott incorrectly claims that PSE sought to stay the Greenwich Action only with respect to the Braunschweig Model Case, and that PSE opposed suspension of the Greenwich Action with respect to the Stuttgart Model Case.  (Mem. at 11; Broich/Gierke Decl. ¶ 31.)  PSE requested to stay the Greenwich Action with respect to both model cases.  Elliot's baseless and inflammatory arguments (Broich/Gierke Decl. ¶ 31) do not support any claim of forum shopping on the part of PSE.  Aside from failing to point to any evidence, Elliott's allegations do not make sense on their face.  Braunschweig is not, as Elliott claims, the "home to the Porsche family" (Broich/Gierke ¶ 31) (most Porsche family members live in Austria).  And PSE is headquartered in Stuttgart, from which Elliott claims PSE purportedly was attempting to run.

12.     Prior to the October 29, 2019 suspension, the appeal of the Greenwich Action remained active, and the parties made various submissions to the court.  For example, on July 22, 2019, the Greenwich Plaintiffs filed a 91-page answer to a submission that PSE had made on February 25, 2019 in support of its appeal.  In addition, on September 12, 2019, a hearing took place in the Greenwich Action, during which the court heard arguments regarding issues that included the jurisdiction of the Stuttgart courts, standing of the Greenwich Plaintiffs, and choice of law.  At the hearing, the Higher Regional Court of Stuttgart shared, for the first time, its preliminary determination that it would suspend the appeal of the Greenwich Action in favor of the Braunschweig and Stuttgart Model Cases.  The Higher Regional Court of Stuttgart subsequently implemented the suspension by its order of October 29, 2019.

13.     The suspension of the Greenwich Action was based on the Higher Regional Court of Stuttgart's determination that the decisions in the Braunschweig and Stuttgart Model Cases would be binding in the Greenwich Action.  As I described in connection with the earlier briefing in this matter (Suppl. Meier Decl. ¶ 27), a case must be suspended if its outcome depends on ongoing model case proceedings.  On June 16, 2020, the German Federal Court of Justice, Germany's highest court of civil jurisdiction, reversed the suspension by the Higher Regional Court of Stuttgart, finding that decisions in the Braunschweig Model Case would not be binding in the Greenwich Action and that the Stuttgart Model Case had not yet progressed sufficiently to qualify as binding.  With respect to the Braunschweig Model Case, as a matter of first impression, the German Federal Court held that a model case decision is only binding in an individual case if the model case involves the same capital market information as in the individual case.  Accordingly, the German Federal Court ruled that, even though the Braunschweig Model Case and the Greenwich Action address certain overlapping factual and legal issues, the Higher

Regional Court of Braunschweig's decision cannot be binding in the Greenwich Action because the Braunschweig Model Case is predicated on alleged misstatements and omissions by VWAG, not by PSE.[2]

14.     The German Federal Court's decision indicated that, in future months, the Greenwich Action instead may be suspended in favor of the Stuttgart Model Case, which specifically involves allegations of misstatements and omissions purportedly made by PSE. However, at the time of its June 16, 2020 decision, the German Federal Court ruled that the Stuttgart Model Case had not yet progressed sufficiently to be binding in the Greenwich Action. Due to the prior focus of the German parties on the Braunschweig Model Case, and because a different panel of the Higher Regional Court of Stuttgart had ruled that the Stuttgart Model Case was not viable, many relevant factual and legal questions regarding the diesel issue have not been submitted in the Stuttgart Model Case.  In its June 16, 2020 decision, the German Federal Court ruled the Stuttgart Model Case was viable and ordered it to proceed.  The German Federal Court also ruled that the mere expectation of the Higher Regional Court of Stuttgart that questions determinative of the Greenwich Action will be submitted to the Stuttgart Model Case in the future was not sufficient grounds to suspend the Greenwich Action.  As a result of the German Federal Court's June 16, 2020 rulings, it is likely that the parties will submit significant additional questions for consideration in the Stuttgart Model Case.  After that occurs, suspension of the Greenwich Action with respect to the Stuttgart Model Case will be mandatory, as the German

---

[2]     PSE continues to be a defendant in the Braunschweig Model Case as a result of numerous other German Actions suspended in favor of the Braunschweig Model Case.  PSE is convinced that, because the law so provides, it will remain a defendant unless and until the individual courts in those cases lift the suspensions.

