UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

*In Re Ex Parte* Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings.

Case No. 1:19-mc-00166-RA-SDA

---

**DECLARATION OF SUHANA S. HAN IN OPPOSITION TO
THE ELLIOTT RESPONDENTS' MOTION FOR RECIPROCAL DISCOVERY
PURSUANT TO 28 U.S.C. § 1782**

SUHANA S. HAN hereby declares under penalty of perjury as follows:

1. I am admitted to practice in the United States District Court for the Southern District of New York and am a member of the law firm Sullivan & Cromwell LLP, counsel to Porsche Automobil Holding SE ("PSE") in the above-captioned action.

2. I make this Declaration in opposition to the motion of Respondents Elliott Capital Advisors, L.P., Elliott International Capital Advisors Inc., Elliott Management Corporation, and Elliott Associates, L.P. (collectively, "Elliott") to take reciprocal discovery from PSE pursuant to 28 U.S.C. § 1782 ("Section 1782").

3. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge and experiences.

***Discussion of Elliott's Separate Section 1782 Application***

4. On July 2, 2019, my colleagues and I met and conferred telephonically with counsel for Elliott from Kleinberg, Kaplan, Wolff & Cohen, P.C. At the conclusion of the meet-

and-confer, counsel for Elliott stated that "[u]nrelated to [the PSE] subpoena, in the near future, we will be seeking Porsche documents," and "that may be [a] second front." I asked Elliott's counsel to clarify whether Elliott is going to file its own Section 1782 application seeking PSE documents. Counsel for Elliott replied, "If they're not going to be produced voluntarily, yes."

*Extended Negotiation of Search Terms*

5. In July and August 2019, I emailed proposed search terms to Elliott's counsel in connection with PSE's Section 1782 application. Attached hereto as Exhibit A is a true and correct copy of our email correspondence with Elliott's counsel between July 16 and July 17, 2019. Attached hereto as Exhibit B is a true and correct copy of our email correspondence with Elliott's counsel between August 6 and August 13, 2019. In a September 13, 2019 telephonic meet-and-confer, Elliott's counsel declined to substantively discuss PSE's proposed search terms, pending the Court's ruling on Elliott's July 31, 2019 and September 9, 2019 objections to the orders of Magistrate Judge Aaron.

6. On October 16, 2019, the day after the Court denied Elliott's objections to Magistrate Judge Aaron's orders and directed the parties to proceed with discovery, one of my colleagues emailed Elliott's counsel to initiate the meet-and-confer process. In October and November 2019, my colleagues and I followed up with Elliott's counsel several times regarding the proposed search terms and inquired about the search term hits, and Elliott's counsel stated that they were "still assessing the scope of the search terms." On November 12, 2019, counsel for Elliott stated that their preliminary searches generated over 170,000 unique hits, and asked for a further meet-and-confer call on November 15, 2019. Attached hereto as Exhibit C is a true and correct copy of our email correspondence with Elliott's counsel between October 16, 2019 and November 12, 2019.

7. During the November 15, 2019 meet-and-confer call, counsel for Elliott suggested narrowing the search parameters for PSE's Section 1782 subpoena by removing a custodian and certain types of documents from the production.

8. On November 25, 2019, in order to expedite the discovery process, we agreed to apply Elliott's suggested limitations, including removing a custodian and excluding certain types of emails.

9. In a December 6, 2019 email, counsel for Elliott stated that the agreed upon search limitations reduced the review population to 78,581 documents, a reduction by approximately 95,000 documents from the original review set. Counsel for Elliott stated that it was "still [] unduly burdensome to review 78,000+" documents. On December 17, 2019, Elliott's counsel emailed a further revised set of search terms, stating that their revisions would reduce the review population to approximately 15,000 documents. Attached hereto as Exhibit D is a true and correct copy of our email correspondence with Elliott's counsel between November 15, 2019 and December 17, 2019.

