# Exhibit A

| From: | Han, Suhana S. |
|---|---|
| Sent: | Wednesday, July 17, 2019 1:24 PM |
| To: | Marc Rosen |
| Cc: | Arumugam, Myla G.; Miles, Christopher R.; Graham, Christopher A.; David Parker; Joshua K. Bromberg |
| Subject: | RE: PSE Section 1782 Discovery / Elliott |
| Attachments: | Porsche SE Proposed Search Terms.DOCX |

Marc,

Attached are proposed search terms. Let us know if you'd like to discuss.

Thanks, Suhana

---

**From:** Marc Rosen
**Sent:** Tuesday, July 16, 2019 3:03 PM
**To:** Han, Suhana S.
**Cc:** Arumugam, Myla G. ; Miles, Christopher R. ; Graham, Christopher A. ; David Parker ; Joshua K. Bromberg
**Subject:** [EXTERNAL] RE: PSE Section 1782 Discovery / Elliott

Suhana, I disagree with some of your characterizations but it is clear we continue not to see eye to eye on the proper scope of the subpoena and related items. Let's speak tomorrow with the magistrate judge, thanks.


Marc R. Rosen
**KLEINBERG | KAPLAN | WOLFF |COHEN**
551 Fifth Avenue, New York, NY 10176
Direct: 212.880.9897| Fax: 212.986.8866 | www.kkwc.com [kkwc.com]



**From:** Han, Suhana S. [mailto:HanS@sullcrom.com]
**Sent:** Tuesday, July 16, 2019 6:59 AM
**To:** Marc Rosen; David Parker; Joshua K. Bromberg
**Cc:** Arumugam, Myla G.; Miles, Christopher R.; Graham, Christopher A.
**Subject:** PSE Section 1782 Discovery / Elliott

Dear Marc,

Following up on our July 2 meet and confer regarding the appropriate scope of PSE's subpoenas, I've set forth below our understanding of Elliott's position and our response.

PSE's Related Transactions Defense. Elliott is unwilling to produce any information except for data reflecting transactions in PSE shares and derivatives and options referencing PSE shares. We understand that Elliott refuses to produce any data regarding transactions in VWAG shares, and any transactions in related securities undertaken as part of a unified investment decision (such as hedging) involving PSE and VWAG. We further understand Elliott is unwilling to produce

any documents regarding its investment strategies, including any minutes of investment committee meetings relating to PSE.

In light of Judge Abrams' decision to grant PSE's Section 1782 application, PSE object to Elliott's attempt to re-litigate the application and issues already decided by Judge Abrams. Based on our meet-and-confer, we understand that Elliott is asserting the same arguments it raised in its opposition to PSE's application—arguments that Judge Abrams rejected. For example, you stated that you were "not comfortable" producing transactional data or documents related to VWAG securities because you did not think hedging relates to damages or is cognizable defense under German law. However, Judge Abrams ruled that "information . . . concern[ing] the sale and purchase of PSE and Volkswagen shares and respondents investment strategies" may be relevant to PSE's damages defenses in Germany, and that this finding was a sufficient basis to grant PSE's application. (June 25, 2019 Hearing Tr. 40 (emphasis added).) Judge Abrams rejected "respondents' argument to the contrary, that these damages defenses will not be cognizable before the German courts." (*Id.*)

In concluding that the proposed subpoenas should be narrowed before document discovery and depositions begin, Judge Abrams referred expressly to Elliott's argument that the definition of "Relevant Securities" was potentially overbroad because it was susceptible to interpretation as encompassing transactions "only remotely linked" to investment strategies in PSE and VWAG shares. That was Elliott's argument regarding overbreadth at the June 25 hearing (*id.* at 20), as well as the focus of Elliott's overbreadth argument in its brief (ECF No. 21 at 15 & n.7). Reacting to that argument, Judge Abrams stated in relevant part:

> I am more sympathetic to respondents' argument that the existing subpoena is overbroad and unduly burdensome. Petitioner's definition of "relevant securities" which encompasses ["]any security or securities issued by an entity or entities other than Volkswagen AG or Porsche Automobil Holding SE and referring, relating or connected with these entities' shares" could be understand to include securities only remotely linked to respondents' shares in Volkswagen or PSE or their investment strategies with regard to securities. As a result I am going to require the parties to meet and confer and present any reasonable disputes on this matter to the magistrate judge who will be assigned to this matter.

