UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Ex Parte Application* of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. | Case No. 19-mc-00166 (RA) |

**SUPPLEMENTAL DECLARATION OF JOSEF BROICH AND DR. OLAF GIERKE IN SUPPORT OF RESPONDENTS' APPLICATION FOR RECIPROCAL DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

1. We are Partners with the law firm of Broich Partnerschaft von Rechtsanwälten mbB ("Broich") in Frankfurt am Main, Germany. Broich is counsel for Greenwich (Japan) Limited and Gateshead (Japan) LLC (the "Greenwich Plaintiffs") in the case captioned *Greenwich (Japan) Ltd, Gateshead (Japan) LLC vs. Porsche Automobil Holding SE, No. 22 O 348/16* (the "Greenwich Action"), pending in Stuttgart, Germany. We are licensed to practice law in Germany.

2. We make this supplemental declaration in further support of the motion by Respondents Elliott Associates, L.P., Elliott Capital Advisors, L.P., Elliott International Capital Advisors Inc., and Elliott Management Corporation (together, "Elliott") for reciprocal discovery from Porsche Automobil Holding SE ("Porsche" or "Petitioner"). We have reviewed Porsche's opposition to Elliott's motion, as well as the accompanying declarations of Dr. Manfred Döss, Dr. Markus Meier, and Suhana Han, which were provided to us by Elliott's counsel.

**Porsche and Volkswagen AG**

3. In his declaration, Dr. Döss makes several misrepresentations concerning the relationship between Porsche and Volkswagen AG ("Volkswagen"). Dr. Döss is a member of the management board of Porsche, where he is responsible for legal affairs and compliance, but he is

1

also—part time—*Volkswagen's* General Counsel and therefore should be aware of the relevant laws.

4. Dr. Döss's claim that Porsche is not the controlling shareholder of Volkswagen is wrong and clearly contradicts German law. *See* Declaration of Manfred Döss ("Döss Declaration") ¶¶ 12–19.

5. Under Section 17, Paragraph 1 of the German Stock Corporation Act ("AktG"), Porsche is the controlling shareholder of Volkswagen. Despite the fact that Volkswagen is a separate legal entity, Porsche, as the controlling company, can directly or indirectly exercise a controlling influence on Volkswagen in accordance with the AktG.

6. As Dr. Döss knows and admits, Porsche holds the clear majority in voting shares of Volkswagen. Döss Decl. ¶ 11. Dr. Döss neglects to mention that under Section 16, Paragraph 1 of the AktG, Volkswagen is majority-owned by Porsche and thus, under Section 17, Paragraph 2 of the AktG, is deemed to be dependent upon its controlling entity (Porsche). Volkswagen is obliged to prepare and, as a matter of fact, regularly does prepare an annual dependency report in accordance with its legal obligations under Paragraph 312 of the AktG.

7. Dr. Döss also falsely suggests that Porsche is not privileged to access Volkswagen information. As the controlling company, Porsche can exercise its influence on the dependent company (Volkswagen) outside of the Annual General Meeting, which is otherwise the sole opportunity for shareholders to ask questions. Controlling companies like Porsche are thus treated very favorably under German stock corporation law because of the special privileged legal relationship between the controlling and controlled company. In this special legal relationship, information can, for example, be shared without having to be provided to the other shareholders. Section 131, Paragraph 4 of the AktG, which entitles every shareholder to obtain all information

provided to any shareholder outside of the shareholders' meeting, is inapplicable in this respect. Additionally, representatives of the controlling company (Porsche) may also pursue the interests of the controlling company on the Supervisory Board of the dependent company. In this way, the statements in the Döss Declaration claiming that Porsche is limited in the information it can obtain from Volkswagen are inaccurate and misleading.

8. Contrary to the Döss and Meier Declarations, Porsche is also able to exercise significant influence over Volkswagen in a variety of ways. This is evident in the dual role of Dr. Döss himself, which is highly unusual in a German context. We are not aware of any other listed German company which has a part time general counsel that also serves as a member of the management board of the majority shareholder.

