# Exhibit 1

GRONGAARD ET BANG

## JUDGMENT OF THE COURT (Grand Chamber)

### 22 November 2005 *

In Case C-384/02,

REFERENCE for a preliminary ruling under Article 234 EC from the Københavns Byret (Denmark), made by decision of 14 August 2002, received at the Court on 25 October 2002, in the criminal proceedings against

**Knud Grøngaard,**

**Allan Bang,**

THE COURT (Grand Chamber),

composed of V. Skouris, President, P. Jann, C.W.A. Timmermans, A. Rosas, Presidents of Chambers, J.-P. Puissochet, R. Schintgen, S. von Bahr (Rapporteur), J.N. Cunha Rodrigues and R. Silva de Lapuerta, Judges,

Advocate General: M. Poiares Maduro,
Registrar: H. von Holstein, Deputy Registrar,

* Language of the case: Danish.

I - 9961

having regard to the written procedure and further to the hearing on 24 March 2004,

after considering the observations submitted on behalf of:

— Mr Grøngaard, by L. Kjeldsen, advokat,

— Mr Bang, by J. Juul, advokat,

— the Danish Government, by J. Bering Liisberg, and subsequently by J. Molde, acting as Agents,

— the Swedish Government, by A. Kruse, acting as Agent,

— the Commission of the European Communities, by N.B. Rasmussen and G. Zavvos, acting as Agents,

after hearing the Opinion of the Advocate General at the sitting on 25 May 2004,

gives the following

## Judgment

1   This reference for a preliminary ruling concerns the interpretation of Article 3(a) of Council Directive 89/592/EEC of 13 November 1989 coordinating regulations on insider dealing (OJ 1989 L 334, p. 30).

I - 9962

2    The reference has been made in the course of criminal proceedings brought against Mr Grøngaard and Mr Bang for offences under the Værdipapirhandelslov (Law on dealings in transferable securities) which transposed Directive 89/592 into Danish law.

**Legal framework**

*Community legislation*

3    Article 1 of Directive 89/592 provides:

'For the purposes of this Directive:

1.    "inside information" shall mean information which has not been made public of a precise nature relating to one or several issuers of transferable securities or to one or several transferable securities, which, if it were made public, would be likely to have a significant effect on the price of the transferable security or securities in question'.

4    Article 2(1) of that directive provides:

'Each Member State shall prohibit any person who:

—    by virtue of his membership of the administrative, management or supervisory bodies of the issuer,

JUDGMENT OF 22. 11. 2005 — CASE C-384/02

— by virtue of his holding in the capital of the issuer, or

— because he has access to such information by virtue of the exercise of his employment, profession or duties,

possesses inside information from taking advantage of that information with full knowledge of the facts by acquiring or disposing of for his own account or for the account of a third party, either directly or indirectly, transferable securities of the issuer or issuers to which that information relates.'

5   Under Article 3 of that directive:

'Each Member State shall prohibit any person subject to the prohibition laid down in Article 2 who possesses inside information from:

(a) disclosing that inside information to any third party unless such disclosure is made in the normal course of the exercise of his employment, profession or duties;

(b) recommending or procuring a third party, on the basis of that inside information, to acquire or dispose of transferable securities admitted to trading on its securities markets as referred to in Article 1(2) in fine.'

I - 9964

GRØNGAARD ET BANG

6    Article 4 of Directive 89/592 provides:

'Each Member State shall also impose the prohibition provided for in Article 2 on any person other than those referred to in that Article who with full knowledge of the facts possesses inside information, the direct or indirect source of which could not be other than a person referred to in Article 2.'

7    According to Article 6 of that directive:

'Each Member State may adopt provisions more stringent than those laid down by this Directive or additional provisions, provided that such provisions are applied generally. In particular it may extend the scope of the prohibition laid down in Article 2 and impose on persons referred to in Article 4 the prohibitions laid down in Article 3.'

