UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*In Re Ex Parte* Application of Porsche Automobil Holding S.E.

19-mc-166 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Porsche Automobil Holding SE ("PSE") initiated this action in April 2019, seeking discovery pursuant to 28 U.S.C. § 1782 from Elliott Capital Advisors, L.P., Elliott International Capital Advisors Inc., Elliott Management Corporation, and Elliott Associates, L.P. (collectively "Elliott"). PSE sought the discovery for use in defending against several securities lawsuits in Germany brought by affiliates of Elliott, in which it was alleged that PSE knew of but did not disclose efforts by its subsidiary Volkswagen to evade vehicle emissions standards. In June 2019, this Court granted PSE's request to take discovery, subject to further tailoring of the proposed subpoenas and the fashioning of a protective order. *See* Dkt. 37. The matter was referred to Magistrate Judge Stewart Aaron, who adopted a draft protective order and draft subpoenas proposed by the parties; in October 2019, the Court affirmed the scope of discovery as ordered by Judge Aaron. *See* Dkt. 58.

In August 2020—about ten months after the Court ordered discovery to proceed and 16 months after PSE's initial application—Elliott moved for "reciprocal discovery" under Section 1782. *See* Dkt. 62. Arguing that the Court's granting of PSE's Section 1782 application created a "severe procedural imbalance" in the German litigation, Elliott now seeks documents and

testimony it views as necessary to restore parity between the parties. PSE opposes the discovery on the grounds that it is untimely and overbroad. For the reasons that follow, Elliott's motion is denied.

## BACKGROUND

The Court assumes familiarity with the facts and procedural history of this case, as discussed previously at ECF Nos. 37 and 58. What follows is a brief synopsis of the factual and procedural background most pertinent to the Court's resolution of the instant motion.

In September 2016, a group of plaintiffs affiliated with the Elliott entities ("the Greenwich Plaintiffs") filed a securities action ("the Greenwich Action") against PSE in the Regional Court of Stuttgart, Germany, alleging that PSE failed to make required disclosures regarding a "defeat device" used in Volkswagen vehicles to evade emissions standards. Elliott Mem. at 4–5. Although PSE is operationally and legally independent of Volkswagen, it owns the majority of Volkswagen's voting shares. Döss Decl. ¶¶ 2–4. The Greenwich Plaintiffs seek to establish that PSE had actual knowledge of Volkswagen's attempt to evade emissions standards, or in the alternative that such knowledge should be attributed to PSE. Elliott Mem. at 5. In October 2018, the Stuttgart Court found that PSE could be said to have such knowledge for the period beginning in May 2014, but not before that, on the basis of a May 2014 memorandum received by Dr. Martin Winterkorn, a member of the boards of both Volkswagen and PSE. *Id*. at 8–9; *see also* Broich Decl. ¶¶ 21–23. The Stuttgart Court accordingly awarded damages to the Greenwich Plaintiffs, but only in connection with transactions beginning in June 2014.

Both sides appealed the Regional Court of Stuttgart's decision. The action was stayed for a period of eight months following a decision by the appellate court to suspend the Greenwich Action pending decisions in two "model cases" in which similar issues were being litigated. In June 2020, however, the German Federal Court of Justice lifted the stay, and the appeal of the

lower court's decision is once again proceeding before the Higher Regional Court of Stuttgart. PSE Mem. at 8–9; *see also* Third Supp. Decl. of Markus Meier, Dkt. 72 ("Meier Decl.") ¶¶ 10–14.