Federal Court's decision confirmed, unless the Greenwich Plaintiffs' claims are dismissed early for reasons not covered by the Stuttgart Model Case, such as for a lack of eligible damages.

15.     Accordingly, the practical impact of the German Federal Court's decision of June 16, 2020 has been merely to return the appeal of the Greenwich Action to the same state of proceedings as of the time PSE filed its application.  The appeal of the Greenwich Action is again pending before the Higher Regional Court of Stuttgart, and—if the claim is not dismissed for other reasons—is likely to be suspended in favor of the Stuttgart Model Case proceedings in future months.  At the time of PSE's Section 1782 application, I described the state of the Greenwich Action as follows: "[f]urther proceedings in the Regional Court of Stuttgart, including the Greenwich Action, may [] be suspended in the coming months in light of the Braunschweig Model Case," but "[p]ending the decision on whether to suspend the Stuttgart proceedings in light of the Braunschweig Model Case, proceedings in the Regional Court of Stuttgart have continued to be individually adjudicated."  (Meier Decl. ¶¶ 8-9.)  That description remains essentially accurate today, with the exception that the forum of the model case proceedings relevant to the Greenwich Action will be in Stuttgart instead of in Braunschweig.  This difference in the forum of the model case proceedings is not material for present purposes.

16.     The Greenwich Action has not significantly progressed since the German Federal Court's June 16, 2020 decision.  Since then, the Higher Regional Court of Stuttgart set June 22, 2021 as the date of the next hearing.  In doing so, the Higher Regional Court of Stuttgart also rejected the German Plaintiffs' request to order the hearing of witnesses and expert evidence prior to the hearing, and advised the parties that a suspension of the proceedings as to the Stuttgart Model Case will be a subject of the discussions at the hearing.  By that time, it is likely that

additional questions will have been submitted in the Stuttgart Model Case, and that a stay of the Greenwich Action will be warranted.

17.     Finally, as to Elliott's claim that its own document productions are the impetus for its late application (Mem. at 1 (claiming "[s]ince [the] time" when the Court granted PSE's Section 1782 application on June 25, 2019, "discovery granted to [PSE] under Section 1782 has created a severe procedural imbalance in the German Litigation")), this claim also is baseless. PSE has not yet submitted any documents or information produced by Elliott in the Greenwich Action, in large part because Elliott has substantially delayed its productions of discovery, as described in the accompanying declaration of Suhana Han ("Han Declaration").  (Han Decl. ¶¶ 5-21.)  In addition, PSE has not yet taken the Rule 30(b)(6) deposition of Elliott, both because of the delay in Elliott's document productions and because Elliott has declined to provide available deposition dates, despite repeated requests by PSE.  (*Id.* ¶ 22-23.)  Accordingly, Elliott is in the same position it was when the parties briefed PSE's application—it expects that its document productions will be used against it in the Greenwich Action in the future, but that has not yet occurred.  As described below, Elliott also has had ample opportunity to obtain the requested discovery in the German court.

***Discovery in the Greenwich Action***

18.     Elliott asserts that it needs the requested discovery to "restore procedural parity in the German Litigation," claiming PSE has received significant Section 1782 discovery while the Greenwich Plaintiffs "remain stuck with the limited discovery record in Germany." (Mem. at 1-2.)  That assertion is meritless.  PSE has not yet introduced any documents obtained through Section 1782 discovery in the German Actions, largely due to the slow pace of Elliott's document production.  (*See supra* ¶ 17; Han Decl. ¶¶ 5-21.)  For that reason alone, Section 1782 discovery has had no impact on parity in the German Actions.

19.     Even if PSE had been able to introduce the requested Section 1782 discovery, it would not offset the parity between the parties in the Greenwich Action.  PSE's Section 1782 application sought narrow discovery concerning three of PSE's damages defenses, as the limited quantity of documents produced by Elliott reflects.  Despite the passage of nearly a year since the Court denied Elliott's objections and ordered discovery to proceed, Elliott has produced less than 11,000 pages (and until two weeks ago, less than 6,000 pages) in response to PSE's Section 1782 requests, a significant portion of which is irrelevant news alerts.