10. On December 30, 2019, we had another telephonic meet-and-confer with Elliott's counsel to discuss the revised search terms. On January 14, 2020, "in the interest of moving [the discovery] process forward," we accepted Elliott's December 17, 2019 search term proposal, reducing the review population to approximately 15,000 hits. Attached hereto as Exhibit E is a true and correct copy of our email correspondence with Elliott's counsel between January 8 and January 14, 2020.

***Delayed Production of "Portfolio Review" Documents***

11. On December 10, 2019, PSE asked that Elliott produce investment committee memoranda or similar documents, providing a general overview of Elliott's PSE trading strategies, which PSE expected would be easy to locate. During the December 30 meet-and-confer

call, we asked Elliott's counsel for an update on the production of the investment committee memoranda, which we had requested on December 10, and Elliott's counsel agreed to provide us with an update.

12. On January 8, 2020, one of my colleagues emailed Elliott's counsel renewing our request for an update on the production of the investment committee memoranda. In a January 13, 2020 reply email, counsel for Elliott told us that he was following up with his client.

13. On January 27, 2020, one of my colleagues again emailed Elliott's counsel to ask for an update on the investment committee memoranda. On January 28, Elliott's counsel replied that while Elliott did not have an investment committee, senior portfolio managers gave periodic presentations to management as part of a "portfolio review" process. Counsel explained that Elliott had identified several responsive "portfolio review" documents, and would produce them. Attached hereto as Exhibit F is a true and correct copy of our email correspondence with Elliott's counsel between January 8, 2020 and January 28, 2020.

14. Elliott's first production of documents to PSE on March 6, 2020 did not include any of the "portfolio review" documents that Elliott's counsel had agreed to produce on January 28, 2020. On March 31, April 14, and April 30, 2020, my colleagues emailed Elliott's counsel to request documents that remained outstanding, including the "portfolio review" documents.

15. Elliott's second production of documents to PSE on May 8, 2020 included three "portfolio review" documents.

16. In a May 21, 2020 email, Elliott's counsel stated that the May 8 production included only "some representative examples" of the "portfolio review" documents that Elliott had identified on January 28, 2020. Elliott's counsel also stated that "there are approximately 50 of

the 'portfolio review' documents that have yet to be produced," which they claimed would be burdensome to redact.  In order to expedite the production of these documents, we accepted one of Elliott's redaction proposals on June 5, 2020.

17.    On June 29, 2020, Elliott made a third production of documents to PSE, and the letter enclosing the production stated that "the remainder of the 'portfolio review' spreadsheets" were now produced.  Attached hereto as Exhibit G is a true and correct copy of the June 29, 2020 production cover letter.

18.    In a June 29, 2020 email, Elliott's counsel also stated that "all such [portfolio review] documents will be included in the supplemental production being made by Elliott today."

19.    On August 18, 2020, Elliott made a fourth production of documents to PSE, which included 17 "additional 'portfolio review'" documents.  Attached hereto as Exhibit H is a true and correct copy of the August 18, 2020 production cover letter.

20.    In an August 27, 2020 email, Elliott's counsel stated that the "portfolio review" documents included in Elliott's August 18 production "were misidentified as 'position reports' in [Elliott's] review process."  Elliott's counsel further represented that all "portfolio review" documents had now been produced.

21.    To date, Elliott has produced 10,622 pages of documents in response to PSE's Section 1782 application.

***Delay in Scheduling Rule 30(b)(6) Deposition***

22.    In July 28 and August 5, 2020 telephonic meet-and-confers, and in emails dated July 27, and August 21 and 28, 2020, my colleagues asked Elliott's counsel to propose dates in September 2020 for Elliott's Rule 30(b)(6) deposition.  Attached hereto as Exhibits I, J, and K are true and correct copies of the July 27, and August 21 and 28, 2020 emails.

23. On September 2, 2020, Elliott's counsel finally proposed a single day in October for the Rule 30(b)(6) deposition, with a proposed duration of 6.5 hours, including breaks.

Executed on September 9, 2020 in New York, New York.

/s/ Suhana S. Han
Suhana S. Han
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000
HanS@sullcrom.com

*Counsel for Applicant Porsche Automobil Holding SE*