That statement comprised the entirety of Judge Abrams' decision regarding the subpoenas' overbreadth. Judge Abrams' decision was a clear instruction to modify the definition of "Relevant Securities" to make clear that it does not extend to tangentially related investment strategies and transactions. It was not an invitation to re-argue whether related transactions are relevant to PSE's damages defenses. And it was not an invitation for Elliott to limit the subpoena in other respects, including by refusing to produce documents concerning trading in VWAG securities, other related transactions, and Elliott's investment strategies.

As I made clear during the meet and confer, PSE is fully willing to work with Elliott to ensure the definition of "Relevant Securities" under the subpoenas does not extend to all trades in which Elliott engaged. As I emphasized, PSE did not intend the definition of "Relevant Securities" to capture every trade in which Elliott engaged under the umbrella of Elliott's investment strategy writ large. PSE is seeking information concerning particular investment decisions predicated on multiple securities that included PSE or VWAG shares, such as hedging strategies. Since the precise contours of such strategies can be difficult to define in the abstract, we believe that information about the way Elliott records its strategies or organizes its data in the ordinary course of business may be helpful in ensuring the definition is appropriately limited and not unduly burdensome. When I raised the possibility of Elliott sharing such information during the call, you responded that Elliott was unwilling to agree to a definition beyond PSE shares and derivatives and options referencing PSE shares.

PSE's Allocation Defense. You advised that Elliott would look into whether the transactional data it is willing to produce would permit an actual matching (*i.e.*, not through hypothetical methods such as first-in-first-out) of purchase and sale transactions. Please let us know whether this is the case.

PSE's Reliance Defense. I offered to provide a set of search terms regarding PSE's Document Request No. 7, concerning PSE's reliance defense. You indicated that, although you would look at the search terms, you thought PSE's request was beyond the scope of the damages inquiry, did not relate to reliance, and was overbroad. PSE's reliance defense is described in its application. (ECF No. 2 at 7-8, 9-11.) I will send you later today proposed search terms. Given the nature of Elliott's business (which does not involve diesel or emissions issues in most contexts), we think these terms will capture a limited and highly relevant set of documents. We will of course be available to discuss the terms and an appropriate set of custodians.

Protective Order. Elliott's position is that a protective order should not allow the information produced to be used in the Braunschweig Model Case, but only in the Greenwich Action. Once again, this is an argument that Elliott raised in opposition to PSE's application and that Judge Abrams rejected in deciding to grant PSE's application. As you know, PSE's application expressly sought to use the requested discovery in the Braunschweig Model Case; that use was a central focus of PSE's application. (ECF No. 2 at 8-11.) In addressing the need for a protective order, Judge Abrams in no way indicated that PSE would be precluded from using the requested discovery in the Braunschweig Model Case. Rather, responding to PSE's argument that a protective order was not necessary because the requested information was by now stale (ECF No. 24 at 14-15), Judge Abrams stated that she "[did not] agree with [PSE] that the information requested would necessarily be useless to the respondents' competitors" and therefore was "willing to entertain or have the magistrate judge entertain the strict confidentiality and protective order in this case." (June 25, 2019 Hearing Tr. 41.) Judge Abrams' decision made clear that PSE would be allowed to use the requested discovery in the Braunschweig Model Case, as PSE's application requested, subject to appropriate protections. Notwithstanding our disagreement on these aspects of a protective order, I expressed that we should be able to negotiate other terms of a protective order, and you informed us that you would provide to us a draft. Please let us know when we can expect to receive a draft so that we can inform the Court of the parties' progress on this issue, if any.

Elliott's Section 1782 Application. For the first time, you indicated that Elliott plans to seek discovery from PSE, and that if PSE does not agree to produce documents voluntarily, you will file your own Section 1782 application. PSE intends to oppose any such application. In any event, whatever the outcome of such a future application, we do not believe it impacts the present application, which the Court has already granted.

* * *

We are available to meet and confer further regarding these issues in advance of the teleconference with Magistrate Judge Aaron tomorrow afternoon. If you agree that this makes sense, please let us know your availability today and tomorrow morning.

Thanks, Suhana


_____
Suhana S. Han
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558 - 4647
Fax: (212) 291-9068

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

**This is an external message from:** mrosen@kkwc.com **

**This is an external message from:** mrosen@kkwc.com **