9. This deliberately chosen dual role of Dr. Döss strengthens the argument as to Porsche's control of Volkswagen and resolves any information problem between Volkswagen and Porsche, since it provides Porsche direct access to all relevant information. As Volkswagen`s general counsel, Dr. Döss, with at least the implicit consent of the Board of Management of Volkswagen, becomes automatically aware of material Volkswagen information even though he is also a member of the Board of Management of the controlling company Porsche.

10. Contrary to the Döss Declaration, Döss Decl. ¶ 12, confidentiality obligations owed to each company do not continue to apply in this case. The depending company (Volkswagen) is entitled to share any information with the controlling company (Porsche) and is not limited to sharing the information Porsche needs to prepare its consolidated financial statements reports or assess material risks. The Regional Court of Stuttgart stated in its October 24, 2018 decision that passing on inside information through the group company is indispensable and necessary for the fulfilment of the company's legal obligation to disclose material non-public information according

to Section 15 German Securities Trading Act ("WpHG"). Such disclosure of material non-public information to Porsche also complies with the case law established by the European Court of Justice, which in its in Grøngaard and Bang Ruling (ECJ, Coll. 2005 I-9939), approved of the transfer of material non-public information in these circumstances. A true and correct copy of the Grøngaard and Bang Ruling is attached hereto as Exhibit 1.

11.  Porsche's influence over Volkswagen is also clear from the "de facto group" it has formed with Volkswagen. Indeed, Porsche and Dr. Meier stated in a writ submitted to a model case proceeding pending before the Celle Higher Regional Court that Porsche sought to acquire a majority of Volkswagen shares to create a "de facto group" between Porsche and Volkswagen in order to

> ensure adequate influence over the business policy of [Volkswagen] in strategic, commercial, and technical matters, in order to achieve the goal of a sustainable strategic alliance between [Porsche] and [Volkswagen].

A true and correct excerpt of this writ by Porsche in the Model Case Proceeding before the Higher Regional Court of Celle, 13 Kap 1/16, July 28, 2017, Rn. 93, is attached hereto as Exhibit 2.

12.  Porsche's involvement in Volkswagen is further demonstrated by public reporting that Porsche recently paid €4.5 million to end the investigation of Herbert Diess, *Volkswagen's* CEO. The same reports indicate that Porsche also paid to end two separate investigations of Hans Dieter Pötsch, the chairman of Volkswagen's executive board and Porsche's CEO, one in Stuttgart, which Porsche paid €1.5 million to end, and one in Braunschweig, which Porsche paid €4.5 million to end. A true and correct copy of a German news article reporting this payment, along with an English translation, is attached hereto as Exhibit 3.

13.  Also, Dr. Döss's claim that "PSE is not connected to VWAG´s risk management system, which manages risks among a group that consists of VWAG and its subsidiary companies," Döss Decl. ¶ 8, is clearly misleading. Indeed, this statement is refuted by the very

4

next sentence of the annual report he is quoting, which makes clear that Porsche must be "informed at an early stage of any risks" and that such "information is provided, inter alia, in management talks and by forwarding risks reports." The next sentences reads in full:

> At the same time, however, Volkswagen AG is required to ensure that Porsche SE as the holding company—within the scope of the legally permissible exchange of information—is informed at an early stage of any risks potentially jeopardizing the investment´s ability to continue as a going concern. This information is provided, inter alia, in management talks and by forwarding risk reports." Hence, it is certain that Volkswagen is obliged to inform Porsche on any substantially risks at the earliest possible and therefore is connected to Volkswagen´s risk management system.

Döss Decl. Ex. B.