*National legislation*

8    Directive 89/592 was transposed into Danish law by Paragraphs 34 to 39 and 93 to 96 of the Law on dealings in transferable securities.

9    Paragraph 35(1) of that Law provides:

'The purchase or sale, or incitement to the purchase or sale, of transferable securities may not be effected by anyone with inside information which may have a bearing on the transaction.'

I - 9965

10    Paragraph 36(1) of that Law is worded as follows:

'Any person in possession of inside information may not disclose such information to any other person unless such disclosure is made in the normal course of the exercise of his employment, profession or duties.'

11    The prohibition on disclosure laid down in Paragraph 36(1) of the Law covers any person in possession of inside information, whether or not the person concerned belongs to the group covered by Article 2 of Directive 89/592 or has come into possession of the inside information in some other way.

12    Paragraph 94(1)(1) of the Law on dealings in transferable securities provides that any infringement of Paragraph 36(1) thereof is punishable by either a fine or imprisonment for up to 18 months.

**The main proceedings and the questions referred for a preliminary ruling**

13    Mr Bang is the General Secretary of Finansforbundet, the professional trade union of employees in the financial sector. Finansforbundet has approximately 50 000 members.

14    Mr Grøngaard was a member, elected by the staff, of the board of directors of the company RealDanmark, a major financial institution quoted on the stock exchange and having almost 7 000 employees. He had also been appointed by Finansforbundet

as a member of the RealDanmark Group's Liaison Committee (hereinafter 'the Liaison Committee'). That committee had been set up under an agreement between Finansforbundet and RealDanmark. Mr Grøngaard represented the trade union on that committee. Finally, Mr Grøngaard was secretary of Kapitalkreds, one of the 11 sections of Finansforbundet, which, with about 6 500 members, brought together more than 90% of RealDanmark's staff.

15   Following an extraordinary meeting of RealDanmark's board of directors, Mr Grøngaard, on 23 August 2000, disclosed to Mr Bang information relating to a plan to enter into merger negotiations with Danske Bank, another important financial institution in Denmark.

16   Between 28 August and 4 September 2000, Mr Bang consulted his two deputy General Secretaries, Mrs Madsen and Mrs Nielsen, as well as Mr Christensen, one of his colleagues in Finansforbundet's secretariat, disclosing to them the same information as that which he had received from Mr Grøngaard. On 31 August 2000, Mr Christensen bought shares in RealDanmark for the sum of approximately EUR 48 000.

17   On 18 September 2000, Mr Grøngaard attended a meeting of RealDanmark's board, in the course of which the details of the merger were discussed. On 22 September 2000, he attended a special meeting of the Liaison Committee, in the course of which the details of the merger were also discussed. He again approached Mr Bang, on 26 September 2000, with the aim of helping the staff to deal with the consequences of the merger. They discussed, in particular, the timetable envisaged for the merger as well as the expected rise in the market price of RealDanmark's shares, understood to be between 60% and 70%.

18    On 27 and 28 September 2000 respectively, Mr Bang disclosed some information to Mr Larsen, the head of Finansforbundet's secretariat, and to his colleague Mr Christensen, concerning, in particular, the date envisaged for the announcement of the merger and the anticipated conversion rate. On 29 September 2000, Mr Christensen bought additional shares in RealDanmark for approximately EUR 214 000.

19    On 2 October 2000, the merger between RealDanmark and Danske Bank was made public and the market price of RealDanmark's shares rose by some 65%. Mr Christensen sold his shares in RealDanmark on 2 and 3 October 2000, realising a total profit of about EUR 180 000. He was subsequently sentenced to six months' imprisonment for insider dealing, contrary to Paragraph 35(1) of the Law on dealings in transferable securities.

20    Mr Grøngaard and Mr Bang are being prosecuted before the Københavns Byret (Copenhagen District Court) for having disclosed inside information, contrary to Paragraph 36(1) of that Law.