PSE filed its Section 1782 application in the Southern District of New York in April 2019, while the appeal of the Greenwich Action was proceeding before the Higher Regional Court. *See* Meier Decl. ¶ 11. PSE sought evidence from Elliott to use in the Stuttgart appeal in support of several damages-related defenses, including information relating to the Greenwich Plaintiffs' purchase and sale of PSE and Volkswagen securities. Elliott Mem. at 10; PSE Mem. at 9; Meier Decl. ¶¶ 6–9. On June 25, 2019, following oral argument, this Court issued a bench ruling preliminarily granting PSE's application. *See* Dkt. 37. The Court advised that its formal approval of discovery would await "a more narrowly tailored subpoena and a protective order." *Id*. at 41-42. The Court subsequently referred discovery to Magistrate Judge Aaron. Dkt. 32. In August 2019, Judge Aaron adopted a draft protective order and draft subpoenas that had been proposed by the parties (with respondents reserving their rights to file objections). Dkt. 54. The Court subsequently approved the protective order and subpoenas over Elliott's objections in October 2019. *See* Dkt. 58. PSE is apparently now in possession of some 5,700 pages of document and deposition discovery obtained under Section 1782. *See* Elliott Mem. at 12; *see also* Declaration of Christopher Leonard, Dkt. 65, ¶ 12.

In August 2020, roughly ten months after the Court affirmed the scope of discovery as ordered by Magistrate Judge Aaron, Elliott filed the instant motion for "reciprocal discovery." Elliott argues that when the Court granted PSE's application, "a gulf opened between the limited evidence available under German procedural rules for Elliott's funds to prosecute their claims and the expansive, American-style discovery newly available to [PSE] to defend against those same claims." Elliott Mem. at 17. Elliott accordingly seeks leave to take discovery from PSE,

3

including documents and deposition testimony that would help establish PSE's purported knowledge of the emissions cheating scandal prior to May 2014. *See id*. at 12–14. Such discovery would be used by the Elliott affiliates in the Stuttgart appeal and on any remand to the lower court, and, according to Elliott, would help restore parity between the parties to the German litigation. *Id*. at 14. PSE opposes Elliott's request, arguing primarily that it is untimely. PSE asserts that Elliott's request of "reciprocal discovery" 16 months after its initial opposition to PSE's Section 1782 application is unprecedented, in that no court has ever granted reciprocal discovery that was requested so long after the initial application. Further, PSE asserts, to the extent that the request can be construed as an independent action under Section 1782, it would fail, as PSE is not "found" in this district. Finally, PSE argues that even if the Court were to entertain the request, it should deny it on the grounds that the discovery sought is overbroad and, in many cases, not even in the possession of PSE. PSE Mem. at 1–4.

For the reasons that follow, the Court denies Elliott's motion. The Court does not endorse the *per se* rule suggested by PSE that a request for reciprocal discovery must always be made by the respondent in its initial opposition to the Section 1782 request. Nonetheless, as set forth below, the Court finds that the belated timing of Elliott's request, coupled with the fact that the evidence sought is within the jurisdiction of the German courts, weighs against an exercise of discretion by the Court to award Elliott the discovery it seeks.

## LEGAL STANDARDS

### I. General Requirements of Section 1782

Upon the application of an interested person or a foreign tribunal, a federal district court may order a person in its district to provide discovery for use in a foreign proceeding. *See* 28 U.S.C. § 1782. Section 1782 incorporates three statutory requirements: "(1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the

application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or 'any interested person.'" *In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996). Once these statutory requirements are met, a district court may order discovery under Section 1782 in its discretion, *see In re Edelman*, 295 F.3d 171, 175 (2d Cir. 2002), taking into consideration the "twin aims" of the statute to "provid[e] efficient means of assistance to participants in international litigation . . . and [to] encourag[e] foreign countries by example to provide similar means of assistance to our courts." *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (citation omitted). *See also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 64 (2004) ("[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so.").

In exercising its discretion under the statute, a district court should consider (1) whether the person from whom discovery is sought is a participant in the foreign litigation, in which case "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) whether the foreign government, court, or agency would be receptive to assistance from a U.S. federal court; (3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel,* 542 U.S. at 264-65; *see also In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *4 (S.D.N.Y. Dec. 29, 2006).

## II. "Reciprocal Discovery" Under Section 1782

Although "reciprocal discovery" is not mentioned in the text of Section 1782, *see Sampedro v. Silver Point Capital, L.P.*, 958 F.3d 140, 144 (2d Cir. 2020), courts frequently entertain requests for such discovery. That is, when a Section 1782 applicant seeks discovery

5

from a person who resides or is found within a U.S. district court's jurisdiction, the district court may as part of its adjudication of the application direct the Section 1782 applicant to itself provide discovery to the respondent.