20.     In contrast, Elliott's requests seek wide-ranging discovery regarding liability issues entirely unrelated to the damages issues that were the topic of PSE's Section 1782 application.  In particular, Elliott's discovery requests focus primarily on VWAG's knowledge of the diesel issue.  For example, Elliott focuses on certain documents underlying the statement of facts that accompanied VWAG's plea agreement, all of which pertain to VWAG—not PSE. (Mem. at 8 (referring to "[m]eetings in which high-level Volkswagen executives discussed 'Project '07,' the code name for Volkswagen's scheme to evade U.S. emission standards," meetings in 2012 among VWAG executives and engineers, and an "April 24, 2014 [VWAG] presentation explaining the financial consequences Volkswagen would face").)  Elliott also speculates about potential interactions between Martin Winterkorn, who held dual roles as chairman of the management boards at PSE and VWAG, and certain VWAG employees, particularly Heinz-Jakob Neusser—interactions that, even if they occurred, would concern events at VWAG, not PSE. (Mem. at 9, 12-13.)  Finally, Elliott refers to the recent indictment of Mr. Winterkorn in Germany. (Broich/Gierke Decl. ¶ 12.)  Although Elliott claims that the indictment "revealed the existence of a multitude of documents that are highly relevant to the knowledge and complicity of [PSE's] agents" (*id.*), the press release by the public prosecutors describing the indictment (which itself is

non-public) indicates that it is predicated on actions taken by Mr. Winterkorn in his role at VWAG (Ex. A & B).[3]

21.     As described in Dr. Manfred Döss's declaration, PSE's right as a voting majority shareholder to obtain information from VWAG is limited to certain financial information necessary to prepare PSE's public financial reporting.  (Döss Decl. ¶ 15.)  In addition, VWAG is expected to notify PSE of risks that would threaten VWAG's ability to continue operating as a company.  (*Id.*)  VWAG does not have an obligation to relay information regarding the development of vehicles to PSE.  (*Id.* ¶ 5.)

22.     Contrary to Elliott's claim that "the Greenwich Plaintiffs were unable to obtain even the most basic discovery related to [PSE]'s knowledge of the emissions cheating" (Mem. at 7), the Greenwich Plaintiffs had ample opportunity in the Greenwich Action to seek discovery concerning liability issues and any limited documents PSE does possess.   The documents Elliott seeks are located in Germany and therefore within the jurisdiction of the German court.  Although PSE was prevented from seeking evidence in support of its damages defenses in the Greenwich Action due to the "surprise judgment" of the Regional Court of Stuttgart (Suppl. Meier Decl. ¶¶ 11-12),[4] there was no such obstacle to the Greenwich Plaintiffs' ability to seek

---

[3]     Attached as Exhibits A & B are two press releases of the Prosecutor's Office of Braunschweig, dated April 15, 2019 and September 24, 2019, which announce and summarize the indictments of Mr. Winterkorn.  A certified English translation of each press release is appended to the relevant exhibit.

[4]     Under German procedure, evidence requests are made to the court as part of the same submission in which substantive legal and factual arguments are presented.  (Suppl. Meier Decl. ¶ 15.)  Because PSE did not have the opportunity to make substantive submissions regarding its damages defenses prior to the issuance of the court's judgment, it also did not have the opportunity to request evidence regarding those defenses.  (*Id.*)  At a hearing on September 12, 2019, the Higher Regional Court of Stuttgart indicated its agreement with PSE's view that the parties could not have expected the issuance of the judgment.  (Dkt. No. 57-1 ¶ 12.)

evidence regarding liability.   Indeed, Elliott represented in opposing PSE's Section 1782 application that the Greenwich Action included "a full and fair opportunity to conduct discovery." (Dkt. No. 46 at 8; *see also* Dkt. No. 37 at 14:22–15:3 ("[I]n Germany they had Rule 14[2] of the German Code of Civil Procedure, [which] unlike here, requires the party if they want discovery to go to the German judge and let the German judge review it and assess it.   And if appropriate the judge will order it, just like the Greenwich plaintiffs did over a two-year period . . . . [PSE] had plenty of opportunities to do the same thing.").)   The Greenwich Plaintiffs received significant discovery in the Greenwich Action.   PSE produced more than one hundred documents.   These documents included internal VWAG memoranda, to which PSE had access because VWAG produced the memoranda in parallel proceedings in which PSE and VWAG were co-defendants.