## **Discovery Requests in Germany**

14. The Greenwich Plaintiffs neither failed to request evidence-taking/discovery in Germany nor were any of their requests explicitly denied by the court. In Germany, there is no procedure comparable to the discovery procedure established under American law. In stark contrast to US discovery rules, in Germany the so-called principle of contribution ("Beibringungsgrundsatz") applies to civil proceedings. This means that the parties to the legal dispute are in principle responsible themselves for obtaining the necessary evidence and introducing it into the proceedings. The parties to the lawsuit are free to apply for a court order to include certain documents in the proceedings, such as the files of other proceedings, but there is no procedure by which the parties can demand the full release of internal documentation of the other party. This essential procedural difference leads to a strong imbalance between the parties when Porsche has been able to obtain U.S.-style discovery, and the Greenwich Plaintiffs have not.

15. Parties in German Civil Procedures could request the submission of individual documents according to Section 142 German Rules of Civil Procedure. However, German Courts in general are rather reluctant to grant orders to submit documents pursuant to Section 142. It is

5

factually incorrect to state that the Greenwich Plaintiffs were unable to secure certain evidence in the Greenwich Action because the Stuttgart Regional Court had, as suggested by Dr. Meier, rejected the Greenwich Plaintiffs requests. There was no such rejection by the Stuttgart Regional Court.

16. The Stuttgart Regional Court also did not explicitly reject requests for documents or witness testimony by the Greenwich Plaintiffs. *See* Declaration of Markus Meier ("Meier Decl.") ¶ 25. In the Greenwich Action, the Greenwich Plaintiffs requested that several documents be submitted to the Court. The Stuttgart Regional Court granted the submission with regard to certain documents in the possession of Robert Bosch GmbH. However, the Stuttgart Regional Court has not issued any resolution or judgment on the Greenwich Plaintiffs' further requests.

17. For example, the Greenwich Plaintiffs requested the submission of further documents, such as the Minutes of Meeting between Martin Winterkorn and the Management Board of Robert Bosch GmbH *et. al.* The Stuttgart Regional Court did not explicitly reject these requests either, but declined to make any order regarding the submission of such documents. Through the Greenwich Appeal, the Greenwich Plaintiffs have challenged these omissions by the court.

18. Dr. Meier concedes that the Stuttgart Regional Court did not explain why it has not ordered the submission of further documents. Since no resolution exists which explicitly denies the German Plaintiffs requests, there is no basis to assert that the German courts have explicitly refused or rejected such requests.

19. The Stuttgart Regional Court also never indicated that it considered the plaintiff's submission of facts insufficiently substantiated or irrelevant to the outcome of the case. However, the Stuttgart Regional Court—erroneously, in the opinion of the Greenwich Plaintiffs—declined

to request further documents and to hear further witnesses. This is also a subject of the Greenwich Appeal. The Higher Regional Court is not barred from ordering the submission of the requested documents or from hearing witnesses.

## Porsche's Production of Relevant Documents

20.     Publicly available news sources regarding investigations in Germany indicate that it is plausible, indeed likely, that Porsche and Porsche executives have produced, submitted, or had seized documents and evidence that is directly relevant to the Greenwich Action.  For example, the *New York Times* has reported that Matthias Müller has been under investigation in Germany regarding whether he failed to warn shareholders about the diesel emissions scandal—the same issue in the Greenwich Action.  Müller is the former CEO of Volkswagen, but he has been a member of the Porsche executive board since 2010.  Indeed, the article states that "Mr. Müller is identified as a suspect in connection with his membership on the management board of Porsche Automobil Holding."  The article also focuses on the agenda for a 2007 meeting at with both Müller and Winterkorn were present.  Winterkorn, also a Volkswagen employee at the time, was also CEO of Porsche during the critical time period of the diesel scandal and, as set forth in Elliott's motion for reciprocal discovery, played a pivotal role in the Stuttgart Judgment in light of his "gatekeeper" role.  The article describes an "emergency meeting" that Winterkorn called in November 2007 relating to the use of the defeat device.  The article goes on to report that Müller's offices, along with the offices of "other senior executives," have been searched by German authorities.  In light of the fact that the suspects of the investigation were Porsche employees and board members during the relevant period, it is absolutely plausible—even likely—that Porsche has produced documents, or that Porsche documents have been seized, in connection with the

7

investigation. A true and correct copy of the *New York Times* article, *VW Engineers Wanted O.K. From the Top for Emissions Fraud, Documents Show*, is attached hereto as Exhibit 4.