21    In the case before it, the Københavns Byret decided to stay the proceedings and to refer the following questions to the Court for a preliminary ruling:

'1.    Does Article 3(a) of Directive 89/592 preclude a person from disclosing inside information in the case where that person received the inside information in his capacity as an employee-elected member of the Board of the undertaking to which the inside information relates and that information is disclosed to the General Secretary of the trade union which organises the employees who elected the person concerned as a board member?

2. Does Article 3(a) of Directive 89/592 preclude a person from disclosing inside information in the case where that person received the inside information in his capacity as a member of the undertaking's liaison committee and that information is disclosed to the General Secretary of the trade union which appointed the person concerned to be a member of the liaison committee?

3. Does Article 3(a) of Directive 89/592 preclude the General Secretary of a trade union from disclosing inside information in the case where that general secretary received the inside information under the circumstances outlined in Question 1 and the information is passed on to:

(a) the General Secretary's two deputies;

(b) the senior administrative manager of the union's secretariat; and

(c) colleagues of the General Secretary within the union's secretariat?

4. Does Article 3(a) of Directive 89/592 preclude the General Secretary of a trade union from disclosing inside information in the case where that general secretary received the inside information under the circumstances outlined in Question 2 and the information is passed on to:

(a) the General Secretary's two deputies;

(b) the senior administrative manager of the union's secretariat; and

(c) colleagues of the General Secretary within the union's secretariat?

5.   What bearing on the answers to Questions 1 to 4 has the fact that the inside information which is disclosed is

(a) information on the commencement of merger negotiations between two companies quoted on the stock exchange;

(b) information on the date of merger of two companies quoted on the stock exchange; or

(c) information on the level of the rise in the value of shares in a company quoted on the stock exchange which is anticipated by reason of the fact that the company is to merge with another quoted company?'

**The questions referred**

*Preliminary observations*

22   Directive 89/592 prohibits insider dealing with the aim of protecting investor confidence in the secondary market for transferable securities and, consequently, of ensuring the proper functioning of that market.

I - 9970

GRONGAARD ET BANG

23    Thus, Article 2 of Directive 89/592 prohibits any person, who, by virtue, in particular, of his membership of administrative bodies or by virtue of the exercise of his employment, profession or duties, possesses inside information, that is, information of a precise nature which has not been made public and which would be likely to have a significant effect on the price of one or more transferable securities, from taking advantage of that information by acquiring or disposing of those transferable securities.

24    In order to limit the number of persons capable of taking advantage of such information by disposing of or acquiring the transferable securities concerned thereby, Article 3 of Directive 89/592 also lays down, for the persons listed in Article 2 of that directive, a prohibition on disclosing inside information to third parties.

25    That prohibition is not, however, absolute.

26    Under Article 3(a) of Directive 89/592, the prohibition of disclosing inside information does not apply to its disclosure by a person in the normal course of the exercise of his employment, profession or duties.

27    Even if that rule, having regard to the terms used, is capable of covering very different situations, it must, as an exception to a general prohibition and in the light of the objective pursued by Directive 89/592, be interpreted strictly.

JUDGMENT OF 22. 11. 2005 — CASE C-384/02

28   The criminal nature of the proceedings brought against Mr Grøngaard and Mr Bang and the principle that penalties must have a proper legal basis applicable in such proceedings does not affect the strict interpretation to be given to Article 3(a) of Directive 89/592. As the Advocate General maintains in point 24 of his Opinion, the interpretation of a directive's scope cannot be dependent upon the civil, administrative or criminal nature of the proceedings in which it is invoked.

29   In addition, it is for the referring court to ensure compliance with the principle of legal certainty in the interpretation, in the light of a directive's wording and purpose, of the national law adopted in order to implement it (see Joined Cases C-74/95 and C-129/95 *X* [1996] ECR I-6609, paragraph 26).