The practice of awarding reciprocal discovery in Section 1782 cases arises out of a concern that granting discovery to one party to foreign litigation, but not another, would "skew the results of the foreign litigation." *Edelman*, 295 F.3d at 181. As the Supreme Court has observed, reciprocal discovery is one of several ways a district court may in its discretion fashion the scope of discovery under Section 1782 so as to avoid creating an imbalance or lack of parity in the foreign litigation. *See Intel*, 542 U.S. at 262 ("When information is sought by an 'interested person,' a district court [can] condition relief upon that person's reciprocal exchange of information.") (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995) (to "insure procedural parity" between a Section 1782 applicant and respondent, a court may "condition[] relief upon the parties' reciprocal exchange of information.")). Some of the discretionary factors courts have considered in determining whether to grant reciprocal discovery are (1) how closely the reciprocal discovery sought relates to the materials requested in the initial Section 1782 application;[1] (2) whether the respondent would be unable to initiate its own independent Section 1782 application against the initial applicant;[2] (3) the location of the evidence sought and whether the respondent would be able to obtain the material from the

---

[1] *See In re Republic of Ecuador,* 2011 WL 736868, at *10 (N.D.Cal. Feb. 22, 2011) (denying reciprocal discovery where respondents sought a "wide range" of reciprocal discovery, "far afield" from the materials that the applicants sought); *see also Euromepa*, 51 F.3d at 1102 (reciprocal discovery should allow "access to *analogous* . . . documents or testimony") (emphasis added).

[2] *See Application of Consorcio Minero, S.A. v. Renco Grp., Inc.*, No. 11 MC 354, 2012 WL 1059916, at *4 (S.D.N.Y. Mar. 29, 2012) ("Here, Renco cannot initiate its own Section 1782 action against Cormin because Cormin is a Peruvian company and not found in any district in the United States. This favors granting a condition of reciprocal discovery.").

applicant in the foreign litigation;[3] (4) the degree to which the respondent "has a substantial interest" in the foreign litigation;[4] and (5) the timing of the request for reciprocal discovery.[5]

In addressing the instant motion, several observations about the nature of reciprocal discovery under Section 1782 are warranted.

*First*, although a court may in its discretion order reciprocal discovery as a means of insuring procedural parity in foreign litigation, it is not required to do so. As the Second Circuit has observed, "Congress purposefully engineered section 1782 as a one-way street. It grants wide assistance to others, but demands nothing in return." *Euromepa*, 41 F.3d at 1097 (citations omitted). In *Malev Hungarian Airlines*, the Second Circuit vacated a district court's denial of a Section 1782 award that was partially justified by the district court's mistaken belief that granting the request would have required it to oversee a reciprocal exchange of discovery. *See In re Malev Hungarian Airlines*, 964 F.2d 97, 101–02 (2d Cir. 1992) ("The district court was free to grant Malev's request without assuming responsibility for supervising [respondent's] discovery from Malev."). The Circuit noted that the district court could "accept Malev's offer to engage in 'reciprocal discovery,'" but it was not obligated to do so. *Id*. at 102, n. 4. Although courts may

---

[3] *In re Application of Gorsoan Ltd. & Gazprombank OJSC*, No. 13-MC-397 (PGG), 2014 WL 7232262, at *11 (S.D.N.Y. Dec. 10, 2014) (denying reciprocal discovery where there was "no suggestion that the discovery procedures in the [foreign forum] are inadequate, or that [the respondent] cannot obtain documents" in the foreign litigation); *Consorcio Minero*, 2012 WL 1059916, at *4 (granting reciprocal discovery where "[t]here [was] apparently no process by which [respondent] [could] seek and obtain documents" in the foreign proceedings); *In re Ecuador*, 2011 WL 736868, at *10 (denying reciprocal discovery where the documents sought were "already within the jurisdictional reach of the foreign tribunal" and allowing reciprocal discovery would "circumvent foreign proof-gathering restrictions"). The Second Circuit has nonetheless held that Section 1782 authorizes the taking of discovery outside of the United States. *See In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019).
[4] *Conscorcio Minero S.A.*, 2012 WL 1059916 at *4.
[5] *See In re Furstenberg Fin. SAS*, 2018 WL 735670, at *3 (S.D. Fla. Jan. 10, 2018) (rejecting request for reciprocal discovery sought nearly two years after applicants filed their initial application); *In re Ecuador*, 2011 WL 736868, at *10 n.4.