23.     Elliott complains that "discovery in Germany is far more limited than in the United States," and that "disclosure requests must specify each individual document that [a party] seeks."   (Mem. at 6 (internal quotation omitted) (alteration in original).)   However, this requirement has not been an obstacle to the Greenwich Plaintiffs' ability to obtain the type of evidence Elliott seeks, because Elliott seeks primarily VWAG documents.   The results of the extensive investigations of and litigation against VWAG have been reported in various indictments, plea agreements, and civil settlements, and the Greenwich Plaintiffs relied heavily on those materials to make requests for specific documents in the Greenwich Action, as Elliott has done in its proposed subpoenas.

24.     Notably, Elliott has requested reciprocal discovery of a significant amount of evidence that the Greenwich Plaintiffs did not request in the Greenwich Action.   For example, the Greenwich Plaintiffs requested only five of the twenty documents that Elliott seeks through Request Nos. 6 and 7 of its reciprocal discovery requests, as summarized in Appendix A hereto.

Likewise, with respect to depositions, Elliott did not request that the court take the testimony of two of the witnesses it now seeks to depose—Hans Dieter Pötsch and Dr. Ferdinand Oliver Porsche—despite Greenwich Plaintiffs' submission of more than 130 requests for witness testimony. (*See infra* ¶ 34.) Elliott cannot fault the adequacy of German procedural mechanisms based on their purported failure to secure the production of evidence that the Greenwich Plaintiffs did not request.

25.     In addition, the Greenwich Plaintiffs were unable to secure certain evidence in the Greenwich Action because the Regional Court of Stuttgart refused their requests for that evidence. The Regional Court of Stuttgart rejected the requests of the Greenwich Plaintiffs for much of the same evidence they seek now, including requests for minutes of PSE's supervisory board and communications related to VWAG's liability and involving VWAG employees. (*See* Appendix B.)[5]  In fact, the Regional Court of Stuttgart refused the vast majority of document requests made by the Greenwich Plaintiffs. (*See id.*)  Although the Regional Court of Stuttgart did not explain why it refused to order the production of the documents, a German court must collect evidence proposed by one party if the court deems that the allegations to be proven by the evidence are sufficiently substantiated and relevant for the outcome of the case. The fact that the Regional Court of Stuttgart did not engage in a further taking of evidence indicates that it did not consider the submission of facts by the plaintiffs as sufficiently substantiated and/or relevant for the outcome of the case.

26.     Similarly, the Regional Court of Stuttgart refused to grant the vast majority of the Greenwich Plaintiffs' approximately 130 requests for witness testimony. The Regional

---

[5]     Appendix B summarizes the requests submitted by the Greenwich Plaintiffs to the Regional Court of Stuttgart to obtain documents from PSE, VWAG, and Robert Bosch GmbH, and the Regional Court of Stuttgart's decisions with respect to those requests.

Court of Stuttgart refused to hear five of the seven individuals Elliott now seeks to depose—that is, all of the individuals Elliott seeks to depose, except for the two individuals whose testimony the Greenwich Plaintiffs never requested.  The Greenwich Plaintiffs requested that the Regional Court of Stuttgart take the testimony of these five individuals in support of a new theory of liability the Greenwich Plaintiffs put forward after the Regional Court of Stuttgart gave its preliminary view indicating that it would dismiss the Greenwich Plaintiffs' claims predicated on transactions prior to June 3, 2014.  According to the new theory, when PSE started to increase its holdings of VWAG around 2006, PSE deprived VWAG of the funds to develop a clean diesel engine and thereby forced VWAG to implement a defeat device.  (Suppl. Meier Decl. ¶ 18.)  The Regional Court of Stuttgart, under German rules of civil procedure, would have summoned the witnesses if it had thought that this new theory was sufficiently substantiated and conclusive.  However, it declined to credit Elliott's unsupported and far-fetched story, and declined to call the witnesses the Greenwich Plaintiffs had offered in support of it.

27.     Elliott wrongly claims that PSE "obstructed" document and witness discovery in the Greenwich Action, including by "exerting considerable influence on" and giving "financial benefits" to certain witnesses who declined to testify based on their right against self-incrimination.  (Mem. at 6; Broich/Gierke ¶ 15.)  Although the Regional Court initially had requested to hear the testimony of approximately thirty witnesses, it withdrew this plan following the decision of a handful of witnesses to decline to testify based on their right against self-incrimination.  Setting aside that almost all of the witnesses who declined to testify were officers or employees of VWAG and its subsidiaries (and the only witness affiliated with PSE was Martin Winterkorn, who allegedly had obtained knowledge of the diesel issue in connection with his role at VWAG (*see supra* ¶ 20)), there is no basis for Elliott's inflammatory accusation that PSE

engaged in misconduct to influence the decision of the witnesses and not surprisingly, Elliott can point to no supporting evidence.  Nor did PSE "coordinate[] witness statements" or engage in other unspecified "similar conduct."  (*Id.*)  In fact, multiple PSE employees who were called as witnesses wrote to the Regional Court of Stuttgart indicating their willingness to testify.[6]