21. An article from the *Wall Street Journal* reports that German prosecutors have reason to believe that Winterkorn may have known about the use of a defeat device earlier than he has publicly stated based on, among other things, the evaluation of seized data. This claim mirrors the issues in the Greenwich Action. Again, Winterkorn was the CEO of Porsche during the relevant period of time, so it is plausible that the data evaluated by German prosecutors was provided by, or seized from, Porsche. The article also refers to the investigation of Hans Dieter Pötsch, the CEO of Porsche, for a potential failure to inform financial markets about a pending investigation in the United States related to the emissions scandal. The *Wall Street Journal* article goes on to report that German prosecutors have seized files and data in raids on "at least 28 private residences and businesses." Because Winterkorn and Pötsch were Porsche employees during relevant periods of time and are or were suspects in the investigations, it is plausible that documents were provided by, or seized from, Porsche in connection with these investigations. A true and correct copy of the *Wall Street Journal* article, *Germany Names Former Volkswagen CEO Martin Winterkorn as Suspect*, is attached hereto as Exhibit 5.

22. As set forth above, Porsche recently paid fines related to investigations of Pötsch: one in Stuttgart, which Porsche paid €1.5 million to end, and one in Braunschweig, which Porsche paid €4.5 million to end. According to reporting on the settlement, the investigation related to the failure "to inform investors of Porsche SE . . . of the exhaust gas manipulation and the economic consequences associated therewith." Exhibit 3. This is the same issue as in the Greenwich Action.

23. As we mentioned in our previous declaration, publicly available reporting indicates that German authorities have collected 75,000 pages of evidence in connection with investigations

of Winterkorn regarding the date at which he became aware of the emissions cheating. Because of Winterkorn role at Porsche during the critical period of the emissions scandal, it is plausible that Porsche produced documents contributing to the 75,000 pages of evidence in the investigation of Winterkorn. It is also undisputed that Winterkorn himself has produced documents in related cases and investigations. For example, an investigator from the Securities Exchange Commission testified that, as part of an investigation into whether Volkswagen violated federal securities laws by failing to disclose the defeat device to investors, Winterkorn produced a Wells submission to the SEC with over 250 pages of exhibits. Again, because of Winterkorn's role at Porsche, it is plausible that a number of these documents are Porsche documents. A true and correct copy of the investigator's affidavit, docketed in the case of *SEC v. Volkswagen AG*, 19-cv-1391 (N.D. Cal.) is attached hereto as Exhibit 6. The cited testimony occurs in paragraph 113.

24. It is worth emphasizing that documents and evidence produced in these parallel cases and investigations were (1) likely within the possession of Porsche, and (2) almost certainly relevant to the Greenwich Action. The documents relate to these executives' work for Porsche and Volkswagen, and were produced or seized in connection with cases or investigations of the emissions scandal and/or the failure to inform investors about the use of the defeat device, which is the same issue in the Greenwich Action. Documents evincing knowledge of the emissions scandal by these executives—the former CEO of Porsche (Winterkorn), the current CEO of Porsche (Pötsch), and a longtime member of the Porsche Executive Board (Müller)—are, therefore, likely relevant to the Greenwich Action because they would support the Greenwich Plaintiffs' argument that their knowledge of the use of a defeat device should be attributed to Porsche. And it is plausible some of these documents were produced by, or seized from, Porsche in connection with these parallel cases and investigations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Frankfurt, Germany on September 30, 2020.

_____
Josef Broich

_____
Olaf Gierke