30   It is also appropriate to note that the obligation on the national court to refer to the content of the directive when interpreting the relevant rules of its national law is not unlimited, particularly where such interpretation would have the effect, on the basis of the directive and independently of legislation adopted for its implementation, of determining or aggravating the liability in criminal law of persons who act in contravention of its provisions (see, in particular, Case 80/86 *Kolpinghuis Nijmegen* [1987] ECR 3969, paragraph 13, and *X*, cited above, paragraph 24).

31   As regards the scope of the exception under Article 3(a) of Directive 89/592, it must be observed that, by requiring that the disclosure of inside information must take place in the normal course of a person's exercise of his employment, profession or duties, that exception requires a close link between that disclosure and the exercise of that employment, that profession or those duties in order to justify such disclosure.

I - 9972

GRONGAARD ET BANG

32    The scope of the latter condition must be determined by taking into consideration the objectives pursued by Directive 89/592.

33    The second to the fifth recitals in the preamble to Directive 89/592 state that it is intended to ensure the proper functioning of the secondary market in transferable securities and to protect investors' confidence, which depends, in particular, on their being placed on an equal footing and protected against the improper use of inside information.

34    In the light of those objectives, and having regard to the fact that Article 3(a) of Directive 89/592 is an exception which must be interpreted strictly, the disclosure of such information is justified only if it is strictly necessary for the exercise of an employment, profession or duties and complies with the principle of proportionality.

35    In the case of successive disclosures, each disclosure must satisfy those requirements in order to come within the exception under Article 3(a) of Directive 89/592.

36    Where it is necessary to appraise the need for a disclosure of inside information, it is appropriate, also, to take into consideration the fact that each additional disclosure is liable to increase the risk of that information being exploited for a purpose contrary to Directive 89/592.

37  In order to determine whether a disclosure is justified in a particular case, it is appropriate to take account also of the sensitivity of the inside information in question.

38  Particular care is required when the disclosure is of inside information manifestly capable of affecting significantly the price of the transferable securities in question. In that context, it is appropriate to observe that inside information relating to a merger between two companies quoted on the stock exchange is in general particularly sensitive.

39  It is also appropriate to point out that the exception under Article 3(a) of Directive 89/592 must be appraised taking into account the particular features of the applicable national law.

40  What is to be regarded as coming within the normal ambit of the exercise of an employment, profession or duties depends to a large extent, in the absence of harmonisation in that respect, on the rules governing those questions in the various national legal systems.

41  Finally, it must be observed that Directive 89/592 lays down minimum requirements as regards the prohibition of the exploitation and disclosure of inside information.

42  Under Article 6 of Directive 89/592, each Member State may adopt provisions of general application that are more stringent than those laid down by that directive.

GRØNGAARD ET BANG

*The first and second questions*

43  By its first two questions, which it is appropriate to consider together, the referring court is asking in essence whether Article 3(a) of Directive 89/592 precludes a person, who receives inside information in his capacity as the employees' representative on a company's board of directors or in his capacity as a member of the liaison committee of a group of undertakings, from disclosing such information to the general secretary of the professional organisation which organises those employees and which appointed that person as a member of the liaison committee.

44  In that regard, it is appropriate first of all to note that the rights and duties and the functioning of the administrative, managerial and supervisory bodies of capital companies, as well as the rights and duties and role of employees' representatives on those bodies are, in their essentials, regulated by the Member States' legal orders.

45  The same applies with regard to the rights and duties and functioning of the liaison committee.

46  It follows that, on the question whether the disclosure of inside information by such a person to the general secretary of that professional organisation comes within the normal exercise of his duties, the reply depends, to a large extent, on the rules governing those duties in the national legal system in question.

I - 9975

47    Even if such a disclosure is allowed by the applicable national legal order, it must also, in order to come within the exception under Article 3(a) of Directive 89/592, be made under the conditions specified in paragraphs 22 to 42 of this judgment.