wish to use reciprocal discovery to avoid the skewing effect of "a blanket, 'American-style' grant of discovery to one side in a foreign lawsuit," *Euromepa*, 51 F.3d at 1001, they need not do so in every case; "Congress granted district courts broad discretion to grant or deny reciprocal discovery." *Sampedro*, 958 F.3d at 145.

*Second*, when a court grants reciprocal discovery, it generally does so as a *condition* on its primary award of discovery to the Section 1782 applicant, rather than as an independent source of relief to the respondent. The leading cases on reciprocal discovery in this Circuit and the Supreme Court all discuss it in these terms. *See, e.g., Intel*, 542 U.S. at 262 (to the extent a district court is "[c]oncern[ed] about maintaining parity among adversaries in litigation," it can "*condition relief* upon that person's reciprocal exchange of information") (emphasis added); *Euromepa*, 51 F.3d at 1101 (district court "could have *conditioned relief* upon the parties' reciprocal exchange of information"); *Sampedro*, 958 F.3d at 143 ("whether to *condition section 1782 discovery on reciprocal discovery* certainly falls within [the] broad grant of discretion" to district courts under the statute) (emphasis added). *See also Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008) ("Consistently, the Second Circuit and the Supreme Court[] have suggested that a district court could *condition relief* upon a reciprocal exchange of information, as such would lend parity to the disclosure mix.") (emphasis added); *Consorcio Minero*, 2012 WL 1059916, at *2 ("[I]t is within the Court's discretion to *condition Section 1782 discovery on a reciprocal exchange of discovery*.") (emphasis added). For that reason, requests for reciprocal discovery are generally made by the respondent in opposition to an initial request for discovery under Section 1782.[6]

---

[6] As PSE notes, Elliott has not cited a case (nor is the Court aware of one) in which "a court has ever granted reciprocal discovery when a respondent, like Elliott, chose not to request such discovery in opposing Section 1782 discovery." PSE Mem. at 7.

*Third*, the statutory requirements and discretionary factors a court weighs in considering a request for reciprocal discovery do not necessarily resemble the requirements and factors a court considers in connection with an initial Section 1782 application. For example, while a Section 1782 applicant may seek discovery only from a person that "resides (or is found)" within the jurisdiction of the federal district court where the application is made, a party requesting reciprocal discovery is often seeking discovery from a party located outside the United States. The party requesting reciprocal discovery will therefore frequently be unable to initiate its own Section 1782 application against that party, which may weigh in favor of granting reciprocal discovery. *See Consorcio Minero*, 2012 WL 1059916, at *4 (the fact that respondent could not initiate its own Section 1782 action against a Peruvian company favored the granting of a condition of reciprocal discovery). For similar reasons, requests for reciprocal discovery under Section 1782 may, more frequently than initial applications, seek evidence located outside the United States. Although the fact that documents are located outside the United States can weigh against the grant of a request under Section 1782, it does not necessarily defeat the request. *See In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019) (although Section 1782 "allows extraterritorial discovery," courts should "consider the location of documents and other evidence when deciding whether to exercise its discretion to authorize such discovery"). For that reason, the location of evidence outside the United States may undermine the justification for an initial Section 1782 application more than it would a request for reciprocal discovery. *See Euromepa*, 51 F.3d at 1102 (contemplating a reciprocal discovery arrangement in which the respondent would gain access to "documents or testimony in Europe").