28.     There also is no merit to Elliott's allegation that PSE "obstructed" the gathering of evidence from Robert Bosch GmbH ("Bosch").  (Mem. at 6.)  The Greenwich Plaintiffs primarily sought evidence consisting of correspondence between Bosch and VWAG. (Suppl. Meier Decl. ¶ 19.)  Because the correspondence did not involve PSE, PSE opposed its production as irrelevant.  (*Id.*)  Although the Regional Court of Stuttgart ordered its production, the Higher Regional Court of Stuttgart subsequently reversed.  (*Id.*)

29.     Elliott faults the evidence the Greenwich Plaintiffs received on the basis that it did not demonstrate PSE's knowledge of the diesel issue.  (Mem. at 7.)  That does not indicate that the Greenwich Plaintiffs had inadequate opportunities to obtain evidence, but rather suggests that such evidence does not exist.

### The Requested Depositions

30.     Unlike the one deposition PSE will take in connection with its Section 1782 application, Elliott seeks seven depositions.  Four of the individuals whom Elliott requests to depose are not within PSE's control.  Bernd Pischetsrieder and Andreas Deumeland do not hold, and have never held, a position at PSE.  Mr. Pischetsrieder and Mr. Deumeland previously held management roles at VWAG, not PSE.  Holger Härter and Dr. Wendelin Wiedeking have not held positions at PSE since 2009.

---

[6]     Attached as Exhibits C through E are communications from two PSE employees and one former PSE employee to the Regional Court of Stuttgart indicating the employees' willingness to testify in the Greenwich Action.  A certified English translation of each communication is appended to the relevant exhibit.

31.     With respect to the three requested deponents who currently are affiliated with PSE (Dr. Wolfgang Porsche, Dr. Ferdinand Oliver Porsche, and Hans Dieter Pötsch), the German court may order that PSE make these three witnesses available to testify.  If the German court issued such an order but PSE failed to produce the witnesses, PSE would incur significant adverse consequences, including inferences against PSE, in the Greenwich Action.

32.     In addition, to my knowledge, all of the requested deponents are German or Austrian citizens, who reside either in Germany or in Austria.  The deponents residing in Germany have an individual duty to testify before the German court if the German court orders their testimony.  Under the European regulation on the taking of evidence (Council Regulation (EC) No. 1206/2001), the German court may obtain the testimony of Austrian residents by making a request to an Austrian court where the witness resides.

33.     The Greenwich Plaintiffs previously requested that the Regional Court of Stuttgart call five of the seven requested deponents as witnesses in the Greenwich Action: Dr. Wolfgang Porsche, Dr. Wendelin Wiedeking, Holger Härter, Bernd Pischetsrieder, and Andreas Deumeland.  The Regional Court of Stuttgart declined the Greenwich Plaintiffs' request to hear the testimony of these five witnesses.  (*See supra* ¶ 26.)  The Greenwich Plaintiffs had offered the witnesses as support for their speculative and unsubstantiated theory that, as part of a takeover effort of VWAG, PSE influenced VWAG to implement cost-cutting measures that purportedly led to the development of the defeat device.  The court refused to credit that theory, and declined to grant the Greenwich Plaintiffs' request to hear witness testimony in support of it.

34.     Apart from the five witnesses from whom the Regional Court of Stuttgart declined to hear testimony, the remaining two individuals whom Elliott seeks to depose—Hans Dieter Pötsch and Dr. Ferdinand Oliver Porsche—were not named by the Greenwich Plaintiffs as

witnesses in the Greenwich Action.  Mr. Pötsch is the chairman of the management board of PSE and of the supervisory board of VWAG, roles that he assumed after the disclosure of the diesel issue.  Dr. Porsche is a member of the supervisory boards of PSE and VWAG.  As with all of the witnesses whom Elliott seeks to depose, Mr. Pötsch and Dr. Porsche are within the jurisdiction of the German courts.  (*See supra* ¶¶ 31-32.)  Despite making requests for the testimony of approximately 130 witnesses, the Greenwich Plaintiffs did not request that the Regional Court of Stuttgart call Mr. Pötsch or Dr. Porsche to testify.  PSE has represented to the Regional Court of Stuttgart in the Greenwich Action on behalf of Mr. Pötsch that in his role and capacity as a member of PSE's management board he had no knowledge of the use of an illegal defeat device in VWAG vehicles prior to September 18, 2015, when the diesel issue was publicly disclosed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 7, 2020.