48    In view of the foregoing, the reply to the first and second questions must be that Article 3(a) of Directive 89/592 precludes a person, who receives inside information in his capacity as an employees' representative on a company's board of directors or in his capacity as a member of the liaison committee of a group of undertakings, from disclosing such information to the general secretary of the professional organisation which organises those employees and which appointed that person as a member of the liaison committee, unless:

—   there is a close link between the disclosure and the exercise of his employment, profession or duties, and

—   that disclosure is strictly necessary for the exercise of that employment, profession or duties.

As part of its examination, the national court must, in the light of the applicable national rules, take particular account of:

—   the fact that that exception to the prohibition of disclosure of inside information must be interpreted strictly;

— the fact that each additional disclosure is liable to increase the risk of that information being exploited for a purpose contrary to Directive 89/592, and

— the sensitivity of the inside information.

*The third and fourth questions*

49   By its third and fourth questions, which it is appropriate to consider together, the referring court is in essence asking the Court whether and under what conditions Article 3(a) of Directive 89/592 allows the general secretary of a professional organisation, who receives inside information in the circumstances set out in the first and second questions, to disclose that information to his colleagues.

50   It should be pointed out in this regard that the activities of a professional organisation, such as that in issue in the main proceedings, and the role of its general secretary are subject, in their essentials, in the same way as the administrative bodies and liaison committee which form the subject-matter of the first two questions, to the national legal system in question.

51   It follows that the reply to the question whether the general secretary of such a professional organisation may disclose inside information to third parties in the course of his duties depends to a large extent on the applicable national law.

52    It should be recalled, as is stated in paragraph 47 of this judgment, that even if such a disclosure is allowed by the applicable national legal order, it must also, in order to come within the exception under Article 3(a) of Directive 89/592, be made under the conditions specified in paragraphs 22 to 42 of this judgment.

53    In that context, it must also be observed that, under Articles 2 and 3(a) of Directive 89/592, apart from the persons who possess inside information by virtue of their membership of administrative, managerial or supervisory bodies or by virtue of their holding in the capital of the issuing company, the prohibition of disclosure of inside information applies only to persons who possess such information by virtue of the exercise of their employment, profession or duties.

54    In view of the foregoing, the reply to the third and fourth questions must be that Article 3(a) of Directive 89/592 precludes disclosure of inside information by the general secretary of a professional organisation to colleagues, such as those referred to in those questions, except under the conditions set out in the reply to the first and second questions. As part of its examination, the national court must, in the light of the applicable national rules, take particular account of the criteria also set out in that reply.

*The fifth question*

55    Having regard to the replies given to the first four questions, there is no need to reply to the fifth question.

I - 9978

**Costs**

56   Since these proceedings are, for the parties to the main proceedings, a step in the action pending before the national court, the decision on costs is a matter for that court. Costs incurred in submitting observations to the Court, other than the costs of those parties, are not recoverable.

On those grounds, the Court (Grand Chamber) hereby rules:

1.  **Article 3(a) of Council Directive 89/592/EEC of 13 November 1989 coordinating regulations on insider dealing precludes a person, who receives inside information in his capacity as an employees' representative on a company's board of directors or in his capacity as a member of the liaison committee of a group of undertakings, from disclosing such information to the general secretary of the professional organisation which organises those employees and which appointed that person as a member of the liaison committee, unless:**

    — **there is a close link between the disclosure and the exercise of his employment, profession or duties, and**

    — **that disclosure is strictly necessary for the exercise of that employment, profession or duties.**

As part of its examination, the national court must, in the light of the applicable national rules, take particular account of:

— the fact that that exception to the prohibition of disclosure of inside information must be interpreted strictly;

— the fact that each additional disclosure is liable to increase the risk of that information being exploited for a purpose contrary to Directive 89/592, and

— the sensitivity of the inside information.

2. Article 3(a) of Directive 89/592 precludes disclosure of inside information by the general secretary of a professional organisation to colleagues, such as those referred to in the third and fourth questions, except under the conditions set out in the reply to the first and second questions.

As part of its examination, the national court must, in the light of the applicable national rules, take particular account of the criteria also set out in that reply.

[Signatures]

I - 9980