## DISCUSSION

Against that backdrop, the Court now turns to the substance of Elliott's motion. Although the Court finds that Elliott's request was not necessarily time-barred (such that the Court is

9

without authority to even consider it), it nonetheless denies Elliott's motion on the basis of discretionary factors.

I. **Elliott's Request is Not *Per Se* Untimely**

PSE's first basis for opposing Elliott's request is that it should be denied as untimely because the request was made 16 months after PSE's initial application and 10 months after this Court's final order approving of PSE's request. PSE notes that "Elliott has cited no case in which reciprocal discovery was granted *after* a respondent failed to request such discovery during the initial merits briefing (whether on the application itself for on a motion to quash an application that had been granted *ex parte*)." PSE Mem. at 13. Because, PSE urges, Elliott's motion is untimely, its request for reciprocal discovery should be construed either as a Rule 59 motion to modify this Court's prior judgment granting the initial Section 1782 request (in which case it would be untimely filed) or as an independent Section 1782 action (in which case it would fail because PSE is not "found" in this District). *See* PSE Mem. at 14–17. PSE relies on *In re Furstenberg*, a case from the Southern District of Florida in which the court rejected reciprocal discovery where respondents sought reciprocal discovery nearly two years after the applicants filed their initial Section 1782 request, despite having opposed the applicants' request "at every turn." *See In re Furstenberg Fin. SAS*, No. 16-CV-60266, 2018 WL 735670, at *3 (S.D. Fla. Jan. 10, 2018); PSE Mem. at 13–14.

As discussed below, the Court fully agrees with PSE that the timing of Elliott's request weighs against granting it. However, the Court declines to endorse a *per se* rule that requests for reciprocal discovery must always be raised in the initial briefing following a Section 1782 application. As the Second Circuit has held, Section 1782 gives a district court "complete discretion in prescribing the procedure" for the parties to follow in exchanging discovery. *Euromepa*, 51 F.3d at 1101 (citation omitted). Accordingly, the Second Circuit has "declined to

read into Section 1782 categorical restrictions that lack textual support when district courts in their discretionary review adequately can address the concerns raised." *In re Accent Delight Int'l Ltd.*, 869 F.3d at 134. The Court sees no reason why the "complete discretion" Section 1782 vests in the district courts should not extend to at least entertaining a respondent's motion for reciprocal discovery after a court has already granted the applicant's initial request. Indeed, in *Furstenberg*, the district court did not hold that the request for reciprocal discovery was necessarily time-barred; it expressly stated that "there is no time limitation regarding Movants' request for reciprocal recovery." *Furstenberg*, 2018 WL 735670, at *3. Rather, the court found that the belated nature of the request "weigh[ed] against the exercise of [the court's] discretion [to order] reciprocal discovery." *Id*.

There may well be situations in which courts will find compelling reasons to give serious consideration to motions for reciprocal discovery that are made after the court has already granted an initial Section 1782 application, such as significantly changed circumstances or important new information coming to light. The Court therefore declines to endorse a bright-line rule under which Elliott's request could not even be considered at this juncture.

## II. Elliott's Request is Nonetheless Denied

The Court nevertheless declines under the circumstances to exercise its discretion to award Elliott reciprocal discovery. *See Sampedro*, 958 F.3d at 145 ("Congress granted district courts broad discretion to grant or deny reciprocal discovery."); *Intel*, 542 U.S. at 264 ("[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."). Several factors guide this decision.

*Timing*

First, even if Elliott's request is not *per se* untimely, the fact that its motion was filed a full 16 months after the initial application clearly weighs against it. As discussed above,

11

reciprocal discovery is generally understood as a *condition* that a district court may place on its grant of an applicant's Section 1782 request in order to "insure procedural parity" between parties to foreign litigation. *See Euromepa*, 51 F.3d at 1102. Here, however, the Court already determined that PSE's request was independently warranted and granted it—many months ago. The Court's initial determination to grant PSE discovery was in June 2019 (14 months before Elliott requested reciprocal discovery) and its final approval of the subpoenas and protective order was in October 2019 (10 months before Elliott requested reciprocal discovery). In its briefing in opposition to PSE's request, Elliott did not request reciprocal discovery, nor even raise the argument that granting PSE's request would result in a lack of parity. *See* Dkt. 21. Although as of the filing of Elliott's motion, PSE had not yet taken all of its Section 1782 discovery, *see* Elliott Reply Mem. at 2, n. 3, PSE need not bargain for the remainder of the materials and testimony; the Court has already determined that it is entitled to that discovery. Accordingly, granting Elliott's request today could not be construed as placing a *condition* on the Court's initial rulings allowing PSE to take discovery.