Dr. Markus Meier

Appendix A:
Comparison Between Elliott's Requests 6 and 7
and the Greenwich Plaintiffs' Document Requests

| Elliott Req. No. | Elliott Request | Similar Greenwich Plaintiff Request |
|---|---|---|
| 6.a | The November 10, 2006 request for a software design change to the "acoustic function," as described in paragraph 61 | Request for an email by VWAG to Robert Bosch GmbH dated 10 November 2006 |
| 6.b | The October 2007 meeting in which Project US '07 and the use of the defeat device was authorized, as described in paragraph 37 | None |
| 6.c | The July 2012 meetings regarding the hardware failure in Volkswagen cars, including any Documents, including PowerPoints, used and any Communications sent referring to the meetings, as described in paragraph 48 | None |
| 6.d | The April 2013 authorization by Heinz-Jakob Neusser for the use of the "steering wheel angle recognition function," as described in paragraph 50 | None |
| 6.e | The "ad hoc task force" formed to respond to the ICCT Study, the decision not to disclose the use of the Defeat Device to U.S. regulators, and the software and hardware "fixes," as described in paragraphs 54 and 55 | None |
| 6.f | The April 28, 2014 presentation of the findings of the ad hoc task force made to Bernd Gottweis, as described in paragraph 56 | None |
| 6.g | The May 21, 2014 e-mail regarding emissions issues in North America and associated risks, as described in paragraph 57 | Request for an email from VW employee to Dr. Eichler dated 21 May 2014 |
| 6.h | The October 2014 presentation of the findings of the ICCT Study, as described in paragraph 58 | None |
| 6.i | The July 27, 2015 presentation regarding model year 2016 Volkswagen vehicles made to supervisors, as described in paragraph 59 | Request for a presentation by VWAG dated 27 July 2015 |
| 6.j | The August 18, 2015 approval of the script for use in a meeting with the California Air Resource Board, as described in paragraph 61 | None |

| Elliott Req. No. | Elliott Request | Similar Greenwich Plaintiff Request |
|---|---|---|
| 7.a | The October 5, 2007 meeting at which Project US '07 was authorized, as described in paragraph 37 | None |
| 7.b | The Fall 2007 meeting in which Richard Dorenkamp argued for continuation of the EA 189 diesel engine design towards production, as described in paragraph 64 | None |
| 7.c | The July 2012 meetings attended by, among others, Heinz-Jakob Neusser, concerning hardware failures in Volkswagen vehicles, including all documents used to illustrate such failures, as described in paragraph 44 | None |
| 7.d | The February 18, 2013 e-mail regarding the "acoustic function," including any attached Documents, including PowerPoints, as described in paragraph 72 | None |
| 7.e | The April 2013 authorization of the use of the Defeat Device by Heinz-Jakob Neusser, as described in paragraph 46 | None |
| 7.f | The April 28, 2014 presentation regarding the findings of the ICCT Study, as described in paragraph 75 | None |
| 7.g | The May 9, 2014 e-mails, as described in paragraph 76 | None |
| 7.h | The May 23, 2014 memorandum provided to Martin Winterkorn concerning the ICCT Study, as described in paragraph 50 | Request for memorandum and note from Frank Tuch to Professor Dr. Winterkorn dated 23 May 2014 |
| 7.i | The August 18, 2015 approval by Heinz-Jakob Neusser of the script for use in a meeting with the California Air Resource Board, as described in paragraph 56 | None |
| 7.j | The July 27, 2015 presentation to, among others, Martin Winterkorn and Heinz-Jakob Neusser, including any Documents, including PowerPoints, used, as described in paragraphs 54 and 82 | Request for presentation by VWAG dated 27 July 2015 |