Additionally, there is no reason Elliott was precluded from previously seeking these materials or raising arguments about a lack of parity. Elliott argues that "[r]ecent events have made [its] motion necessary," citing the fact that the Greenwich Action was for a period of time suspended and was only reopened in June 2020, shortly before Elliott filed the instant motion. Elliott Mem. at 3. But the Stuttgart appeal was stayed on October 29, 2019, already several months after the Court considered and preliminarily granted PSE's Section 1782 application, and indeed two weeks after the Court had ordered discovery to proceed on the terms adopted by Magistrate Judge Aaron. *See* Declaration of Josef Broich ("Broich Decl."), ¶¶ 32–33; Dkt. 37 (June 25, 2019 oral ruling); Dkt. 58 (October 15, 2019 order approving of the scope of discovery). As PSE correctly observes, the procedural posture of the German litigation is

12

"substantially the same as it was when PSE filed its 1782 application on April 5, 2019"—namely, the litigation is pending on appeal before the Higher Regional Court of Stuttgart. *See* PSE Mem. at 8–9. Accordingly, changed circumstances in the foreign litigation do not justify the belated nature of Elliott's request for reciprocal discovery.

Although, as discussed above, the Court does not find support in the case law for an unforgiving rule that reciprocal discovery must *always* be requested at the time of the initial Section 1782 application, there is ample justification for courts to discount requests made so long thereafter. *See Furstenberg*, 2018 WL 735670, at *3; *Ecuador*, 2011 WL 736868, at *10 n.4. Section 1782 was not designed to make the federal district courts responsible for the boundless exchange of discovery between participants to foreign litigation. As the Second Circuit has made clear, the statute "is a one-way street," providing "wide assistance" to some but "*demand[ing]* nothing in return." *Malev*, 964 F.2d at 101 (quoting Amram, *The Proposed International Convention on the Service of Documents Abroad,* 51 A.B.A.J. 650, 651 (1965)). A contrary rule would risk turning federal district courts into "global Special Masters for Discovery," *Euromepa*, 51 F.3d at 1105 (Jacobs, J., *dissenting*), such that any court that grants a Section 1782 application would take on an open-ended duty to maintain procedural parity in faraway litigation. That would be undesirable with respect to judicial economy and also with respect to the authority and autonomy of foreign courts to manage their own litigation. As the Second Circuit has cautioned, "a district court need not view itself as solely responsible for ensuring parity between parties to foreign disputes," because "a foreign tribunal can also place conditions on its acceptance of the information to maintain whatever measure of parity it concludes is appropriate." *Sampedro*, 958 F.3d at 143 n.2 (quoting *Intel*, 542 U.S. at 262). Although, in granting PSE's Section 1782 request, the Court would certainly have considered whether directing PSE to provide reciprocal

discovery to Elliott would have best preserved fairness and parity, those arguments were not presented.

*The Location of the Discovery Sought and the German Courts' Jurisdiction Over PSE*

Second, the Court considers it relevant that the discovery Elliott seeks is located in Germany, where—unlike the discovery PSE sought from Elliott—it is within the jurisdictional reach of the German courts overseeing the litigation against PSE. *See* Elliott Reply Mem. at 5. Elliott asks the Court to order the production of evidence located in Germany, from a Germany company that is itself party to the foreign litigation, as well as to issue subpoenas for deposition testimony of seven non-U.S. citizens. *See* PSE Mem. at 13, 19; Elliott Mem. at 5. PSE accordingly argues that, to the extent PSE has possession of the requested discovery, "Elliott should try to obtain those documents and any testimony through the German courts." PSE Mem. at 19. Elliott notes that, in many cases, it did try—and failed. *See* Elliott Mem. at 6–7, 23; *see also* PSE Mem. at 7.