Appendix B:
Documents Requested by the Greenwich Plaintiffs

| No. | Document Request | Source | Court Decision |
|---|---|---|---|
| Submission of Files Pursuant to Section 142 German Code of Civil Procedure | | | |
| 1. | emails from Bosch associate Rupert S. dated 9 February 2007 to Jörg Kerner concerning potential for improvement of the acoustic function | pleading dated 12 January 2018 | subpoenaed on 8 March 2018; Bosch's assertion of right to refuse testimony denied by Regional Court of Stuttgart on 13 July 2018; reversed by Higher Regional Court of Stuttgart on 1 March 2019 |
| 2. | email from Bosch associate Rupert S. dated 9 February 2007 to Dieter Mannigel and Mathias Klaproth | pleading dated 12 January 2018 | subpoenaed on 8 March 2018; Bosch's assertion of right to refuse testimony denied by Regional Court of Stuttgart on 13 July 2018; reversed by Higher Regional Court of Stuttgart on 1 March 2019 |
| 3. | email from Oliver Schmidt to Michael Horn dated 15 May 2014 | request for model proceedings, dated 27 January 2017 | declined to grant |
| 4. | email from Andreas Specht to Bosch GmbH employees dated July 2005 concerning the effect of the so-called acoustic function in connection with the development a defeat device for the EA 189 diesel generator | pleading dated 12 January 2018 | subpoenaed on 8 March 2018; Bosch's assertion of right to refuse testimony denied by Regional Court of Stuttgart on 13 July 2018; reversed by Higher Regional Court of Stuttgart on 1 March 2019 |
| 5. | email from Mr. Martin Hierse (Audi AG) to an employee of Bosch GmbH (Diesel Systems, Engineering Powertrain Diagnosis), with Mr. Stefan Forthmann (Audi AG) in "cc" dated 15 May 2008 on the meaning of auxiliary emission control devices ("AECDs") | pleadings dated 12 January 2018 | subpoenaed on 8 March 2018 and 28 May 2018; Bosch's assertion of right to refuse testimony denied by Regional Court of Stuttgart on 13 July 2018; reversed by Higher Regional Court of Stuttgart on 1 March 2019 |
| 6. | email from Bosch associate Rupert S. dated 9 March 2007 to VW engineers Dieter Mannigel and Mathias Klaproth with the subject "extended acoustic function" | request for model proceedings, dated 27 January 2017; pleading dated 12 January 2018 | declined to grant |

| No. | Document Request | Source | Court Decision |
|-----|------------------|--------|----------------|
| 7. | letter from Bosch-GmbH dated 2 June 2008 to Volkswagen AG (addressed to Thorsten Schmidt) | request for model proceedings, dated 27 January 2017; pleading dated 12 January 2018 | subpoenaed on 8 March 2018 and 28 May 2018; Bosch's assertion of right to refuse testimony denied by Regional Court of Stuttgart on 13 July 2018; reversed by Higher Regional Court of Stuttgart on 1 March 2019 |
| 8. | emails by Dieter Mannigel dated 13 November and 20 November 2006 including attached presentation | request for model proceedings, dated 27 January 2017; pleading dated 12 January 2018 | declined to grant |
| 9. | email by VW AG to Robert Bosch GmbH dated 10 November 2006 | request for model proceedings, dated 27 January 2017 | declined to grant |
| 10. | email from Susanne Thomas dated 1 July 2009 re disclosure to the authorities | pleading dated 12 January 2018 | declined to grant |
| 11. | email from Susanne Thomas dated 31 May 2013 | pleading dated 12 January 2018 | declined to grant |
| 12. | email from Oliver Schmidt to Bernd Gottweis dated 15 April 2014 | request for model proceedings, dated 27 January 2017 | declined to grant |
| 13. | expert opinions and presentations by Gleiss Lutz Stuttgart and J.P. Morgan | request for model proceedings, dated 27 January 2017; pleadings dated 14 July 2017 and 12 January 2018 | declined to grant |
| 14. | memorandum from Bernd Gottweis to the Board of Management of Volkswagen AG dated 22 May 2014 | request for model proceedings, dated 27 January 2017 | declined to grant |
| 15. | memorandum and note from Frank Tuch to Professor Dr. Winterkorn dated 23 May 2014 | request for model proceedings, dated 27 January 2017 | declined to grant |
| 16. | email from VW employee to Dr. Eichler dated 21 May 2014 | request for model proceedings, dated 27 January 2017 | declined to grant |
| 17. | presentation by VW AG dated 27 July 2015 | request for model proceedings, dated 27 January 2017 | declined to grant |
| 18. | note from Oliver Schmidt dated 30 July 2015 | request for model proceedings, dated 27 January 2017 | declined to grant |