The Court is not without *power* to order the reciprocal discovery of evidence located abroad and subject to the jurisdiction of a foreign tribunal, even if that evidence has yet to be requested in the foreign litigation and even if that evidence could not be discovered in the foreign forum. As discussed above, Section 1782 authorizes discovery of evidence located outside the United States, *see Valle Ruiz*, 939 F.3d 520, 533, and as Elliott persuasively argues, evidence sought through reciprocal discovery is likely to be located abroad, given that it will often be requested from the foreign litigant who brought the original Section 1782 application, *see* Elliott Reply Mem. at 5. Moreover, as the Court observed in its June 2019 ruling, there is no exhaustion requirement under Section 1782 under which a party must first seek discovery in the foreign litigation before seeking it in the United States. *Malev*, 964 F.2d at 100; Dkt. 37 at 14. Nor is there a requirement that discovery produced under Section 1782 must be discoverable under the

rules of the foreign forum. *Intel*, 542 U.S. at 259–60. Clearly, then, the fact that the evidence sought is located within Germany and subject to the jurisdiction of the German courts is not, on its own, a sufficient reason to deny Elliott's application.

The absence of these bright-line rules, however, does not mean that the Court should not in its discretion consider the location of the evidence, the fact that some of it may be still be sought in the first instance in Germany, and the fact that Elliott has been rebuffed by German courts in its efforts to obtain evidence from PSE. *See Valle Ruiz*, 939 F.3d 520, 533 ("[A] court may properly, and in fact should, consider the location of documents and other evidence when deciding whether to exercise its discretion to authorize [Section 1782] discovery."). Even though a district court *may* grant evidence under Section 1782 that is located in the foreign forum but not discoverable under its laws, the Supreme Court has cautioned against using the statute to "circumvent foreign proof-gathering restrictions or other policies" of a foreign country. *Intel*, 542 U.S. at 265. Thus to the extent that the Greenwich Plaintiffs have tried and failed to obtain that evidence from the German courts, the Court is reluctant to require its production through reciprocal discovery.[7] And to the extent that the Greenwich Plaintiffs have yet to seek in Germany the discovery they are requesting by this motion, they are of course free to do so. *See Intel*, 542 U.S. 241 at 244 ("A foreign tribunal has jurisdiction over those appearing before it,

---

[7] Elliott protests that PSE premised its own successful Section 1782 request on the fact that German civil procedure allows for more limited discovery than what is available in the United States. *See* Elliott Mem. at 17. Indeed, PSE argued at the time that it "would not have been able to request or to obtain most, if any, of the discovery that it [sought]" through German discovery. Dkt. 25 at 10. A crucial distinction, however, is that the information sought by PSE in its initial application was "unavailable in Germany." Dkt. 37 at 2. Moreover, as the Court noted in its oral ruling on PSE's Section 1782 request, because Elliott was not formally a party to the litigation, the "German courts lack[ed] jurisdiction to order [Elliott] to produce the information that PSE [sought]." *Id*. at 34. By contrast, the evidence sought by Elliott through reciprocal discovery is undisputedly within the jurisdiction of the German courts.

and can itself order them to produce evidence.").[8] In short, the fact the discovery requested is located in Germany and is within the German courts' jurisdiction weighs against an exercise of the Court's discretion to grant reciprocal discovery.

## CONCLUSION

For the foregoing reasons, Elliott's motion for reciprocal discovery is denied. The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 62 and 83.

SO ORDERED.

Dated:  June 21, 2021
        New York, New York

Ronnie Abrams
United States District Judge

---

[8] Indeed, PSE notes that "Elliott has requested reciprocal discovery of a significant amount of evidence that the Greenwich Plaintiffs did not request in the Greenwich Action." Meier Decl. ¶ 24.