| No. | Document Request | Source | Court Decision |
|---|---|---|---|
| 19. | letter from Dr. Wendelin Wiedeking and Holger Härter to Dr. Wolfgang Porsche dated 7 October 2008 | pleading dated 14 July 2017 | declined to grant |
| 20. | transcript of testimony by Wolfgang Porsche dated 14 December 2011 | pleading dated 14 July 2017 | declined to grant |
| 21. | presentation for the shareholders' committee dated 15 July 2005 | pleading dated 14 July 2017 | declined to grant |
| 22. | minutes of the Supervisory Board meeting of the defendant dated 15 November 2006 | pleading dated 14 July 2017 | declined to grant |
| 23. | minutes of the Supervisory Board meeting of the defendant dated 26 July 2006 | pleading dated 14 July 2017 | declined to grant |
| 24. | presentation titled "Risiko: VW Golf steht im Fokus der NGOs" dated 22 May 2012 | pleading dated 12 January 2018 | declined to grant |
| 25. | notes of the meeting Denner, Eichler, Winterkorn dated 28 May 2014 | request for model proceedings, dated 27 January 2017; pleading dated 12. January 2018 | subpoenaed on 8 March 2018; Bosch's assertion of right to refuse testimony denied by Regional Court of Stuttgart on 13 July 2018; reversed by Higher Regional Court of Stuttgart on 1 March 2019 |
| Submission of Files from U.S. District Court for the Northern District of California Pursuant to Section 432 German Code of Civil Procedure, art. 1, 3 Hague Evidence Convention | | | |
| 26. | email from Andreas Specht to Bosch GmbH employees dated July 2005 concerning the effect of the so-called acoustic function in connection with the development a defeat device for the EA 189 diesel generator | pleading dated 12 January 2018 | declined to grant |

| No. | Document Request | Source | Court Decision |
|-----|-----------------|--------|----------------|
| 27. | email from Mr. Martin Hierse (Audi AG) to an employee of Bosch GmbH (Diesel Systems, Engineering Powertrain Diagnosis), with Mr. Stefan Forthmann (Audi AG) in "cc" dated 15 May 2008 on the meaning of auxiliary emission control devices ("AECDs") | pleadings dated 12 January 2018 | declined to grant |
| 28. | email from Bosch associate Rupert S. dated 9 March 2007 to VW engineers Dieter Mannigel and Mathias Klaproth with the subject "extended acoustic function" | request for model proceedings, dated 27 January 2017; pleading dated 12 January 2018 | declined to grant |
| 29. | letter from Bosch-GmbH to Volkswagen AG dated 2 June 2008 (addressed to Thorsten Schmidt) | request for model proceedings, dated 27 January 2017; pleading dated 12 January 2018 | declined to grant |
| 30. | email by Dieter Mannigel dated 13 November 2006 and 20 November 2006 including attached presentation | request for model proceedings, dated 27 January 2017; pleading dated 12 January 2018 | declined to grant |
| 31. | email by Dieter Mannigel dated 20 November 2006 | request for model proceedings, dated 27 January 2017; pleading dated 12 January 2018 | declined to grant |
| 32. | email by VW AG to Robert Bosch GmbH dated 10 November 2006 | request for model proceedings, dated 27 January 2017 | declined to grant |
| 33. | email from Susanne Thomas dated 1 July 2009 re. disclosure to the authorities | pleading dated 12 January 2018 | declined to grant |
| 34. | email from Susanne Thomas dated 31 May 2013 | pleading dated 12 January 2018 | declined to grant |
| 35. | email from Oliver Schmidt to Bernd Gottweis dated 15 April 2014 | request for model proceedings, dated 27 January 2017 | declined to grant |
| 36. | notes of the meeting Denner, Eichler, Winterkorn dated 28 May 2014 | request for model proceedings, dated 27 January 2017; pleading of 12 January 2018 | declined to grant |

| No. | Document Request | Source | Court Decision |
|-----|------------------|--------|----------------|
| Other Requests | | | |
| 37. | Expert opinion | statement of claim, dated 19 September 2016, p.48 et seq, p. 61; pleading dated 12 January 2018, p. 111 et seq. | declined to grant |
| 38. | Submission of files regarding criminal proceedings | pleadings dated 12 January 2018 and 7 September 2018 | declined to grant |